DOUGLAS GILLIES, ESQ. (CA SBN 53602)
douglasgillies@gmail.com
3756 Torino Drive
Santa Barbara, CA 93105
(805) 682-7033

Attorney for Plaintiff
DARYOUSH JAVAHERI

FILED
10 OCT 29 PM 1:22
CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES
BY: ________

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYOUSH JAVAHERI,<br>Plaintiff,<br>v.<br>JP MORGAN CHASE BANK N.A., CALIFORNIA RECONVEYANCE CO., and DOES 1-150, inclusive,<br>Defendants. | No. CV10 8185 ODW (FFMx)<br>**COMPLAINT**<br>1) Wrongful Foreclosure<br>2) Violation of Cal Civ. Code §2923.5<br>3) Unjust Enrichment<br>4) RESPA and TILA Violations<br>5) No Contract<br>6) Fraud and Concealment<br>7) Quiet Title<br>8) Declaratory and Injunctive Relief<br>9) Slander of Title<br>10) Intentional Infliction of Emotional Distress<br><br>Jury Trial Requested |

# INDEX


| | |
|---|---|
| **INTRODUCTION** | **3** |
| **PARTIES AND JURISDICTION** | **3** |
| **JURY TRIAL DEMAND** | **5** |
| **CLAIM FOR RELIEF** | **5** |
| **BACKGROUND FACTS** | **5** |
| **FIRST CAUSE OF ACTION – WRONGFUL FORECLOSURE** | **6** |
| **SECOND CAUSE OF ACTION – VIOLATION OF CAL CIV CODE §2923.5** | **8** |
| **THIRD CAUSE OF ACTION - UNJUST ENRICHMENT** | **9** |
| **FOURTH CAUSE OF ACTION – RESPA AND TILA VIOLATIONS** | **10** |
| **FIFTH CAUSE OF ACTION - NO CONTRACT** | **11** |
| **SIXTH CAUSE OF ACTION – FRAUD AND CONCEALMENT** | **13** |
| **SEVENTH CAUSE OF ACTION - QUIET TITLE** | **14** |
| **EIGHTH CAUSE OF ACTION - DECLARATORY & INJUNCTIVE RELIEF** | **15** |
| **NINTH CAUSE OF ACTION – SLANDER OF TITLE** | **17** |
| **TENTH CAUSE OF ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** | **17** |
| **PRAYER** | **18** |
| **VERIFICATION** | **19** |
| **PLAINTIFF'S EXHIBITS** | **20** |

**INTRODUCTION**

"The subprime debacle, which I would define as loans that shouldn't have been made and packaged that originated between 2000 and 2007, was probably the biggest Ponzi scheme in the history of mankind." Spencer P. Scheer, esq., opening speaker, "The Subprime Mortgage Fallout," State Bar of California 29th Annual Real Property Law Section Retreat, April 30, 2010.

During the subprime meltdown, banks abandoned traditional underwriting practices and caused a frenzy of real estate speculation by issuing predatory loans that ultimately lowered property values in the United States by 30-50%. Banks reaped an unprecedented harvest. Kerry Killinger, CEO of Washington Mutual, took home more than $100 million during the seven years that he steered WaMu into bankruptcy. Banks issued millions of predatory loans knowing that the borrowers would default and lose their homes, and then committed perjury and fraud to fabricate documents in the foreclosure process. As a direct, foreseeable, proximate result, 15 million families are now in danger of foreclosure, and Plaintiff DARYOUSH JAVAHERI is facing illegal foreclosure of his home at a Trustee's Sale scheduled for November 8, 2010. The loan application he submitted to Washington Mutual is attached as Exhibit 1. It consists of his name and address.

**PARTIES AND JURISDICTION**

1. Plaintiff DARYOUSH JAVAHERI is a resident of California and owner of a single-family residence located at 10809 Wellworth Avenue, Los Angeles, California 90024, APN 4325-005-014 ("the Property") acquired by Grant Deed on December 11, 2006. The legal description is:

Lot 8 in Block 31 of Tract No 7803 in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 88, Pages 73 to 75 inclusive of Maps, in the Office of the County Recorder of said County.

