DOUGLAS GILLIES, ESQ.  (CA SBN 53602)
douglasgillies@gmail.com
3756 Torino Drive
Santa Barbara, CA 93105
(805) 682-7033

Attorney for Plaintiff
DARYOUSH JAVAHERI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYOUSH JAVAHERI,<br><br>                     Plaintiff,<br><br>       v.<br><br>JP MORGAN CHASE BANK N.A.,<br>CALIFORNIA RECONVEYANCE<br>CO., and DOES 1-150, inclusive,<br>                     Defendants. | No. CV10 8185 ODW (FFMx)<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION TO PREVENT FORECLOSURE<br><br>DATE:<br>TIME:<br>DEPT:<br>JUDGE: |

## I. INTRODUCTION

Plaintiff DARYOUSH JAVAHERI is the owner and resident of a single-family residence located at 10809 Wellworth Avenue, Los Angeles, CA. Plaintiff bought the Property in December 2006 and built a house where he resides with his family.

Plaintiff financed the Property and borrowed money from Washington Mutual Bank, FA ("WaMu") in November 2006. He signed a promissory note secured by a Deed of Trust naming Chicago Title Company as trustee. A Notice of Trustee's Sale was recorded by defendant California Reconveyance Co. ("CRC") in Los Angeles

County on or about October 15, 2010, stating that the Property will be sold on November 8, 2010.  The Notice of Trustee's Sale names Washington Mutual Bank FA as Beneficiary.

Plaintiff examined the Los Angeles County Records on October 26, 2010, and found no record indicating that a beneficial interest in the Promissory Note had been assigned or transferred after he borrowed the money from WaMu.

Plaintiff's search of the county records turned up a Substitution of Trustee recorded on May 3, 2010, that purported to substitute CRC as trustee in place of Chicago Title, but the signature of Deborah Brignac, Vice President of Chase, appeared to be forged and therefore the Acknowledgment of the Notary Public was fraudulent.

Plaintiff met with an officer of Chase Bank on Wilshire Blvd. to request a copy of his loan application and promissory note on October 12, 2010. The bank officer telephoned a Chase office in Ohio and informed Plaintiff that he would receive the loan documents in ten days. No documents have been received.

Plaintiff's loan application is attached to the Complaint as Exhibit 1. At the request of a loan officer at Washington Mutual, Plaintiff submitted an application that showed only his name, address, social security number, and bank accounts. All income figures and other information was inserted into the application by employees of WaMu, who conducted a criminal enterprise to lure borrowers into loans in which they could not possibly afford keep up the payments.

Plaintiff requests a TRO and Preliminary Injunction to preserve the status quo until it can be determined whether Plaintiff entered into an enforceable contract with WaMu in November 2006 and whether any of the defendants have a legal claim to the Property and can demonstrate that they have standing and are a real party in interest.

## II.   ARGUMENT

The sole purpose of a preliminary injunction is to "preserve the status quo until a determination of the action on the merits. *Sierra Forest Legacy v Rey*, 577 F.3d 1015, 2009 WL 2462216 (9th Cir 2009). "In brief, the bases for injunctive relief are

irreparable injury and inadequacy of legal remedies. In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co v Village of Gambell*, 480 U.S. 531, 542 (1987).

Recently, the Supreme Court clarified the proper standard for granting or denying a preliminary injunction by stating that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v Natural Resources Defense Council*, 555 U.S. ____, 129 S. Ct. 365, 374 (2008).

Granting a preliminary injunction is appropriate where "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiffs'] favor." *The Lands Council v McNair*, 537 F.3d 981, 987 (2008). This "second prong is relevant where irreparable injury is likely and imminent-for example, in the case of imminent foreclosure or deportation-and the plaintiff has demonstrated a serious merits issue but may be unable to determine a likelihood of success on the merits." *Save Strawberry Canyon v Department of Energy*, 613 F. Supp. 2d 1177, 1180 n2 (N.D. Cal. 2009).

