1  DOUGLAS GILLIES, ESQ. (CA 53602)
2  douglasgillies@gmail.com
   3756 Torino Drive
3  Santa Barbara, CA 93105
4  (805) 682-7033

5  Attorney for Plaintiff
6  DARYOUSH JAVAHERI

FILED
CLERK, U.S. DISTRICT COURT
JAN 31 2011
2:07
CENTRAL DISTRICT OF CALIFORNIA
BY                             DEPUTY

**COPY**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYOUSH JAVAHERI, | ) No. CV10 8185 ODW (FFMx) |
| Plaintiff, | ) **FIRST AMENDED COMPLAINT** |
| v. | ) 1) Wrongful Foreclosure |
| JP MORGAN CHASE BANK N.A., | ) 2) Violation of Cal Civ. Code §2923.5 |
| and DOES 1-50, inclusive, | ) 3) Restitution |
| Defendants. | ) 4) No Contract |
| | ) 5) Quiet Title |
| | ) 6) Declaratory and Injunctive Relief |
| | ) 7) Intentional Infliction of Emotional Distress |
| | ) |
| | ) Jury Trial Requested |

First Amended Complaint         - 1 -

# INDEX

| | |
|---|---:|
| INTRODUCTION | 3 |
| PARTIES AND JURISDICTION | 3 |
| JURY TRIAL DEMAND | 4 |
| CLAIM FOR RELIEF | 4 |
| BACKGROUND FACTS | 5 |
| FIRST CAUSE OF ACTION – WRONGFUL FORECLOSURE | 6 |
| SECOND CAUSE OF ACTION – VIOLATION OF CAL CIV CODE §2923.5 | 9 |
| THIRD CAUSE OF ACTION - RESTITUTION | 11 |
| FOURTH CAUSE OF ACTION - NO CONTRACT | 12 |
| FIFTH CAUSE OF ACTION - QUIET TITLE | 14 |
| SIXTH CAUSE OF ACTION - DECLARATORY & INJUNCTIVE RELIEF | 16 |
| SEVENTH CAUSE OF ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS | 17 |
| PRAYER | 18 |
| VERIFICATION | 19 |
| PLAINTIFF'S EXHIBITS | 20 |

# INTRODUCTION

" The legal principles and requirements we set forth are well established in our case law and our statutes. All that has changed is the plaintiffs' apparent failure to abide by those principles and requirements in the rush to sell mortgage-backed securities...(T)he plaintiffs did not demonstrate that they were the holders of the Ibanez and LaRace mortgages at the time that they foreclosed these properties, and therefore failed to demonstrate that they acquired fee simple title to these properties by purchasing them at the foreclosure sale." Massachusetts Supreme Court in *U.S. Bank National Association vs. Ibanez* Case No. SJC-10694 (January 6, 2011).

During the past decade, big banks abandoned traditional underwriting practices and ignited a frenzy of real estate speculation by issuing predatory loans that ultimately lowered property values in the United States by 30-50%. Banks reaped an unprecedented harvest. Kerry Killinger, CEO of Washington Mutual, took home more than $100 million during the seven years he steered WaMu into bankruptcy. Banks issued millions of predatory loans knowing that the borrowers would default and lose their homes, and then committed perjury and fraud to fabricate documents to speed up the foreclosure process. As a direct, foreseeable result, twelve million families are predicted to lose their homes.

Plaintiff DARYOUSH JAVAHERI is facing illegal foreclosure of his home at a Trustee's Sale, currently scheduled for February 24, 2011. The loan application he submitted to Washington Mutual is attached as **Exhibit 1**. It consists of his name and address.

## PARTIES AND JURISDICTION

1. Plaintiff DARYOUSH JAVAHERI is a resident of California and owner of a single-family residence located at 10809 Wellworth Avenue, Los Angeles,

California 90024, APN 4325-005-014 ("the Wellworth Property") acquired by Grant Deed recorded on December 11, 2006. The legal description is:

> Lot 8 in Block 31 of Tract No 7803 in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 88, Pages 73 to 75 inclusive of Maps, in the Office of the County Recorder of said County.

2. Defendant JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, ("Chase"), a New York corporation licensed to do business in California, is an acquirer of certain assets and liabilities of WAMU from the Federal Deposit Insurance Corporation ("FDIC") acting as receiver. Chase claims to be the note holder, beneficiary, or servicer for investment trusts of a note secured by the Wellworth Property.