2. Defendant JP MORGAN CHASE BANK, NATIONAL ASSOCIATION,

("Chase"), a New York corporation licensed to do business in California, is an acquirer of certain assets and liabilities of WAMU from the Federal Deposit Insurance Corporation ("FDIC") acting as receiver, and Chase claims to be the note holder, beneficiary, or servicer for investment trusts of a loan which is the subject of this complaint.

3. Defendant CALIFORNIA RECONVEYANCE COMPANY ("CRC") is a California corporation named as Trustee on a Substitution of Trustee describing the Property allegedly signed by "Deborah Brignac, Vice President, JPMorgan Chase Bank, National Association successor in interest to Washington Mutual Bank, FA." It was recorded in Los Angeles County on May 3, 2010. The Notary Public who acknowledged Deborah Brignac's signature under penalty of perjury was Loren Lopez. Plaintiff is informed and believes that Deborah Brignac is a robo-signer and that her signature on the Substitution of Trustee is a forgery.

4. Defendants Does 1-150, inclusive, are sued under fictitious names. When their true names and capacities are known, Plaintiff will amend this complaint and insert their names and capacities. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants claims some right, title, estate, lien, or interest in the residence adverse to Plaintiff's title and their claims constitute a cloud on Plaintiff's title to the property, or participated in unlawful or fraudulent acts that resulted in injury to Plaintiff's person or property.

5. There is diversity of citizenship between Plaintiff and Defendant Chase, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000. This court has jurisdiction of the action pursuant to 28 U.S.C. 1332(a). This Court has jurisdiction over the subject matter of this complaint under 28 USC §§1331 and 1337 because it involves a federal question regarding interpretation and proper application of the Real Estate Settlement Procedures Act, 12 USC 2601 et seq. Declaratory relief is authorized under 28 U.S.C. 2210.

**JURY TRIAL DEMAND**

6. Plaintiff requests a jury trial on all issues.

**CLAIM FOR RELIEF**

7. Plaintiff brings this action against JPMorgan Chase Bank, NA ("Chase"), California Reconveyance Company ("CRC"), and Does 1 – 150 for attempting to sell Plaintiff's Property at a trustee's sale and deprive Plaintiff of his residence without any lawful claim to the Property.

**BACKGROUND FACTS**

8. Plaintiff is the titleholder of the Property according to the terms of a Grant Deed dated December 11, 2006. Plaintiff financed purchase of the Property in 2006. Plaintiff's loan application was submitted to Washington Mutual Bank ("WaMu") in September 2006. A copy of Plaintiff's Uniform Residential Loan Application, furnished to him by WaMu with instructions to leave almost all of the items blank, is attached hereto marked "Exhibit 1".

9. Plaintiff signed the mortgage documents in November 2006 at Chicago Title Company. He was not given an opportunity to review the documents, other than to quickly initial or sign various pages. After he signed, a Chicago Title Company employee told Plaintiff that WaMu would forward the finalized documents to him. Plaintiff did not receive any documents from WaMu, including a Notice of Right to Cancel and disclosures required by the Truth in Lending Act (TILA), and RESPA.

10. Plaintiff requested a copy of his loan application and promissory note at a Wilshire Blvd. branch of Chase in Los Angeles on October 12, 2010. A bank officer telephoned a Chase office in Ohio and informed Plaintiff that he would receive the loan documents in ten days. No documents have been received as of October 29, 2010.

11. Plaintiff is named as Borrower on a Deed of Trust describing the Property dated November 14, 2007 ("DOT"). Washington Mutual Bank, FA is

identified on the DOT as "Lender" and "the beneficiary under this security agreement." Chicago Title Company is Trustee. Plaintiff has not received notice that WaMu's beneficial interest has been transferred.

12. Plaintiff is informed and believes that WaMu securitized Plaintiff's single-family residential mortgage loan through Washington Mutual Mortgage Securities Corp., evidenced by references to a "private investor" made by Chase.