Plaintiff will suffer irreparable injury if defendants are permitted to foreclose on the Property before the conclusion of this action. Property is considered unique, and therefore Plaintiff's remedy at law, damages, would be inadequate. *Sundance Land Corp v Community First Federal Sav and Loan Assn*, 840 F.2d 653, 662 (9th Cir 1988). If defendants foreclose on the Property, Plaintiff's injury will be irreparable because he might be unable to reacquire it. See *Taylor v Westly*, 488 F.3d 1197, 1202 (9th Cir 2007). This fact weighs heavily in favor of Plaintiff. Additionally, Defendants will not suffer a high degree of harm if a preliminary injunction is ordered. While it is true that Defendants will not be able to sell the property immediately and may expend costs in further litigating this action, when balanced against Plaintiff's potential loss,

Defendants' harm is outweighed.

Plaintiff is likely to succeed on the merits. Plaintiff contends that the promissory note and deed of trust naming Washington Mutual as beneficiary are void or voidable on the grounds that WaMu expected and intended for Plaintiff to default and expected to be unjustly enriched by the foreclosure of Plaintiff's home due to increased servicing fees, credit default insurance, and full recovery of the principal of the loan due to sale of the loan to investors soon after Plaintiff signed the Promissory Note.

A meeting of the minds is essential, for without a shared expectation between the parties, there is nothing but an inchoate effort. This simple maxim reaches back to the origin of enforceable contracts.

A meeting of minds on the material terms is essential to the formation of a contract. *Kruse v. Bank of America*, 202 Cal. App. 3d 38, 60 (1988). The *Kruse* court held that no contract was formed between the plaintiff borrower and the defendant bank when there was "a complete lacuna in the proof of essential terms of the claimed load agreement. Recently in *Terry v. Conlan*, 131 Cal. App 4th 1445, 1459 (2005) the court reversed an order enforcing a settlement agreement, concluding "Thus there was no meeting of the minds, and no enforceable settlement agreement.

"A contract is an agreement to do or not to do a certain thing" (Civ. Code § 1549); and in order to constitute a valid contract, the minds of the contracting parties must meet and agree to the same thing." *Breckinridge v. Crocker,* 78 Cal. 529, 536 (1889).

"It is essential to the validity of a contract that the parties should have consented to the same subject-matter in the same sense. They must have contracted *ad idem*." *Utley v. Donaldson,* 94 U. S. 29, 48 (1876).

"Where there is a misunderstanding as to the terms of a contract, neither party is liable in law or equity. Where a contract is a unit, and left uncertain in one particular, the whole will be regarded as only inchoate, because the parties have not been *ad idem*, and therefore neither is bound." *National Bank v. Hall,* 101 U. S. 43, 49 (1879).

Consent of the parties is one of the requisites of a valid contract for the sale of

Memorandum in Support of TRO/OSC

- 4 -

realty. It is essential to the creation of such a contract that there be a meeting of the minds of the parties and a mutual agreement on the terms of the contract. *Holland v. McCarthy*, 173 Cal. 597, 602, 160 P. 1069 (1916). The writing must evince a free and mutual understanding of the parties and show that they both agreed on the same thing in the same sense. *Estes v. Hardesty*, 66 Cal. App. 2d 747, 749, 152 P.2d 772 (2d Dist. 1944) or the writing has no binding effect on either. *Patterson v. Clifford F. Reid*, 132 Cal. App. 454, 456, 23 P.2d 35 (3d Dist. 1933), where the court found, "From the foregoing it is clear that the essential element of a valid contract, a meeting of minds on all essential elements, was lacking and therefore the writing has no binding effect upon either party. Although plaintiff signed the documents, it was distinctly agreed that they were not to be effective until she gave her approval at some later date, when the 'blanks' were to be filled in. 'A writing is incomplete as an agreement where blanks as to essential matters are left in it.' (13 C.J., pl 308, par. 133.)" 132 Cal. App. at 456.