3. Defendants Does 1-50, inclusive, are sued under fictitious names. When their true names and capacities are known, Plaintiff will amend this Complaint and insert their names and capacities. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants claims some right, title, estate, lien, or interest in the residence adverse to Plaintiff's title and their claims constitute a cloud on Plaintiff's title to the property, or participated in unlawful or fraudulent acts that resulted in injury to Plaintiff's person or property.

4. There is diversity of citizenship between Plaintiff and Defendant Chase, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000. This court has jurisdiction of the action pursuant to 28 U.S.C. 1332(a). Declaratory relief is authorized under 28 U.S.C. 2210.

## JURY TRIAL DEMAND

5. Plaintiff requests a jury trial on all issues.

## CLAIM FOR RELIEF

6. Plaintiff brings this action against JPMorgan Chase Bank, NA ("Chase"), and Does 1 through 50 for attempting to sell Plaintiff's Wellworth Property at a

trustee's sale and deprive Plaintiff of his residence without any lawful claim to the Property.

## BACKGROUND FACTS

7. Plaintiff is the owner of the Wellworth Property according to the terms of a Grant Deed. Plaintiff financed purchase of the Property in 2006. His loan application was submitted to Washington Mutual Bank ("WaMu") in September 2006. A copy of Plaintiff's Uniform Residential Loan Application, furnished to him by WaMu with instructions to leave most of the items blank, is attached hereto as **Exhibit 1**.

8. Plaintiff signed the mortgage documents in November 2006 at Chicago Title Company. He was not given an opportunity to review the documents, other than to quickly initial or sign various pages. After he signed, a Chicago Title Company employee told Plaintiff that WaMu would forward the finalized documents to him. Plaintiff did not receive any documents from WaMu.

9. Plaintiff is named as Borrower on a Deed of Trust describing the Wellworth Property dated November 14, 2007 ("DOT"). The DOT is attached hereto as **Exhibit 7.** Washington Mutual Bank, FA is identified on the DOT as "Lender" and "the beneficiary under this security agreement." Chicago Title Company is named as Trustee.

10. Plaintiff is informed and believes that WaMu securitized Plaintiff's single-family residential mortgage loan through Washington Mutual Mortgage Securities Corporation.  Thereafter, WaMu acted only as servicer of the loan, and was not the Lender or a Beneficiary of the Note.

11. Plaintiff is informed and believes that California Reconveyance Co. ("CRC") is a wholly owned subsidiary of Chase. CRC is named as Trustee on a Substitution of Trustee describing the Wellworth Property recorded in Los Angeles County on May 3, 2010, attached hereto as **Exhibit 8**. The Substitution is allegedly signed by *Deborah Brignac, Vice President, JPMorgan Chase Bank, National*

*Association successor in interest to Washington Mutual Bank, FA*. Deborah Brignac's name and markedly differing signatures appear on a multitude of recorded documents describing her variously as a Vice President of CRC or Vice President of Chase. Her signature on the Substitution of Trustee is a probably a forgery.

12. On May 14, 2010, CRC recorded a Notice of Default ("NOD"), attached hereto as **Exhibit 2**, describing the Wellworth Property with instructions that Plaintiff contact JPMORGAN CHASE BANK, NATIONAL ASSOCIATION to stop the foreclosure. The NOD was signed by Silvia Freeberg, Assistant Secretary. A "Declaration of Compliance (Cal Civil Code Section 2923.5(b)" attached to the NOD was signed under penalty of perjury by Renee Daniels on behalf of JPMorgan Chase Bank, National Association. Chase is described in the Declaration of Compliance as "The undersigned mortgagee, beneficiary or authorized agent." Washington Mutual is described in the body of the NOD as beneficiary. However, Chase's interest, if any, was acquired from WaMu under a Purchase and Assumption Agreement in September 2008, and WaMu's beneficial interest had terminated when WaMu sold the Note to investors in 2006.

13. On or about October 15, 2010, CRC recorded a Notice of Trustee's Sale ("NOTS") stating that the Wellworth Property would be sold at public auction on November 8, 2010. The NOTS included a declaration pursuant to California Civil Code Section 2923.54 bearing the name of Ann Thorn, First Vice President, JPMorgan Chase National Association. Chase was identified as a servicer on the NOTS.

**FIRST CAUSE OF ACTION – WRONGFUL FORECLOSURE**

14. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 13.