13. On May 14, 2010, Defendant CRC recorded a Notice of Default ("NOD") describing the Property with instructions that Plaintiff contact JPMORGAN CHASE BANK, NATIONAL ASSOCIATION to stop the foreclosure. The NOD was signed by Silvia Freeberg, Assistant Secretary. A "Declaration of Compliance (Cal Civil Code Section 2923.5(b)" attached to the NOD was signed under penalty of perjury by Renee Daniels on behalf of JPMorgan Chase Bank, National Association, "The undersigned mortgagee, beneficiary or authorized agent." Washington Mutual is described as beneficiary. Nowhere is Chase's role described in the papers on which Chase asserts the right to sell the Property except reference to Chase as servicer on the NOTS.

14. On or about October 15, 2010, Defendant CRC recorded a Notice of Trustee's Sale ("NOTS") stating that the Property would be sold at public auction on November 8, 2010. The NOTS included a declaration pursuant to California Civil Code Section 2923.54 bearing the name of Ann Thorn, First Vice President, JPMorgan Chase National Association. Chase was identified as a servicer on the NOTS.

**FIRST CAUSE OF ACTION – WRONGFUL FORECLOSURE**

15. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 14.

16. After WaMu originated the loan, Plaintiff is informed and believes that WaMu transferred all beneficial interest in the loan to a private investor.

17. Neither WaMu, Chicago Title, CRC, Chase, nor anyone else has

recorded a transfer of a beneficial interest in the Note Property to Chase. If Chase is a beneficiary, CRC has breached its fiduciary duty to Plaintiff under the DOT by not recording the alleged transfer of the beneficial interest and/or servicing duty from WaMu to Chase, and by not indicating on the Notice of Default that Chase is the alleged beneficiary. Paragraph 24 of the DOT states:

> 24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without reconveyance of the property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

18. Chase does not have standing to enforce the Note because Chase is not the owner of the Note, Chase is not a holder of the Note, and Chase is not a beneficiary under the Note. Chase does not have capacity to exercise a power of sale. Chase does not claim to be a holder of the note or a beneficiary. Chase merely describes itself as a loan servicer in the Notice of Trustee's Sale. If Chase can prove that it is a servicer, as it asserts without disclosing any document as proof, Chase cannot foreclose on Plaintiff's property without joining the owner of the note because Chase is not a real party in interest.

19. Plaintiff is informed and believes that Chase does not have standing to sell Plaintiff's property because Chase is not the holder of the Note. Chase did not pay any consideration to Plaintiff evidenced by a promissory note and cannot produce a promissory note endorsed to Chase. Chase does not own the loan and

cannot identify the owner of the loan. Chase did not purchase the loan when it took over WaMu in September 2008.

**SECOND CAUSE OF ACTION – VIOLATION OF CAL CIV CODE §2923.5**

20. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 19.

21. Defendants commenced foreclosure of the Property by recording a Notice of Default in the Los Angeles County Recorder's Office on May 14, 2010 (Exhibit "2". Attached to the NOD was a Declaration of Compliance with Cal. Civil Code §2923.5 signed under penalty of perjury by Renee Daniels on behalf of Chase.

22. Plaintiff is informed and believes that declarant Renee Daniels did not have personal knowledge of the matters described in her declaration, which purported to describe attempts by Chase to contact Plaintiff as required by §2923.5. The NOD must include a declaration from one of three entities showing that it contacted the borrower or tried with due diligence to contact the borrower.

23. On October 1, 2010, California Attorney General Jerry Brown sent a letter to Chase and ordered Chase to halt all foreclosures in California. A copy of the letter is posted on the Attorney General's website at ag.ca.gov/newsalerts. Mr. Brown wrote:

> The Office of the Attorney General writes to demand that JP Morgan Chase demonstrate immediately that it conducts foreclosures in compliance with California Civil Code, section 2923.5 or, if it cannot, halt all foreclosures in California until it can.
>
> Section 2923.5, subdivision (b) provides that a lender may not record a notice of default in California for a California mortgage originated between January 1, 2003 and December 31, 2007, unless it can declare that it "has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required

pursuant to subdivision (h)."