"It is indispensible to a valid memorandum of an agreement to sell and convey land that it be complete evidence of the terms to which the parties have assented. If it establishes there was in fact no contract, if it discloses that upon essential and material terms *the minds of the parties did not meet* and that such terms were left open for future settlement, then there is no binding obligation upon the seller to convey or the buyer to accept and pay for the land. It will be regarded as merely an inchoate effort. Implications will not be indulged." *Salomon v. Cooper*, 98 Cal.App.2d. 521, 523, 220 P.2d 774, 775 (1950) (emphasis added).

If the evidence does not establish the indispensable "meeting of the minds" regarding the material terms of a transaction there is not an enforceable contract. *Martin Deli v. Schumacher*, 52 N.Y.2d 105, 109, 417 N.E.2d 541 (1981); *Brause v. Goldman*, 10 A.D.2d 328, 333, affirmed, 9 N.Y.2d 620, 172 N.E.2d 78 (1961).

If no meeting of the minds has occurred on the material terms of a contract, basic contract law provides that no contract formation has occurred. If no contract formation has occurred, there is no settlement agreement to enforce. *Weddington Productions,*

*Inc. v. Flick*, 60 Cal.App.4th 793, 797, 71 Cal.Rptr.2d 265, 268 (1998). *Weddington* continues, "The parties neither reached, nor objectively manifested, a meeting of the minds on the material terms of a settlement" (p 802). "...the record summarized and highlighted above graphically shows that there was never any meeting of the minds, either subjectively or objectively, as to exactly what these words meant" (p. 808).

Law Professor Kurt Eggert, in a May 2009 article published in the Connecticut Law Review, wrote, "Securitization took exotic subprime loans that are too unstable and complex for many borrowers to understand or use safely, and packaged these loans into securities that are, by their structure, excessively unstable and complex for most investors, multiplying the risk at both ends.

"Investors, like the borrowers, found that the disclosures given to them were inadequate to disclose those risks." (p. 51).

Real property ownership in the U.S. underwent the equivalent of a meltdown in the past decade. It started with repeal of the Glass-Steagall Act, followed by securitization of mortgages, abolition of traditional underwriting practices, and introduction of Credit Default Swaps. Main Street banks bet against their borrowers and Wall Street banks bet against their investors. Loan brokers inserted fraudulent figures in loan applications, encouraged by a growing appetite for toxic assets throughout the financial system.

It is incumbent upon the courts to restore order to the system, turning to Common Law principles to find principles marking the road to recovery– unjust enrichment, standing, real party in interest, fraud, oppression, mutual assent, and meeting of the minds. This is not a routine controversy. It cannot be resolved through summary procedures. Until the problem is solved with reasoned deliberation, fifteen million families will face foreclosure.

Borrowers thought they were going to pay back the loans and own their houses. Banks expected borrowers to default, to profit from the default, and then to sell the house. There was no contract because there was no shared expectation in this case,

where the lender knew or should have known that the borrower could not pay back the loan.

If Defendants are allowed to foreclose, Plaintiff will lose the family home. A harsher outcome could scarcely be imagined. In contrast, Defendants suffer nothing by preserving the status quo and allowing Plaintiff to remain in the home until this matter is determined on the merits. The home's value will be preserved by allowing Plaintiff to remain living there. In contrast, if the Property is foreclosed upon and left vacant, it will likely fall into disrepair and decline in value.

No bond should be required. District courts have broad discretion in determining the amount of a bond. See *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 882 (9th Cir.2003). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct. *Jorgensen, v. Cassidy*, 320 R.3d 906, 919 (9th Cir.2003).

There is no realistic harm to defendants from a restraint of the foreclosure proceedings and trustee's sale. If defendants prevail, the loan is adequately secured by the property in question and so additional security is neither appropriate nor warranted. *Phleger v. Countrywide Home Loans, Inc.*, 2007 WL 4105672 at 6 (N.D. Cal. 2007)

Plaintiff prays this Court grant the temporary restraining order and order to show cause and set the matter for a hearing for a preliminary injunction pending trial.

/s/

Date: October 29, 2010   _____
Douglas Gillies
Attorney for Plaintiff