15. Soon after WaMu originated the loan, Plaintiff is informed and believes that WaMu transferred all beneficial interest in the loan to a private investor.

First Amended Complaint             - 6 -

16. Neither WaMu, Chicago Title, CRC, nor Chase has recorded a transfer of beneficial interest in the Note to Chase. Paragraph 24 of the DOT (Plaintiff's Exhibit 7) states:

> 24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without reconveyance of the property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

17. Chase does not have standing to enforce the Note because Chase is not the owner of the Note, Chase is not a holder of the Note, and Chase is not a beneficiary under the Note. Chase does not have capacity to appoint a successor trustee. Chase does not claim to be a holder of the note or a beneficiary. Chase describes itself as a loan servicer in the Notice of Trustee's Sale. If Chase can prove that it is a servicer, Chase cannot foreclose on Plaintiff's property without authorization from the Lender under the terms of the Deed of Trust.

18. Plaintiff is informed and believes that Chase cannot produce an original promissory note. Chase does not own the loan and cannot identify the owner of the loan. Chase did not purchase the loan when it took over WaMu in September 2008 because WaMu had sold its beneficial interest in the loan two years earlier.

19. A power of sale is conferred on the mortgagee, trustee, or other person by the mortgage under California law. Cal. Civ. Code §2924. The Adjustable Rate Note attached as **Exhibit 6** identifies Washington Mutual Bank as the Lender in

Paragraph 1, which then says, "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

The Note states in paragraph 7(C):

> Notice of Default. If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount."

So the Note gives the right to collect, if timely payments are not made, to the Lender and anyone who takes the Note by transfer. This does not include a servicer who is not the Note Holder.

20. Plaintiff's Deed of Trust, dated 11/14/2007, ("DOT") is attached hereto as **Exhibit 7**. The "Lender" identified in the DOT is WASHINGTON MUTUAL BANK, FA (page 1, paragraph C). The "Trustee" is Chicago Title Company. (page 2, paragraph D).

In keeping with the language of the Note, only the Lender is authorized under paragraph 22 of the DOT to accelerate the loan:

> "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant of agreement in this Security Instrument…
>
> "If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located." (DOT page 13, paragraph 22).

21. Washington Mutual Bank remained the Lender for no more than a few days until it sold the loan. Thereafter, it was a servicer of the loan. The Note Holder was presumably the investment trust that put up the money.

"Lender, at its option, may from time to time appoint a successor Trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located." (DOT page 13, paragraph 24).

Defendants ask for the Court's blessing to proceed with foreclosure of Plaintiff's property even if they cannot inform the Court who the Lender might possibly be.

22. On May 3, 2010, CRC recorded a Substitution of Trustee (**Exhibit 8**, attached hereto) signed by Deborah Brignac, Vice President of JPMorgan Chase Bank, as successor in interest to Washington Mutual FA. Brignac's signature is a forgery. The document describes Chase as the present Beneficiary under the Deed of Trust and then purports to substitute California Reconveyance Company, of which Brignac is a Vice President, as a new Trustee in place of Chicago Title.

23. Chase was not the beneficiary, never was, and Brignac had no authority to assert the role of beneficiary. The substitution was unauthorized, so CRC was not authorized to initiate foreclosure against Plaintiff on May 14, 2010, when it recorded the Notice of Default (Plaintiff's **Exhibit 2**), and it was not acting for the Lender when it filed the Notice of Trustee's Sale on August 16, 2010 (**Exhibit 9**).

**SECOND CAUSE OF ACTION – VIOLATION OF CAL CIV CODE §2923.5**

24. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 23.

25. Chase and CRC commenced foreclosure of the Wellworth Property when CRC recorded a Notice of Default in the Los Angeles County Recorder's Office on May 14, 2010 (Exhibit 2). Attached to the NOD was a Declaration of Compliance with Cal. Civil Code §2923.5 signed under penalty of perjury by Renee Daniels on behalf of Chase.

26. Plaintiff is informed and believes that declarant Renee Daniels did not have personal knowledge of the matters described in her declaration, which

purported to describe attempts by Chase to contact Plaintiff as required by §2923.5. The NOD must include a declaration from one of three entities showing that it contacted the borrower or tried with due diligence to contact the borrower.