JP Morgan Chase has now admitted that employees assigned to handling foreclosures signed affidavits without first personally reviewing the contents of borrowers' loan files. Thus, borrowers suffered the foreclosure of their homes based on affidavits that JP Morgan Chase had not confirmed to be accurate. This admission strongly suggests that any purported verification by JP Morgan Chase that it complied with section 2923.5 before commencing a foreclosure in California is similarly suspect.

///

24. On October 8, 2010, the Attorney General called on all lenders in California to halt foreclosing on California homes until they can demonstrate that compliance with state law and posted a copy on the Attorney General's website.

25. Foreclosures have been suspended by state attorneys general in many states based on testimony of employees of Chase, Ally (GMAC), Bank of America and other banks that declarations and affidavits were manufactured to commence foreclosures that were not based on the personal knowledge of the robo-signers whose names and signatures appeared on the foreclosure documents without the declarants possessing any personal knowledge of the matters stated therein.

26. The declaration of Renee Daniels attached to the NOD (Exhibit 2) does not meet the requirements of Civil Code §2923.5, and so the foreclosure of Plaintiff's property would be illegal under California law and must be enjoined.

**THIRD CAUSE OF ACTION - UNJUST ENRICHMENT**

27. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 26.

28. Chase has no interest in Plaintiff's mortgage, so the pending foreclosure of Plaintiff's Property would constitute unjust enrichment.

29. The DOT states that all secured sums must be paid. Plaintiff alleges that the obligations under the DOT were fulfilled when WaMu received funds in excess

of the balance on the Note as a result of proceeds of sale through securitization to private investors and insurance proceeds from Credit Default Swaps.

**FOURTH CAUSE OF ACTION – RESPA AND TILA VIOLATIONS**

30. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 29.

31. WaMu and its agents made material misrepresentations and omissions with respect to the terms of Plaintiff's loan in violation of the Truth in Lending Act ('TILA"). Plaintiff is informed and believes that WaMu concealed the terms of the loan with the intention of inducing Plaintiff to refrain from investigating and challenging the disclosures until the period for rescinding the loan expired. Plaintiff did not receive any documents from WaMu after his meeting to sign documents at Chicago Title Company, including disclosures required by the Truth in Lending Act. RESPA, and a Notice of Right to Cancel.

32. Plaintiff's loan is a mortgage loan subject to the provisions of RESPA, 12 U.S.C. §2605 et. seq., and California Financial Code §50505.

33. On October 12, 2010, Plaintiff requested a copy of his loan application and promissory note at a Wilshire Blvd. branch of Chase in Los Angeles. A bank officer telephoned a Chase office in Ohio and informed Plaintiff that he would receive the loan documents in ten days. No documents have been received.

34. Defendants have engaged in a practice of non-compliance with RESPA, including failing to respond to properly submitted QWR's. Plaintiff is informed and believes that this practice is designed to conceal TILA and RESPA violations and to conceal the identity of the owner and true beneficiary of the loan.

35. As a direct and proximate result of Defendants' failure to comply with RESPA, Plaintiff has suffered and continues to suffer actual damages in that he is unable to ascertain the basis for Defendants' claims to his property, he cannot identify the owner of the beneficiary of the Note, he cannot determine whether his payments to WaMu were paid to the beneficiary, and he has no evidence upon

which to conclude that Defendants are acting in good faith with lawful authority in their attempts to foreclose the Property. Under RESPA, Plaintiff seeks treble damages.

**FIFTH CAUSE OF ACTION - NO CONTRACT**

36. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 35.

37. Plaintiff is informed and believes that WaMu routinely approved predatory real estate loans to unqualified buyers in 2006 and 2007 and implemented unlawful lending practices by encouraging brokers and loan officers to falsify borrowers' income and assets to meet underwriting guidelines when borrowers were not qualified.