27. On October 1, 2010, California Attorney General Jerry Brown sent a letter to Chase and ordered Chase to halt all foreclosures in California. A copy of the letter is posted on the Attorney General's website at ag.ca.gov/newsalerts and attached hereto as **Exhibit 3**. Mr. Brown wrote:

> The Office of the Attorney General writes to demand that JP Morgan Chase demonstrate immediately that it conducts foreclosures in compliance with California Civil Code, section 2923.5 or, if it cannot, halt all foreclosures in California until it can.
>
> Section 2923.5, subdivision (b) provides that a lender may not record a notice of default in California for a California mortgage originated between January 1, 2003 and December 31, 2007, unless it can declare that it "has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required pursuant to subdivision (h)."
>
> JP Morgan Chase has now admitted that employees assigned to handling foreclosures signed affidavits without first personally reviewing the contents of borrowers' loan files. Thus, borrowers suffered the foreclosure of their homes based on affidavits that JP Morgan Chase had not confirmed to be accurate. This admission strongly suggests that any purported verification by JP Morgan Chase that it complied with section 2923.5 before commencing a foreclosure in California is similarly suspect.

///

28. On October 8, 2010, the Attorney General, now Governor of California, called upon all lenders in California to halt foreclosing on California homes until

they can demonstrate that compliance with state law and posted a copy on the Attorney General's website.

29. Foreclosures have been suspended by state attorneys general in various states based on testimony of employees of Chase, Ally (GMAC), Bank of America, and other banks that declarations and affidavits were manufactured to commence foreclosures that were not based on the personal knowledge of the robo-signers whose names and signatures appeared on the foreclosure documents without the declarants possessing personal knowledge of the matters stated therein.

30. The declaration of Renee Daniels attached to the NOD (Exhibit 2) does not meet the requirements of Civil Code §2923.5, and so foreclosure of Plaintiff's Wellworth Property would be illegal under California law and must be enjoined.

## THIRD CAUSE OF ACTION - RESTITUTION

31. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 30.

32. Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.

33. WaMu received the balance on Plaintiff's Note when it securitized the loan within days of its inception. Chase describes itself on the NOTS as a servicer, not the Lender. Chase has no beneficial interest in Plaintiff's mortgage, so the pending foreclosure of Plaintiff's Wellworth Property would constitute unjust enrichment.

34. The DOT states that all secured sums must be paid. Plaintiff alleges that the obligations under the DOT were fulfilled when WaMu received funds in excess of the balance on the Note as a result of proceeds of sale through securitization to private investors and insurance proceeds from Credit Default Swaps. The investors

have also been paid in full, and so Chase has been unjustly enriched by demanding monthly payments from Plaintiff.

35. Plaintiff is entitled to restitution for any payments he made to Chase that were not paid to the beneficiary, if any.

## FOURTH CAUSE OF ACTION - NO CONTRACT

36. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 35.

37. Plaintiff is informed and believes that WaMu routinely approved predatory real estate loans to unqualified buyers in 2006 and 2007 and implemented unlawful lending practices by encouraging brokers and loan officers to falsify borrowers' income and assets to meet underwriting guidelines when borrowers were not qualified.

38. Plaintiff followed WaMu's instructions when he submitted a Uniform Residential Loan Application (Exhibit 1) to WaMu that contained only his basic identifying information, such as name, address, phone number, social security number, and bank account number. WaMu employees filled out the application.

39. Plaintiff is informed and believes that WaMu pre-sold Plaintiff's mortgage and immediately after he signed the Note transferred all of its interest in the Note to an investment bank that bundled Plaintiff's Note with numerous other residential mortgages into residential mortgage-backed securities ("RMBS") which were structured into synthetic collateralized debt obligations ("CDOs") and sold to investors.

40. Plaintiff is informed and believes that the portfolio of RMBS underlying the synthetic CDOs were selected by a hedge fund with economic interests directly adverse to borrowers and investors, and that the hedge fund and the investment bank intended to short the portfolio it helped to select by entering into credit default swaps to buy protection against the almost certain event that the promissory notes would default. WaMu expected that Plaintiff would not have the ability to

repay the loan. It was not simply a matter of being unconcerned with the possible outcome that Plaintiff would default; WaMu expected he would default.

41. Washington Mutual Bank, the sponsor of the securitization transaction, was a wholly owned subsidiary of Washington Mutual Inc. Securitization of mortgage loans was an integral part of Washington Mutual Inc.'s management of its capital. It engaged in securitizations of first lien single-family residential mortgage loans through Washington Mutual Mortgage Securities Corporation, as depositor, beginning in 2001. WaMu acted only as a servicer of Plaintiff's loan.