38. Plaintiff followed WaMu's instructions when he submitted a Uniform Residential Loan Application (Exhibit 1) to WaMu that contained only his basic identifying information, such as name, address, phone number, social security number, and bank account number. WaMu employees filled out the application.

39. Plaintiff is informed and believes that WaMu pre-sold Plaintiff's mortgage and immediately after he signed the Note transferred all of its interest in the Note to an investment bank that bundled Plaintiff's Note with numerous other residential mortgages into residential mortgage-backed securities ("RMBS") which were structured into synthetic collateralized debt obligations ("CDOs") and sold to investors.

40. Plaintiff is informed and believes that the portfolio of RMBS underlying the synthetic CDOs were selected by a hedge fund with economic interests directly adverse to borrowers and investors, and that the hedge fund and the investment bank intended to short the portfolio it helped to select by entering into credit default swaps to buy protection against the almost certain event that the promissory notes would default. WaMu expected that Plaintiff would not have the ability to repay the loan. It was not simply a matter of being unconcerned with the possible

outcome that Plaintiff would default; WaMu expected he would default.

41. Washington Mutual Bank, the sponsor of the securitization transaction, was a wholly owned subsidiary of Washington Mutual Inc. Securitization of mortgage loans was an integral part of Washington Mutual Inc.'s management of its capital. It engaged in securitizations of first lien single-family residential mortgage loans through Washington Mutual Mortgage Securities Corporation, as depositor, beginning in 2001. WaMu acted only as a servicer of Plaintiff's loan.

42. WaMu failed to disclose to Plaintiff that its economic interests were adverse to Plaintiff and that WaMu expected to profit when Plaintiff found it impossible to perform and defaulted on his mortgage.

43. A necessary element in the formation of an enforceable contract under the common law is a *meeting of the minds*. Two or more parties must share an expectation that a future event will occur. Plaintiff expected that he would borrow money from WaMu, he would pay it back, and then he would own the Property. WaMu expected that Plaintiff would borrow money, he would not be able to pay it back, and then WaMu or the investors would own the Property. Since there was no shared expectation—no meeting of the minds—no contract was formed between Plaintiff and WaMu.

44. In addition to WaMu's expectation that Plaintiff would lose title to the Property through foreclosure, WaMu anticipated transferring the Note to investors immediately after Plaintiff signed the Note. Plaintiff is informed and believes that WaMu purchased credit default insurance so that WaMu would receive the balance on the Note when Plaintiff defaulted, in addition to any money WaMu received when it securitized the note.

45. Not only did WaMu dispense with conventional underwriting practices in 2006, it also paid premium fees and other incentives to mortgage brokers who signed up the riskiest borrowers. Fueled by spiraling profits to Chase, WaMu, and other bankers, common law principles of contract formation, customary

underwriting practices, and statutory procedures for transferring interests in real property, including the recordation of transfers of interests in real property, disintegrated and the system collapsed.

46. WaMu expected that Plaintiff would not perform as merely one victim in a scheme in which:

(1) WaMu's fees as servicer would be greater as the number of loans increased;
(2) WaMu's fees as servicer would be greater as the balances of loans increased;
(3) WaMu would recover the unpaid balance of Plaintiff's loan through credit default insurance when Plaintiff inevitably defaulted; and
(4) All risk of loss in the event of Plaintiff's default would be borne by investors, not WaMu as the servicer.

47. Plaintiff's participation in the mortgage contract was procured by overt and covert misrepresentations and nondisclosures. The parties did not share a single expectation with respect to any of the terms of the mortgage contract and therefore the contract was void *ab initio*.

48. No enforceable contract was formed between Plaintiff and WaMu, so his DOT and Promissory Note were not assets of WaMu that could be acquired or assumed by Chase from the Federal Deposit Insurance Corporation (FDIC) as receiver after WaMu was closed by the Office of Thrift Supervision on September 25, 2008.

49. Chase Bank has no right to receive payment under Plaintiff's mortgage loan and has no right to foreclose on his property. Plaintiff does not seek rescission of the contract. He alleges that the contract was void *ab initio*.