42. WaMu failed to disclose to Plaintiff that its economic interests were adverse to Plaintiff and that WaMu expected to profit when Plaintiff found it impossible to perform and defaulted on his mortgage.

43. A necessary element in the formation of an enforceable contract under the common law is a *meeting of the minds*. Two or more parties must share an expectation that a future event will occur. Plaintiff expected that he would borrow money from WaMu, he would pay it back, and then he would own the Property. WaMu expected that Plaintiff would borrow money, he would not be able to pay it back, and then WaMu or the investors would own the Property. Since there was no shared expectation—no meeting of the minds—no contract was formed between Plaintiff and WaMu.

38. In addition to WaMu's expectation that Plaintiff would lose title to the Wellworth Property through foreclosure, WaMu anticipated transferring the Note to investors immediately after Plaintiff signed the Note. Plaintiff is informed and believes that WaMu purchased credit default insurance so that WaMu would receive the balance on the Note when Plaintiff defaulted, in addition to any money WaMu received when it securitized the note.

44. Not only did WaMu dispense with conventional underwriting practices in 2006, it also paid premium fees and other incentives to mortgage brokers who signed up the riskiest borrowers. Fueled by spiraling profits to Chase, WaMu, and

First Amended Complaint  - 13 -

other bankers, common law principles of contract formation, customary underwriting practices, and statutory procedures for transferring interests in real property, including the recordation of transfers of interests in real property, disintegrated and the system collapsed.

45. WaMu expected that Plaintiff would not perform as merely one victim in a scheme in which:

(1) WaMu's fees as servicer would be greater as the number of loans increased;

(2) WaMu's fees as servicer would be greater as the balances of loans increased;

(3) WaMu would recover the unpaid balance of Plaintiff's loan through credit default insurance when Plaintiff inevitably defaulted; and

(4) All risk of loss in the event of Plaintiff's default would be borne by investors, not WaMu as the servicer.

46. Plaintiff's participation in the mortgage contract was procured by overt and covert misrepresentations and nondisclosures. The parties did not share a single expectation with respect to any of the terms of the mortgage contract and therefore the contract was void *ab initio*.

47. No enforceable contract was formed between Plaintiff and WaMu, so his DOT and Promissory Note were not assets of WaMu that could be acquired or assumed by Chase from the Federal Deposit Insurance Corporation (FDIC) as receiver after WaMu was closed by the Office of Thrift Supervision on September 25, 2008.

48. Chase Bank has no right to receive payment under Plaintiff's mortgage loan and has no right to foreclose on his Wellworth Property. Plaintiff does not seek rescission of the contract. He alleges that the contract was void *ab initio*.

**FIFTH CAUSE OF ACTION - QUIET TITLE**

49. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 48.

50. Plaintiff seeks to quiet title against the claims of Defendants and all

persons claiming any legal or equitable right, title, estate, lien, or adverse interest in the Wellworth Property as of the date the Complaint was filed (Cal Code Civil Procedure §760.020)

51. Plaintiff is the titleholder of the Wellworth Property according to the terms of a Grant Deed recorded on December 11, 2006.

52. WaMu securitized Plaintiff's single-family residential mortgage loan through Washington Mutual Mortgage Securities Corp. Plaintiff is informed and believes that the lawful beneficiary has been paid in full.

<u>The DOT states in paragraph 23:</u>

> 23. Reconveyance. Upon payment of all sums secured by this Security Instrument, lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it…

///

The DOT does not state that Plaintiff must make full payment, only that all secured sums must be paid. Plaintiff alleges that the obligations owed to WaMu under the DOT were fulfilled and the loan was fully paid when WaMu received funds in excess of the balance on the Note as proceeds of sale through securitization(s) of the loan and insurance proceeds from Credit Default Swaps.

53. Defendants' claims are adverse to Plaintiff because Plaintiff is informed and believes that none of the defendants is the holder of the Promissory Note, none of them can prove any interest in the Note, and none of them can prove that the Note is secured by the DOT, as well as for the reasons set forth in the preceding causes of action. As such, Defendants have no right, title, estate, lien, or interest in the Wellworth Property.

54. Plaintiff therefore seeks a judicial declaration that the title to the Wellworth Property is vested solely in Plaintiff and that Defendants have no right,

First Amended Complaint                - 15 -

title, estate, lien, or interest in the Property and that Defendants and each of them be forever enjoined from asserting any right, title, estate, lien or interest in the Property adverse to Plaintiff.