**SIXTH CAUSE OF ACTION – FRAUD AND CONCEALMENT**

50. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 49.

51. WaMu concealed material facts from Plaintiff to induce Plaintiff to consummate the loan, including:

(1) WaMu did not follow conventional, sound underwriting practices;

(2) Plaintiff would not be able to afford the payments required by his loan;

(3) Plaintiff would not be able to refinance his loan; and

(4) Plaintiff's loan would be resold and securitized to third parties, rendering it impossible for the lender to provide Plaintiff with a full reconveyance upon completion of his payments on the Note.

52. Chase has concealed and continues to conceal from Plaintiff material facts in its possession which were requested during his visit to Chase Bank on October 12, 2010, that would enable him to ascertain whether his payments to WaMu were received by the owner or beneficiary of the Note.

53. As a direct and proximate result of Chase's fraudulent concealment, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial. Plaintiff remains under the constant threat of a trustee sale of the Property, which could happen at any time without prior notification to him, and in addition to damages caused by his emotional distress, he will suffer irreparable injury not compensable in damages if the Property is sold.

**SEVENTH CAUSE OF ACTION - QUIET TITLE**

54. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 53.

55. Plaintiff seeks to quiet title against the claims of Defendants and all persons claiming any legal or equitable right, title, estate, lien, or adverse interest in the Property as of the date the Complaint was filed (Cal Code Civil Procedure §760.020)

56. Plaintiff is the titleholder of the Property according to the terms of a Grant Deed dated December 11, 2006.

57. WaMu securitized Plaintiff's single-family residential mortgage loan through Washington Mutual Mortgage Securities Corp. Plaintiff is informed and believes that the lawful beneficiary has been paid in full.

The DOT states in paragraph 23:

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it…

///

The DOT does not state that Plaintiff must make full payment, only that all secured sums must be paid. Plaintiff alleges that the obligations owed to WaMu under the DOT were fulfilled and the loan was fully paid when WaMu received funds in excess of the balance on the Note as proceeds of sale through securitization(s) of the loan and insurance proceeds from Credit Default Swaps.

58. Defendants' claims are adverse to Plaintiff because Plaintiff is informed and believes that none of the defendants is the holder of the Promissory Note, none of them can prove any interest in the Note, and none of them can prove that the Note is secured by the DOT, as well as for the reasons set forth in the preceding causes of action. As such, Defendants have no right, title, estate, lien, or interest in the Property.

59. Plaintiff therefore seeks a judicial declaration that the title to the subject property is vested solely in Plaintiff and that Defendants have no right, title, estate, lien, or interest in the Property and that Defendants and each of them be forever enjoined from asserting any right, title, estate, lien or interest in the Property adverse to Plaintiff.

**EIGHTH CAUSE OF ACTION - DECLARATORY & INJUNCTIVE RELIEF**

60. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 59.

61. An actual controversy has arisen and now exists between Plaintiff and

Defendants concerning their respective rights and duties. Plaintiff contends:

(a) that Chase is not the present holder in due course or beneficiary of a Promissory Note executed by Plaintiff. However, Defendants contend that Chase is the present owner and beneficiary of a Promissory Note executed by Plaintiff.

(b) that Defendants are not real parties in interest, do not have standing, and are not entitled to accelerate the maturity of any secured obligation and sell the Property because they are not a beneficiary or authorized agent of beneficiaries under the purported Promissory Note. However, Defendants assert that they are entitled to sell the Property.

(c) that the Substitution of Trustee recorded in Los Angeles County on May 3, 2010, which purports to substitute Defendant CRC in place of Chicago Title Co. as Trustee under the Deed of Trust dated 11-14-2007, was subscribed with a forged signature of Deborah Brignac, Vice President of Chase, and fraudulently acknowledged, and therefore CRC is not a trustee authorized to file a Notice of Default or a Notice of Trustee's Sale on the Property. However, Defendants contend that CRC is a trustee duly authorized to file said Notices.