**SIXTH CAUSE OF ACTION - DECLARATORY & INJUNCTIVE RELIEF**

55. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54.

56. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties. Plaintiff contends:

(a) that Chase is not the present holder in due course or beneficiary of a Promissory Note executed by Plaintiff. However, Defendants contend that Chase is the present owner and beneficiary of a Promissory Note executed by Plaintiff.

(b) that Defendants are not real parties in interest, do not have standing, and are not entitled to accelerate the maturity of any secured obligation and sell the Wellworth Property because they are not a beneficiary or authorized agent of beneficiaries under the purported Promissory Note. However, Defendants assert that they are entitled to sell the Property.

(c) that the Substitution of Trustee recorded in Los Angeles County on May 3, 2010, which purports to substitute CRC in place of Chicago Title Co. as Trustee under the Deed of Trust dated 11-14-2007, was subscribed with a forged signature of Deborah Brignac, Vice President of Chase, and fraudulently acknowledged, and therefore CRC is not a trustee authorized to file a Notice of Default or a Notice of Trustee's Sale on the Wellworth Property. However, Defendants contend that CRC is a trustee duly authorized to file said Notices.

57. Plaintiff desires a judicial determination of his rights and duties as to the validity of the Promissory Note and DOT, and Defendants' rights to proceed with nonjudicial foreclosure on the Wellworth Property. Unless restrained, Defendants will sell Plaintiff's residence, or cause it to be sold, to Plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate

relief.

58. Defendants' wrongful conduct, unless and until restrained by order of this court, will cause great irreparable injury to Plaintiff as the value of the residence declines under threat of foreclosure and Plaintiff faces the prospect of eviction from his residence. Plaintiff designed and built this home himself. It is unique and cannot be replicated.

59. If the foreclosure sale is allowed to proceed, the burden on Plaintiff significantly outweighs the benefit to Defendants, and each of them.

60. By contrast, if the foreclosure sale is enjoined, the burden to defendants is minimal and is not outweighed by the benefit to Plaintiff.

61. Plaintiff has no adequate remedy at law for the injuries currently being suffered and that are threatened. It will be impossible for Plaintiff to determine the precise amount of damage that he will suffer if Defendants' conduct is not restrained and Plaintiff must file a multiplicity of suits to obtain compensation for his injuries.

## SEVENTH CAUSE OF ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 61.

63. Plaintiff contends that the acts and omissions of the Defendants, and each of them, constitute extreme and outrageous conduct.

64. Plaintiff further contends that Defendants, and each of them, engaged in such conduct either intentionally or with reckless disregard as to the effect on Plaintiff.

65. As a result of said extreme and outrageous conduct by Defendants, and each of them, Plaintiff has suffered severe emotional distress in the amount of $5,000,000.00.

///

## PRAYER

WHEREFORE, Plaintiff requests judgment as follows:

1. That this court issue an Order to Show Cause and, after a hearing, issue a Temporary Restraining Order and Preliminary Injunction restraining Defendants, and each of them, during the pendency of this action, from continuing with their efforts to conduct a Trustee's Sale of the Wellworth Property.

2. That the attempted foreclosure of the Wellworth Property be declared illegal and that Defendants be forever enjoined and restrained from selling the Property or attempting to sell it or causing it to be sold, either under power of sale pursuant to trust deed or by foreclosure action, and from posting, publishing, or recording any notice of default or notice of trustee's sale contrary to state or federal law.

3. That the underlying loan transaction be declared void as a result of Defendants' and WaMu's misrepresentations, fraud, concealment, and predatory loan practices.

4. That Defendants make restitution to Plaintiff according to proof.

5. For a judgment determining that Plaintiff is the owner in fee simple of the Wellworth Property against the adverse claims of Defendants and that Defendants have no interest in the subject property adverse to Plaintiff.

6. For damages in an amount of $5,000,000.00.

6. For costs of suit and reasonable attorney fees.

7. For any and all other and further relief that may be just in this matter.

Date: January 29, 2011

Douglas Gillies, Attorney for Plaintiff

First Amended Complaint                    - 18 -

## VERIFICATION

Daryoush Javaheri declares:

I am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know its contents. The same is true of my own knowledge, except as to those matters that are alleged on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on January 31, 2011.

_____
Daryoush Javaheri