62. Plaintiff desires a judicial determination of his rights and duties as to the validity of the Promissory Note and DOT, and Defendants' rights to proceed with nonjudicial foreclosure on the Property. Unless restrained, Defendants will sell Plaintiff's residence, or cause it to be sold, to Plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief.

63. Defendants' wrongful conduct, unless and until restrained by order of this court, will cause great irreparable injury to Plaintiff as the value of the residence declines under threat of foreclosure and Plaintiff faces the prospect of eviction from his residence. Plaintiff designed and built this home himself. It is unique and cannot be replicated.

64. If the foreclosure sale is allowed to proceed, the burden on Plaintiff significantly outweighs the benefit to Defendants, and each of them.

65. By contrast, if the foreclosure sale is enjoined, the burden to any or all Defendants is minimal and not at all outweighed by the benefit to Plaintiff.

66. Plaintiff has no adequate remedy at law for the injuries currently being suffered and that are threatened. It will be impossible for Plaintiff to determine the precise amount of damage that he will suffer if Defendants' conduct is not restrained and Plaintiff must file a multiplicity of suits to obtain compensation for his injuries.

**NINTH CAUSE OF ACTION – SLANDER OF TITLE**

67. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 66.

68. The foreclosing defendants, and each of them, by their acts and omissions, published matters which were untrue and disparaging to Plaintiff's right to title in the subject property.

69. The aforementioned publications by the foreclosing defendants, and each of them, were unjustified and without privilege.

70. It is reasonably foreseeable that the aforementioned publications by the foreclosing defendants, and each of them, casts doubt on Plaintiff's right to title in his property, which has caused and continues to cause damages to Plaintiff.

71. As a result of said publications from Defendants, and each of them, Plaintiff has suffered and continues to suffer loss of money, credit, real property value, and reputation, in an amount to be proven at trial.

**TENTH CAUSE OF ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

72. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 71.

73. Plaintiff contends that the acts and omissions of the Defendants, and each of them, constitute extreme and outrageous conduct.

74. Plaintiff further contends that Defendants, and each of them, engaged in

such conduct either intentionally or with reckless disregard as to the effect on Plaintiff.

75. As a result of said extreme and outrageous conduct by Defendants, and each of them, Plaintiff has suffered severe emotional distress of $5,000,000.00.

**PRAYER**

WHEREFORE, Plaintiff requests judgment as follows:

1. That this court issue an Order to Show Cause and, after a hearing, issue a Temporary Restraining Order and Preliminary Injunction restraining Defendants, and each of them, during the pendency of this action, from continuing with their efforts to conduct a Trustee's Sale of the Property.

2. That the attempted foreclosure of the Property be declared illegal and that Defendants be forever enjoined and restrained from selling the Property or attempting to sell it or causing it to be sold, either under power of sale pursuant to trust deed or by foreclosure action, and from posting, publishing, or recording any notice of default or notice of trustee's sale contrary to state or federal law.

3. That the underlying loan transaction be declared void as a result of Defendants' and WaMu's misrepresentations, fraud, concealment, and predatory loan practices.

4. That Defendants make restitution to Plaintiff according to proof.

5. For a judgment determining that Plaintiff is the owner in fee simple of the Property against the adverse claims of Defendants and that Defendants have no interest in the property adverse to Plaintiff.

6. For damages in an amount of $5,000,000.00.

6. For costs of suit and reasonable attorney fees.

7. For any and all other and further relief that may be just in this matter.

Date: October 29, 2010

Douglas Gillies, attorney for Plaintiff

**VERIFICATION**

Daryoush Javaheri declares:

I am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know its contents. The same is true of my own knowledge, except as to those matters that are alleged on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on October 29, 2010.

Daryoush Javaheri

# PLAINTIFF'S EXHIBITS

| Exhibit | Description | Date |
| --- | --- | --- |
| 1 | Uniform Residential Loan Application | 9/8/2006 |
| 2 | Notice of Default | 5/14/2010 |