1   DOUGLAS GILLIES, ESQ.  (CA 53602)
2   douglasgillies@gmail.com
    3756 Torino Drive
3   Santa Barbara, CA 93105
4   (805) 682-7033

5   Attorney for Plaintiff
6   DARYOUSH JAVAHERI

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  DARYOUSH JAVAHERI,              )   No. CV10 8185 ODW (FFMx)

12            Plaintiff,            )   **SECOND AMENDED COMPLAINT**

13  v.                             )   1) Violation of Cal Civ. Code §2923.5

14  JP MORGAN CHASE BANK N.A.,      )   2) Wrongful Foreclosure

15  and DOES 1-50, inclusive,       )   3) Quasi Contract

16            Defendants.          )   4) No Contract

17                                 )   5) Quiet Title

18                                 )   6) Declaratory and Injunctive Relief

19                                 )   7) Intentional Infliction of Emotional

20                                 )   Distress

21                                 )

22                                 )   Jury Trial Demanded

23

24

25

26

27

28

Second Amended Complaint           - 1 -

1

# INDEX

2   **INTRODUCTION**    **3**

3   **PARTIES AND JURISDICTION**    **4**

4   **JURY TRIAL DEMAND**    **5**

5   **CLAIM FOR RELIEF**    **5**

6   **BACKGROUND FACTS**    **5**

7   **FIRST CAUSE OF ACTION – VIOLATION OF CAL CIV CODE §2923.5**    **7**

8   **SECOND CAUSE OF ACTION – WRONGFUL FORECLOSURE**    **10**

9   **THIRD CAUSE OF ACTION – QUASI CONTRACT**    **14**

10   **FOURTH CAUSE OF ACTION - NO CONTRACT**    **15**

11   **FIFTH CAUSE OF ACTION - QUIET TITLE**    **18**

12   **SIXTH CAUSE OF ACTION - DECLARATORY & INJUNCTIVE RELIEF**    **19**

13   **SEVENTH CAUSE OF ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**    **21**

14   **PRAYER**    **22**

15   **VERIFICATION**    **23**

16   **PLAINTIFF'S EXHIBITS**    **24**

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1. During the past decade, Washington Mutual Bank (WaMu) and JPMorgan Chase Bank (Chase) abandoned traditional underwriting practices and contributed to a frenzy of real estate speculation by issuing predatory loans that ultimately lowered property values in the United States by 30-60%. Kerry Killinger, CEO of Washington Mutual, took home more than $100 million during the seven years he steered WaMu into bankruptcy. In March 2011, the FDIC filed a sixty-page complaint against Killinger and Stephen Rotella, a former WaMU COO, alleging gross negligence, breach of fiduciary duty, and fraudulent conveyance. *FDIC v. Kerry Killinger, Stephen Rotella, et. al.,* Case No. 2:11-cv-00459 USDC (WD WA Mar. 16, 2011) .

2. WaMu issued millions of predatory loans between 2001 and 2008 with the knowledge that borrowers, including Plaintiff, would default and lose their homes. WaMu filled in fictitious figures on Plaintiff's loan application so that it would meet underwriting standards and WaMu could earn fees when it sold the loan to investors and then acted as serviver without any risk of loss when the borrower defaulted. Such blatant, systematic, and inexcusable acts of fraud constituted a criminal enterprise. As a direct, foreseeable result of WaMu's illegal behavior, over a million families will lose their homes if the courts do not intervene and permit the borrowers to conduct discovery in order to determine who owns their loans.

3. Plaintiff DARYOUSH JAVAHERI is facing illegal foreclosure of his home at a Trustee's Sale, currently scheduled for April 26, 2011. The loan application he submitted to Washington Mutual, attached as **Exhibit 1**, shows that his loan application consisted only of his name and address and three account numbers. The rest of the application was filled in by unknown employees of WaMu on or about September 8, 2006, to meet underwriting standards so that WaMu would collect fees when it sold the loan to unsuspecting investors in mortgage-backed securities and collateralized debt obligations.

**PARTIES AND JURISDICTION**

4. Plaintiff DARYOUSH JAVAHERI is the owner of the single-family residence located at 10809 Wellworth Avenue, Los Angeles, California 90024, APN 4325-005-014 ("the Wellworth Property"). He acquired it by a Grant Deed recorded on December 11, 2006. The legal description is:

> Lot 8 in Block 31 of Tract No 7803 in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 88, Pages 73 to 75 inclusive of Maps, in the Office of the County Recorder of said County.

5. Defendant JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, ("Chase"), a New York corporation licensed to do business in California, claims to be a note holder, beneficiary, or servicer for investment trusts of a Note secured by the Wellworth Property.

6. Defendants Does 1-50, inclusive, are sued under fictitious names. When their true names and capacities are known, Plaintiff will amend this Complaint and insert their names and capacities. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and proximately thereby caused the injuries and damages to plaintiff as hereinafter alleged, or claims some right, title, estate, lien, or interest in the residence adverse to Plaintiff's title and their claims constitute a cloud on Plaintiff's title to the property, or participated in unlawful or fraudulent acts that resulted in injury to Plaintiff's person or property. Upon information and belief, Does 1-30 claim to have become successors in interest to the Subject Mortgage by virtue of Plaintiff's loan having been made a part of a securitization process wherein certain residential mortgages and the promissory notes based thereon were securitized by aggregating a large number of promissory notes into a mortgage loan pool, then selling security interests in that pool of mortgages to investors by

1    way of items called "Secondary Vehicles".

2        7.  There is diversity of citizenship between Plaintiff and Defendant Chase,

3    and the matter in controversy exceeds, exclusive of interest and costs, the sum of

4    $75,000. This court has jurisdiction of the action pursuant to 28 U.S.C. 1332(a).

5    Declaratory relief is authorized under 28 U.S.C. 2210.

6

7                              **JURY TRIAL DEMAND**

8        8. Plaintiff demands a jury trial on all issues.

9

10                              **CLAIM FOR RELIEF**

11       9. Plaintiff brings this action against JPMorgan Chase Bank, NA ("Chase")

12   and Does 1 through 50 for attempting to sell Plaintiff's Wellworth Property at a

13   trustee's sale and deprive Plaintiff of his residence without a lawful claim to the

14   Property. Plaintiff seeks to clear his title of Chase's claim.

15

16                              **BACKGROUND FACTS**

17       10. Plaintiff is the owner of the Wellworth Property under the terms of a

18   Grant Deed executed by Helene Caron in favor of Daryoush Javaheri dated

19   October 19, 2006 (Exhibit 1**)**.

20       11. To finance his purchase of the Wellworth Property, Plaintiff submitted a

21   loan application to Washington Mutual Bank ("WaMu") on September 8, 2006. A

22   copy of Plaintiff's Uniform Residential Loan Application, furnished to him by

23   WaMu with instructions to leave virtually all of the items blank, is attached hereto

24   as **Exhibit 2**.

25       12. Plaintiff purportedly signed an Adjustable Rate Note (**Exhibit 3**)

26   (hereinafter "Note") and a Deed of Trust (**Exhibit 4**) on November 14, 2006, at

27   Chicago Title Company. He was not given an opportunity to review the

28   documents, other than to quickly initial or sign some pages. After he signed, a

Second Amended Complaint            - 5 -

1  Chicago Title Company employee informed Plaintiff that WaMu would forward
2  the final documents to him. Plaintiff did not receive any documents from Chicago
3  Title or WaMu.

4       13. Plaintiff is named as Borrower on the Note and on the Deed of Trust
5  dated November 14, 2007 ("DOT"). Washington Mutual Bank, FA is identified on
6  the DOT as "Lender" as well as "the beneficiary under this security agreement."
7  Chicago Title Company is named as Trustee.

8       14. Plaintiff is informed and believes that between November 15 and
9  November 30, 2007, WaMu transferred Plaintiff's Note to Washington Mutual
10 Mortgage Securities Corporation. The Note was then sold to an investment trust
11 and became a part of, or was subject to, a Loan Pool, a Pooling and Servicing
12 Agreement, a Collateralized Debt Obligation, a Mortgage-Backed Security, a
13 Mortgage Pass-Through Certificate, a Credit Default Swap, an Investment Trust,
14 and/or a Special Purpose Vehicle. The security is identified as Standard & Poor
15 CUSIP # 31379XQC2, Pool Number 432551. Thereafter, WaMu acted solely as a
16 servicer of the loan, and was neither Lender nor Beneficiary after November 2007.

17      15. CHASE claims to be the note holder, lender, beneficiary, and servicer
18 for investment trusts of the Subject Mortgage. Chase has not recorded its claim of
19 ownership of the purported mortgage.

20      16. Plaintiff is informed and believes that California Reconveyance
21 Company ("CRC") is a wholly owned subsidiary of Chase.

22      17. On August 16, 2010, CRC recorded a Notice of Trustee's Sale ("NOTS")
23 stating that the Wellworth Property would be sold at public auction on September
24 7, 2010. The NOTS bears the purported signature of Deborah Brignac, Vice
25 President of California Reconveyance Company, as Trustee. The NOTS included
26 an unsigned "declaration" pursuant to Cal. Civil Code Section 2923.54 bearing the
27 name of Ann Thorn, First Vice President, JPMorgan Chase Bank, National
28 Association. Chase is identified as a servicer on the NOTS.

Second Amended Complaint      - 6 -

**FIRST CAUSE OF ACTION – VIOLATION OF CAL CIV CODE §2923.5**

18.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 17.

19. On or about March 22, 2010, Chase Home Finance LLC in Jacksonville FL mailed to Plaintiff a Notice of Collection Activity, attached hereto as **Exhibit 5**, stating that Plaintiff had not made his monthly payments since November 2009. It stated, "You may cure this default within thirty (30) days from date of letter" (sic) and "your home loan may be eligible for a loan modification program."

20. Within 30 days, Plaintiff's lawyer, Fariba Banayan, faxed a letter to Chase offices in Jacksonville FL, Columbus OH, and Glendale CO requesting the bank's assistance to rectify the account. It stated, in part, "This office has been retained to represent Daryoush Javaheri in reference to the above stated loan. All future communications with Mr. Javaheri in this regard should be conducted through this office…. Please provide my client with the alternatives available to him at this time regarding this loan." The letter is attached as **Exhibit 6**. Chase did not respond to Mr. Banayan's timely request for assistance.

21. California Civil Code § 2923.5 provides that a borrower may designate an attorney to discuss options with the mortgagee, beneficiary, or authorized agent, on the borrower's behalf, to avoid foreclosure. § 2923.5 (a) states:

> (1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).
> (2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled

for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

22. Chase did not contact Plaintiff or Mr. Banayan, either in person or by telephone, to discuss Plaintiff's financial condition and the impending foreclosure. Chase did not call, it did not write, and it did not provide a toll-free HUD number to Plaintiff or his lawyer. Chase did not offer to meet with Plaintiff or his lawyer and did not advise them that Plaintiff had a right to request a subsequent meeting within 14 days.

23. California Civil Code § 2923.5(g) states that a notice of default may be filed pursuant to § 2924 when a mortgagee, beneficiary, or authorized agent has *not* contacted a borrower provided that the failure to contact the borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent.   Due diligence is defined in (g) as:

(1) A mortgagee, beneficiary, or authorized agent shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2) (A) After the letter has been sent, the mortgagee, beneficiary, or authorized agent shall attempt to contact the borrower by telephone at least three times at different hours and on different days.  Telephone calls shall be made to the primary telephone number on file.

(B) A mortgagee, beneficiary, or authorized agent may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgagee, beneficiary, or authorized agent.

(C) A mortgagee, beneficiary, or authorized agent satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the

telephone call requirements of paragraph (2) have been satisfied, the mortgagee, beneficiary, or authorized agent shall then send a certified letter, with return receipt requested.

(4) The mortgagee, beneficiary, or authorized agent shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgagee, beneficiary, or authorized agent has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgagee, beneficiary, or authorized agent when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgagee, beneficiary, or authorized agent.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

24. Chase did none of the above. Chase Fulfillment Center sent Plaintiff a "Request Disqualification" on September 1, 2010, attached as **Exhibit 7**. It said, "Unfortunately, because your initial request was less than seven (7) business days from the date of the scheduled foreclosure sale on your home, you are no longer eligible under Making Home Affordable ("MHA") Program guidelines." A second copy was sent on September 7.

25. Chase and CRC recorded a Notice of Default against the Wellworth Property in the Los Angeles County Recorder's Office on May 14, 2010 (**Exhibit 9**). Attached to the NOD was a Declaration of Compliance with Cal. Civil Code §2923.5 certified under penalty of perjury by Renee Daniels on behalf of Chase. She checked off a box that read, "The mortgagee, beneficiary or authorized agent

1   tried with due diligence but was unable to contact the borrower to discuss the

2   borrower's financial situation and to explore options for the borrower to avoid

3   foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more

4   have elapsed since these due diligence efforts were completed."

5       26. Renee Daniels either misrepresented the facts, if and when she signed

6   the declaration, or she did not have personal knowledge of the matters described in

7   her declaration when she asserted that Chase attempted to contact Plaintiff as

8   required by §2923.5. Since the contacts required by §2923.5 did not occur, the

9   foreclosure is illegal.

10

11       **SECOND CAUSE OF ACTION – WRONGFUL FORECLOSURE**

12       27. Plaintiff re-alleges and incorporates by reference the allegations

13   contained in paragraphs 1 through 26.

14       28. Soon after WaMu originated the loan, Plaintiff is informed and believes

15   that WaMu transferred all beneficial interest in the loan to a private investor.

16       29. Neither WaMu, Chicago Title, CRC, nor Chase has recorded a transfer

17   of beneficial interest in the Note to Chase.

18       30. Chase does not have standing to enforce the Note because Chase is not

19   the owner of the Note, Chase is not a holder of the Note, and Chase is not a

20   beneficiary under the Note. Chase does not claim to be a holder of the Note or a

21   beneficiary. Chase describes itself as a loan servicer in the Notice of Trustee's Sale.

22   If Chase can prove that it is a servicer, Chase cannot foreclose on Plaintiff's

23   property without authorization from the Lender under the terms of the Deed of

24   Trust.

25       31. Plaintiff is informed and believes that Chase cannot produce an original

26   Note. Chase does not own the loan and cannot identify the owner of the loan.

27   Chase did not purchase the loan when it took over WaMu in September 2008

28   because WaMu had sold its beneficial interest in the loan two years earlier.

Second Amended Complaint      - 10 -

32. A power of sale is conferred by the mortgage under Cal. Civ. Code §2924. The Adjustable Rate Note attached as Exhibit 3 states, "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."  The Note states in paragraph 7(C):  "Notice of Default. If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount." The Note gives the right to collect, if timely payments are not made, to the Lender and anyone who takes the Note by transfer. This does not include a servicer who is not the Note Holder.

33.  According to Plaintiff's Deed of Trust, the "Lender" is WASHINGTON MUTUAL BANK, FA, and the "Trustee" is Chicago Title Company.

Consistent with the language of the Note, only the Lender is authorized under paragraph 22 of the DOT to accelerate the loan:

> "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant of agreement in this Security Instrument…

> "If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located." (DOT page 13, paragraph 22).

34.  Washington Mutual Bank remained the Lender for no more than a few days until it sold the loan. Thereafter, it was a servicer of the loan. The Note Holder or Lender was the Investment Trust or that funded the loan.

35. Paragraph 24 of the DOT (Plaintiff's Exhibit 4) states:

> 24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located.

Second Amended Complaint          - 11 -

> The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without reconveyance of the property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

Chase seeks to proceed with foreclosure of Plaintiff's property even though it cannot identify the Lender and therefore is incapable of substituting the Trustee.

36. On May 3, 2010, CRC recorded a Substitution of Trustee (**Exhibit 8**) signed by Deborah Brignac, Vice President of JPMorgan Chase Bank. The signature of Deborah Brignac on the Substitution of Trustee does not resemble the signature of Deborah Brignac, Vice President of California Reconveyance Company on the Notice of Trustee's Sale (**Exhibit 10**). It is a forgery.

37. The Substitution of Trustee purports to substitute CRC as Trustee in place of Chicago Title. Brignac's forged signature is acknowledged by Loren Lopez, a California Notary Public. It is not remotely similar to the Deborah Brignac signatures appearing on the recorded documents attached hereto as **Exhibits 11, 12, 13, and 14**.

DATE:  April 30, 2010
JPMorgan Chase Bank, National Association successor in interest to Washington Mutual Bank,  FA

Deborah Brignac, Vice President

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

Substitution of Trustee,  Exhibit 8 – recorded on May 3, 2010)

DATE: 08-16-2010                                         **SEE ATTACHED EXHIBIT**

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

DEBORAH BRIGNAC, VICE PRESIDENT          | CALIFORNIA RECONVEYANCE COMPANY
9200 OAKDALE AVE                          | COLLECTOR ATTEMPTING TO COLLECT A

Notice of Trustee's Sale, Exhibit 10, recorded on Aug. 16, 2010

Second Amended Complaint                    - 12 -

DATE: 10-02-2009

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

CALIFORN
COLLECTO
INFORMA1

Exhibit 11 – recorded on Oct. 6, 2009

DATE: 10-01-2009

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

CALIFORN
COLLECTO
INFORMA1

Exhibit 12 – recorded on Oct. 8, 2009

DATE: 10-01-2009

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

CALIFORNI
COLLECTO
INFORMAT

Exhibit 13 – recorded on Oct. 8, 2009

DATE:  September 29, 2010
Wells Fargo Bank, National Association as Trustee for the Certifi
Bear Stearns Mortgage Funding Trust 2007-AR2 Mortgage Pass
Corporation as attorney in fact

Deborah Brignac, Vice President

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

Exhibit 14 – recorded on Sept. 30, 2010

Second Amended Complaint          - 13 -

1    Courts are putting a stop to the epidemic of forgery and robo-signing that

2    infected the banking industry during the past ten years. Deborah Brignac's diverse

3    signatures and Loren Lopez's acknowledgment of them are fraudulent and illegal.

4    38. On May 14, 2010, CRC recorded a Notice of Default ("NOD"), attached

5    hereto as Exhibit 9, describing the Wellworth Property with instructions that

6    Plaintiff contact JPMORGAN CHASE BANK, NATIONAL ASSOCIATION to

7    stop the foreclosure. The NOD was signed by Silvia Freeberg, Assistant Secretary.

8    The "Declaration of Compliance (Cal Civil Code Section 2923.5(b)" attached to

9    the NOD was signed under penalty of perjury by Renee Daniels on behalf of

10   JPMorgan Chase Bank, National Association. Chase is described in the

11   Declaration of Compliance as "The undersigned mortgagee, beneficiary or

12   authorized agent." Washington Mutual is described in the body of the NOD as

13   beneficiary. However, Chase's interest, if any, was acquired from WaMu in

14   September 2008, and WaMu's beneficial interest had terminated when WaMu sold

15   the Note to investors in 2006.

16   39. Chase was not the beneficiary and Brignac had no authority to act on

17   behalf of the beneficiary when someone forged her signature to the Substitution of

18   Trustee. The Substitution of Trustee was unauthorized and fraudulent, so CRC was

19   not authorized to initiate foreclosure against Plaintiff on May 14, 2010, when it

20   recorded the Notice of Default, and it was not acting for the Lender when it filed

21   the Notice of Trustee's Sale on August 16, 2010.

22

23                    **THIRD CAUSE OF ACTION – QUASI CONTRACT**

24   40.  Plaintiff re-alleges and incorporates by reference the allegations

25   contained in paragraphs 1 through 39.

26   41. Chase demanded monthly mortgage payments from Plaintiff starting in

27   October 2008, and continued to collect payments from Plaintiff for twelve months.

28   Plaintiff reasonably relied upon Chase's assertion that it was entitled to payments

1  for the reason that it had acquired certain assets from WaMu under an agreement
2  with the FDIC.

3      42. Chase knowingly accepted the payments and retained them for its own
4  use knowing that WaMu was not a beneficiary under Plaintiff's Note on the date
5  that its assets were transferred to Chase and therefore Chase did not acquire any
6  right from WaMu to accept or keep Plaintiff's payments.  It would be inequitable
7  for Chase to retain the payments it received from Plaintiff. The equitable remedy
8  of restitution when unjust enrichment has occurred is an obligation created by the
9  law without regard to the intention of the parties, and is designed to restore the
10  aggrieved party to his or her former position by return of the thing or its equivalent
11  in money.

12      43.  The DOT states in Paragraph 23:  "Upon payment of all sums secured
13  by this Security Instrument, Lender shall request Trustee to reconvey the Property
14  and shall surrender this Security Instrument and all notes evidencing debt secured
15  by this Security Instrument to Trustee." The obligations to WaMu under the DOT
16  were fulfilled when WaMu received the balance on the Note as proceeds of sale
17  through securitization to private investors. Chase has been unjustly enriched by
18  collecting monthly payments from Plaintiff.

19      44.  Plaintiff seeks restitution for any payments he made to Chase that were
20  not paid to the lender or beneficiary, if any.

21

22              **FOURTH CAUSE OF ACTION - NO CONTRACT**

23      45.  Plaintiff re-alleges and incorporates by reference the allegations
24  contained in paragraphs 1 through 44.

25      46.  Plaintiff is informed and believes that WaMu routinely approved
26  predatory real estate loans to unqualified buyers in 2006 and 2007 and
27  implemented unlawful lending practices by encouraging brokers and loan officers
28  to falsify borrowers' income and assets to meet underwriting guidelines when

Second Amended Complaint          - 15 -

borrowers were not qualified.

47.  Plaintiff followed WaMu's instructions when he submitted a Uniform Residential Loan Application to WaMu that contained only his basic identifying information, such as name, address, phone number, social security number, and bank account number. WaMu employees filled out the application.

48.  Plaintiff is informed and believes that WaMu pre-sold Plaintiff's mortgage. Immediately after he signed the Note, WaMu transferred all of its interest in the Note to an investment bank that bundled Plaintiff's Note with numerous other residential mortgages into residential mortgage-backed securities ("RMBS") which were structured into synthetic collateralized debt obligations ("CDOs") and sold to investors in Pool Number 432551 identified in Standard & Poor's registry as CUSIP # 31379XQC2.

49.  Plaintiff is informed and believes that the investment bank intended to short the portfolio it helped to select by entering into credit default swaps to buy protection against the certain event that the promissory notes would default. WaMu expected that Plaintiff would not have the ability to repay the loan. It was not a matter of being unconcerned with the possible outcome that Plaintiff would default; WaMu expected he would default.

50.  Washington Mutual Bank, the sponsor of the securitization transaction, was a wholly owned subsidiary of Washington Mutual Inc. Securitization of mortgage loans was an integral part of Washington Mutual Inc.'s management of its capital. It engaged in securitizations of first lien single-family residential mortgage loans through Washington Mutual Mortgage Securities Corporation, as depositor, beginning in 2001. WaMu acted only as a servicer of Plaintiff's loan.

51.  WaMu failed to disclose to Plaintiff that its economic interests were adverse to Plaintiff and that WaMu expected to profit when Plaintiff found it impossible to perform and defaulted on his mortgage.

52.  A necessary element in the formation of an enforceable contract under

Second Amended Complaint          - 16 -

1  the common law is a *meeting of the minds*. Two or more parties must share some
2  expectation that a future event will occur. Plaintiff expected that he would borrow
3  money from WaMu, he would pay it back, and then he would own the Property.
4  WaMu expected that Plaintiff would borrow money, he would not be able to pay it
5  back, and then WaMu or the investors would own the Property. Since there was no
6  shared expectation—no meeting of the minds—no contract was formed between
7  Plaintiff and WaMu.

8      53.  In addition to WaMu's expectation that Plaintiff would lose title to the
9  Wellworth Property through foreclosure, WaMu anticipated transferring the Note
10 to investors immediately after Plaintiff signed the Note. Plaintiff is informed and
11 believes that WaMu purchased credit default insurance so that WaMu would
12 receive the balance on the Note when Plaintiff defaulted, in addition to any money
13 WaMu received when it securitized the Note.

14     54.  Not only did WaMu dispense with conventional underwriting practices
15 in 2006, it also paid premium fees and other incentives to mortgage brokers who
16 signed up the riskiest borrowers. Fueled by spiraling profits to Chase, WaMu, and
17 other bankers, common law principles of contract formation, customary
18 underwriting practices, and statutory procedures for transferring interests in real
19 property, including the recordation of transfers of interests in real property,
20 disintegrated and the system collapsed.

21     55.  WaMu expected that Plaintiff would not perform as merely one victim
22 in a scheme in which:

23   (1) WaMu's fees as servicer would be greater as the number of loans increased;
24   (2) WaMu's fees as servicer would be greater as the balances of loans increased;
25   (3) WaMu would recover the unpaid balance of Plaintiff's loan through credit
26   default insurance when Plaintiff inevitably defaulted; and
27   (4) All risk of loss in the event of Plaintiff's default would be borne by investors,
28   not WaMu as the servicer.

Second Amended Complaint          - 17 -

56. Plaintiff's participation in the mortgage contract was procured by overt and covert misrepresentations and nondisclosures. The parties did not share a single expectation with respect to any of the terms of the mortgage contract and therefore the contract was void *ab initio*.

57. No enforceable contract was formed between Plaintiff and WaMu, so his DOT and Promissory Note were not assets of WaMu that could be acquired or assumed by Chase from the Federal Deposit Insurance Corporation (FDIC) as receiver after WaMu was closed by the Office of Thrift Supervision on September 25, 2008.

58. Chase Bank has no right to receive payment under Plaintiff's mortgage loan and has no right to foreclose on his Wellworth Property. Plaintiff does not seek rescission of the contract. He alleges that the contract was void *ab initio*.

## FIFTH CAUSE OF ACTION - QUIET TITLE

59. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 58.

60. Plaintiff seeks to quiet title against the claims of Defendants and all persons claiming any legal or equitable right, title, estate, lien, or adverse interest in the Wellworth Property as of the date the Complaint was filed (Cal Code Civil Procedure §760.020)

61. Plaintiff is the titleholder of the Wellworth Property according to the terms of the Grant Deed recorded on December 11, 2006.

62. WaMu securitized Plaintiff's single-family residential mortgage loan through Washington Mutual Mortgage Securities Corp. Plaintiff is informed and believes that the lawful beneficiary has been paid in full.

The DOT states in paragraph 23:

23. Reconveyance. Upon payment of all sums secured by this Security
    Instrument, lender shall request Trustee to reconvey the Property and

1    shall surrender this Security Instrument and all notes evidencing debt

2    secured by this Security Instrument to trustee. Trustee shall reconvey the

3    Property without warranty to the person or persons legally entitled to it…

4    ///

5    63.  The DOT does not state that Plaintiff must pay all sums, only that all

6    secured sums must be paid. Plaintiff alleges that the obligations owed to WaMu

7    under the DOT were fulfilled and the loan was fully paid when WaMu received

8    funds in excess of the balance on the Note as proceeds of sale through

9    securitization(s) of the loan and insurance proceeds from Credit Default Swaps.

10    64.  Defendants' claims are adverse to Plaintiff because Plaintiff is informed

11    and believes that none of the defendants is a holder of the Note, none of them can

12    prove any interest in the Note, and none of them can prove that the Note is secured

13    by the DOT, as well as for the reasons set forth in the preceding causes of action.

14    As such, Defendants have no right, title, lien, or interest in the Wellworth Property.

15    65.  Plaintiff therefore seeks a judicial declaration that the title to the

16    Wellworth Property is vested solely in Plaintiff and that Defendants have no right,

17    title, estate, lien, or interest in the Property and that Defendants and each of them

18    be forever enjoined from asserting any right, title, lien or interest in the Property

19    adverse to Plaintiff.

20

21    **SIXTH CAUSE OF ACTION - DECLARATORY & INJUNCTIVE RELIEF**

22    66.  Plaintiff re-alleges and incorporates by reference the allegations

23    contained in paragraphs 1 through 65.

24    67.  An actual controversy has arisen and now exists between Plaintiff and

25    Defendants concerning their respective rights and duties. Plaintiff contends:

26    (a) that Chase is not the present holder in due course or beneficiary of a

27    Promissory Note executed by Plaintiff. However, Defendants contend that Chase is

28    the present owner and beneficiary of a Promissory Note executed by Plaintiff.

Second Amended Complaint          - 19 -

1    (b) that Defendants are not real parties in interest, do not have standing, and

2  are not entitled to accelerate the maturity of any secured obligation and sell the

3  Wellworth Property because they are not a beneficiary or authorized agent of

4  beneficiaries under the purported Note. However, Defendants assert that they are

5  entitled to sell the Property.

6    (c) that the Substitution of Trustee recorded in Los Angeles County on May

7  3, 2010, which purports to substitute CRC in place of Chicago Title Co. as Trustee

8  under the Deed of Trust dated 11-14-2007, was subscribed with a forged signature

9  of Deborah Brignac and fraudulently acknowledged, and therefore CRC is not a

10  trustee authorized to file a Notice of Default or a Notice of Trustee's Sale on the

11  Wellworth Property. However, Defendants contend that CRC is a trustee duly

12  authorized to file said Notices.

13    68.  Plaintiff desires a judicial determination of his rights and duties as to the

14  validity of the Note and DOT, and Defendants' rights to proceed with nonjudicial

15  foreclosure on the Wellworth Property. Unless restrained, Defendants will sell

16  Plaintiff's residence, or cause it to be sold, to Plaintiff's great and irreparable

17  injury, for which pecuniary compensation would not afford adequate relief.

18    69.  Defendants' wrongful conduct, unless and until restrained by order of

19  this court, will cause great irreparable injury to Plaintiff as the value of the

20  residence declines under threat of foreclosure and Plaintiff faces the prospect of

21  eviction from his residence. Plaintiff designed and built this home himself. It is

22  unique and cannot be replicated.

23    70.  If the foreclosure sale is allowed to proceed, the burden on Plaintiff

24  significantly outweighs the benefit to Defendants, and each of them.  By contrast,

25  if the foreclosure sale is enjoined, the burden to defendants is minimal and is not

26  outweighed by the benefit to Plaintiff.

27    71.  Plaintiff has no adequate remedy at law for the injuries currently being

28  suffered and that are threatened. It will be impossible for Plaintiff to determine the

Second Amended Complaint          - 20 -

1   precise amount of damage that he will suffer if Defendants' conduct is not

2   restrained and Plaintiff must file a multiplicity of suits to obtain compensation for

3   his injuries.

4

5   ### SEVENTH CAUSE OF ACTION - INTENTIONAL INFLICTION OF

6   ### EMOTIONAL DISTRESS

7   72.  Plaintiff re-alleges and incorporates by reference the allegations

8   contained in paragraphs 1 through 71.

9   73.  Between October 2008 and November 2009 Chase cashed Plaintiff's

10  monthly checks and kept the money when a cursory review of WaMu's records,

11  under Chase's control, would have revealed that Chase had no right to keep the

12  money. When Plaintiff stopped paying, Chase notified Plaintiff in 2010 that it

13  would take his family home—a house that he had built himself. There was no

14  signature or name on Chase's correspondence, so Plaintiff cannot identify the

15  authors prior to commencement of discovery.

16  74.  In March 2010, Plaintiff hired a lawyer to negotiate with Chase and

17  explore options to foreclosure. Chase ignored his lawyer's letters, which were

18  faxed to Chase's offices in three states.

19  75. Knowing that it was a servicer, not a beneficiary or lender of Plaintiff's

20  loan, Chase pretended to transfer the deed of trust to its subsidiary, CRC, on April

21  30, 2010, so CRC could record a fraudulent Notice of Default on May 14, 2010.

22  76.  Plaintiff contends that the acts and omissions of the Defendants, and

23  each of them, constitute extreme and outrageous conduct.

24  77.  Plaintiff further contends that Defendants, and each of them, engaged in

25  such conduct either intentionally or with reckless disregard as to the effect on

26  Plaintiff.

27  78.  As a result of said extreme and outrageous conduct by Defendants, and

28  each of them, Plaintiff has suffered severe emotional distress in the amount of

Second Amended Complaint          - 21 -

1   $5,000,000.00.

2   ///

3   **PRAYER**

4   WHEREFORE, Plaintiff requests judgment as follows:

5      1.  That this court issue an Order to Show Cause and, after a hearing, issue a

6   Temporary Restraining Order and Preliminary Injunction restraining Defendants,

7   and each of them, during the pendency of this action, from continuing with their

8   efforts to conduct a Trustee's Sale of the Wellworth Property.

9      2.  That the attempted foreclosure of the Wellworth Property be declared illegal

10   and that Defendants be forever enjoined and restrained from selling the Property or

11   attempting to sell it or causing it to be sold, either under power of sale pursuant to

12   trust deed or by foreclosure action, and from posting, publishing, or recording any

13   notice of default or notice of trustee's sale contrary to state or federal law.

14      3.  That the underlying loan transaction be declared void as a result of

15   Defendants' and WaMu's misrepresentations, fraud, concealment, and predatory

16   loan practices.

17      4.  That Defendants make restitution to Plaintiff according to proof.

18      5.  For a judgment determining that Plaintiff is the owner in fee simple of the

19   Wellworth Property against the adverse claims of Defendants and that Defendants

20   have no interest in the subject property adverse to Plaintiff.

21      6. For damages in an amount of $5,000,000.00.

22      6.  For costs of suit and reasonable attorney fees.

23      7.  For any and all other and further relief that may be just in this matter.

24

25      Date: April 11, 2011                   _____

26                                          Douglas Gillies, Attorney for Plaintiff

27

28

Second Amended Complaint          - 22 -

1
2
3                                    **VERIFICATION**
4    Daryoush Javaheri declares:
5         I am the plaintiff in the above-entitled action. I have read the foregoing Second
6    Amended Complaint and know its contents. The same is true of my own
7    knowledge, except as to those matters that are alleged on information and belief,
8    and as to those matters, I believe them to be true. I declare under penalty of perjury
9    that the foregoing is true and correct, and that this declaration was executed in Los
10   Angeles, California, on April 12, 2011.
11
12                              _____
13                              Daryoush Javaheri
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**PLAINTIFF'S EXHIBITS**

2

3      <u>Exhibit</u>                        <u>Description</u>

4

5           1        Grant Deed recorded 12/11/2006

6

7           2        Uniform Residential Loan Application 9/8/2006

8

9           3        Adjustable Rate Note 11/14/2007

10

11          4        Deed of Trust 11/14/2007

12

13          5        Notice of Collection Activity 3/22/2010

14

15          6        Attorney Fariba Banayan's fax to Chase 4/19/2010

16

17          7        Request Disqualification (Chase) 9/1/2010 and 9/7/2010

18

19          8        Substitution of Trustee 4/30/2010

20

21          9        Notice of Default 5/14/2010

22

23         10        Notice of Trustee's Sale 8/16/2010

24

25       11-14       Deborah Brignac's signatures 10/2/2009 – 9/29/2010

26

27

28

Second Amended Complaint                - 24 -

# EXHIBIT 1

12/11/06

**RECORDING REQUESTED BY:**
Fidelity National Title Company
Escrow No. 275049-MTC
Title Order No. 9732065-04

**When Recorded Mail Document
and Tax Statement To:**
Mr. Daryoush Javaheri
10809 Wellworth Avenue
Los Angeles, CA  90024

|||||||||||| **20062736492**

---

APN: 4325-005-014

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $1,265.00      City tax $ 5,175.00
    [ X  ]  computed on full value of property conveyed, or
    [    ]  computed on full value less value of liens or encumbrances remaining at time of sale,
    [    ]  Unincorporated Area     City of Los Angeles

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**     Helene Caron, Trustee of the Caron Trust, 1999

hereby GRANT(S) to   Daryoush Javaheri, a Single Man          **SEE EXHIBIT "A" ATTACHED**

the following described real property in the City of Los Angeles
County of Los Angeles,  State of California:
Lot 8, of Tract No. 7803, in the city of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 88 Page(s) 73 to 75 of maps, in the office of the County Recorder of said county.

DATED:  October 19, 2006

State of California
County of _Los Angeles_

On _11-9-06_ before me,
_Ronald Kadonaga, Notary Public_,
(here insert name and title of the officer)
personally appeared _Helene Caron_

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Ronald Kadonaga_  (Seal)

The Caron Trust, 1999

By: _Helene Caron_
    Helene Caron, Trustee

RONALD KADONAGA
Commission # 1452162
Notary Public - California
Los Angeles County
My Comm. Expires Dec 18, 2007

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

FD-213 (Rev 7/96)
(grant.wpd)(01-06)

GRANT DEED

Plaintiff's Exhibit "1"




**This page is part of your document - DO NOT DISCARD**

## 06 2736492

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

## 12/11/06 AT 08:00AM

**TITLE(S) :**    **DEED**



L E A D    S H E E T

| **FEE** | | **D.T.T.** |
|---|---|---|
| Code 01 - 10.00 | Code D003 - 001 | Code 080 - 1265.00 |
| Code 18 - 04.00 | | Code 044 - 5175.00 |
| Code 07 - 20.00 | | |

**CODE 20**

**CODE 19**

**CODE 9**

*Grand Total = $6,474.00*          *Page Count = 2*

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**     **Number of AIN's Shown**

**4 3 2 5 - 0 0 5 - 0 1 4**                    **0 0 1**



**THIS FORM IS NOT TO BE DUPLICATED**

EXHIBIT 2

# Uniform Residential Loan Application

This application is designed to be completed by the applicant with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower" as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☐ Conventional  ☐ Other: ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case No. |
|---|---|---|---|

| Amount $ | Interest Rate % | No. of Months | Amortization Type: | ☐ Fixed Rate  ☐ GPM | ☐ Other (explain): ☐ ARM (type): |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & zip code) | No. of Units |
|---|---|

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|

| Property Type ☐ 1-4 SFR  ☐ Manufactured Home | | |
|---|---|---|
| Purpose of Loan ☐ Purchase  ☐ Refinance  ☐ Construction  ☐ Construction-Permanent  ☐ Home Improvement  ☐ Other (explain): | Property will be: ☐ Primary Residence  ☐ Secondary Residence  ☐ Investment | |

**Complete this line if construction or construction-permanent loan.**

| Year Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe improvements ☐ made  ☐ to be made   Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: ☐ Fee Simple  ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable)  DARYOUSH JAVAHERI | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number | Home Phone (incl. area code) 310 475-5 | DOB (MM/DD/YYYY) 01-03-1963 | Yrs. School College | Social Security Number - - | Home Phone (incl. area code) - - | DOB (MM/DD/YYYY) - - | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☑ Unmarried (incl. single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no.   ages | ☐ Married  ☐ Unmarried (incl. single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no.   ages |
|---|---|---|---|

| Present Address (street, city, state, zip code) ☐ Own  ☐ Rent  No. Yrs 10660 Wilshire Blvd unit #1401 Los Angles C.A. 90024 | Present Address (street, city, state, zip code) ☐ Own  ☐ Rent  No. Yrs |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, zip code) ☐ Own  ☐ Rent  No. Yrs | Former Address (street, city, state, zip code) ☐ Own  ☐ Rent  No. Yrs |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Name & Address of Employer ☑ Self Employed  DARYOUSH DVP 10660 Wilshire Blvd #1401 Los Angles C.A. 90024 | Yrs. on this job 10  Yrs. Employed in this line of work/profession 10 | Name & Address of Employer ☐ Self Employed | Yrs. on this job  Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business Builder - developer | Business Phone (incl. area code) 310 591-7 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer ☐ Self Employed | Dates (from — to)  Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from — to)  Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed | Dates (from — to)  Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from — to)  Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Plaintiff's Exhibit "2"

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly i | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | | $ | $ |
| Overtime | | | | First Mortgage (P&I) | | |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income." below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | | | | Total | $ | $ |

* Self-Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income Notice:** Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | | Name and address of Company | $ Payments/Months / | $ |
| **List checking and saving accounts below** | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Washington Mutual 1550 WestWood Blvd ask for Rody-Fuentes at 310-391-8213 | | Acct. no. | | |
| Acct. no. 1943 | $ 5000 | Name and address of Company | $ Payments/Months / | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Bank of America Acct 6 tel. 1800-432-1000 | | Acct. no. | | |
| Acct. no. 6883 | $ | Name and address of Company | $ Payments/Months / | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payments/Months / | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payments/Months / | $ |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| +TD Ameritrade 1800-934-4448 Acct 875-77 | | Acct. no. | | |
| | | Name and address of Company | $ Payments/Months / | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| **Subtotal Liquid Assets** | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payments/Months / | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | $ | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $ | |
| **Total Assets a.** | $ | **Net Worth (a minus b)** | $ | **Total Liabilities b.** $ |

**Schedule of Real Estate** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | ↓ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| | | | $ | $ | $ | $ | $ | $ |
| | | | | | | | | |
| | | | | | | | | |
| | | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|
| | | | **Borrower** | | **Co-Borrower** | |
| | | | Yes | No | Yes | No |
| a. Purchase price | $ | If you answer "yes" to any questions a through i, please use continuation sheet for explanation. | | | | |
| b. Alterations, improvements, repairs | | a. Are there any outstanding judgments against you? | ☐ | ☐ | ☐ | ☐ |
| c. Land (if acquired separately) | | b. Have you been declared bankrupt within the past 7 years? | ☐ | ☐ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☐ | ☐ | ☐ |
| e. Estimated prepaid items | | d. Are you a party to a lawsuit? | ☐ | ☐ | ☐ | ☐ |
| f. Estimated closing costs | | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment?  (This would include such loans as home mortgage loans, SBA loans, home improvement loans, education loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee.  If "Yes," provide details, including date, name and address of Lender, FHA, VA case number, if any, and reason for the action.) | ☐ | ☐ | ☐ | ☐ |
| g. PMI, MIP, Funding Fee | | | | | | |
| h. Discount (if Borrower will pay) | | | | | | |
| i. Total costs (add items a through h) | | | | | | |
| j. Subordinate financing | | | | | | |
| k. Borrower closing costs paid by Seller | | | | | | |
| l. Other Credits (explain) | | f. Are you presently delinquent or in default on any Federal debt or  any other loan, mortgage, financial obligation, bond, or loan guarantee?  If "Yes," give details as described in the preceding question. | ☐ | ☐ | ☐ | ☐ |
| | | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☐ | ☐ | ☐ |
| | | h. Is any part of the down payment borrowed? | ☐ | ☐ | ☐ | ☐ |
| | | i. Are you a co-maker or endorser on a note? | ☐ | ☐ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | | j. Are you a U.S. citizen? | ☐ | ☐ | ☐ | ☐ |
| | | k. Are you a permanent resident alien? | ☐ | ☐ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☐ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) | | m. Have you had an ownership interest in a property in the last three years? | ☐ | ☐ | ☐ | ☐ |
| | | (1)  What type of property did you own–principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | | (2)  How did you hold title to the home–solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X *[signature]* | 9-8-06 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws.  You are not required to furnish this information, but are encouraged to do so.  The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it.  If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation.  If you do not furnish ethnicity, race or sex, under Federal regulations this lender is required to note the information on the basis of visual observation or surname.  If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish  this information | | | CO-BORROWER ☐ I do not wish to furnish  this information | | |
|---|---|---|---|---|---|
| **Ethnicity:** ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | | | **Ethnicity:** ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | | |
| **Race:** ☐ American Indian or Alaska Native | ☐ Asian | ☐ Black or African American | **Race:** ☐ American Indian or Alaska Native | ☐ Asian | ☐ Black or African American |
| ☐ Native Hawaiian or Other Pacific Islander | ☐ White | | ☐ Native Hawaiian or Other Pacific Islander | ☐ White | |
| **Sex:** ☐ Female  ☐ Male | | | **Sex:** ☐ Female  ☐ Male | | |

| To be Completed by Interviewer This application was taken by | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| ☐ Face-to-face interview | | |
| ☐ Mail | Interviewer's Signature            Date | |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | | |

| Continuation Sheet/Residential Loan Application | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

1431 (02-04)                                          Page 4 of 4

# EXHIBIT 3

R2US
R41

3010332439-104

# FIXED/ADJUSTABLE RATE RIDER

### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this         14TH         day of NOVEMBER, 2007       , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to

WASHINGTON MUTUAL BANK, FA

("Lender") of the same date and covering the property described in the Security Instrument and located at:

10809 WELLWORTH AVE
LOS ANGELES, CA 90024
(Property Address)

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of       7.975       %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of  DECEMBER 01, 2012       , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR** – Single Family – **Fannie Mae Uniform Instrument**                                    **Form 3187 6/01**
⊗-168R (0401)
Page 1 of 4       Initials: _____
VMP Mortgage Solutions
(800)521-7291    .



Plaintiff's Exhibit "3"

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 25/100** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.975** % or less than **2.975** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **12.975** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A) Late Charges for Overdue Payments**

    If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**

    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver By Note Holder**

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.   **GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.  **WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.  **UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

    (A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Form 3528 6/01**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Seal)        _____ (Seal)
DARYOUSH  JAVAHERI              -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                               -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                               -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                               -Borrower                                      -Borrower


*(Sign Original Only)*

# CONSTRUCTION LOAN ADDENDUM TO NOTE

Loan No.: 3010332439

THIS CONSTRUCTION LOAN ADDENDUM TO NOTE (the "Addendum") is made this 14TH day of NOVEMBER-07 and is incorporated into and shall be deemed to amend and supplement the promissory note of even date herewith executed by DARYOUSH JAVAHERI ("Borrower(s)") to WASHINGTON MUTUAL BANK (the "Lender") in the amount of TWO MILLION SIX HUNDRED SIXTY THOUSAND AND 00/100 ($ 2,660,000.00 ), as modified by any addenda or riders thereto (the "Note").

## ADDITIONAL COVENANTS

In addition to the covenants and agreements made in the Note, Borrower further covenants and agrees as follows:

**1.     CONSTRUCTION / PERMANENT LOAN**

Borrower has requested and has been approved for a home loan evidenced by the Note (the "Loan") to purchase the real property securing the Loan (the "Property") (if applicable), refinance existing liens on the Property (if applicable) and construct a residence on the Property (the "Residence") and/or construct other improvements on the Property (the "Improvements"). This Addendum modifies the Loan terms to incorporate and define the special terms of the Loan during the period between the date of the Note and the Rollover Date (defined below) (the "Construction Phase") . The Note as amended by this Addendum shall incorporate the terms and conditions of that Residential Construction Loan Agreement of even date herewith (the "Construction Loan Agreement"). The Construction Loan Agreement provides for Loan advances of up to the principal amount of the Note. The Loan will convert to a fully amortizing loan, and interest will begin to accrue at the rate provided for in the Note, on the first day of the calendar month following the calendar month in which all conditions for the final advance of the Loan Proceeds are met as set forth in Section 4 of the Construction Loan Agreement and the final advance on the Loan has been made. The date on which the Loan rolls over into a permanent loan is called the "Rollover Date". The term "Note" when referenced in any related Loan documents shall include both the Note and this Addendum and any other addenda or riders to the Note. All capitalized terms used herein and not defined herein shall have the meanings set forth in the Note and the Construction Loan Agreement.

**2.     INTEREST AND PAYMENT TERMS**

Notwithstanding anything to the contrary in the Note or any other document related to the Loan, Borrower shall make payments of all accrued interest on the amount of funds actually disbursed by the Lender under the Construction Loan Agreement beginning on the January 01, 2008, and on the first day of each month thereafter during the Construction Phase. Interest shall accrue on the unpaid principal balance of the Note from time to time outstanding at the interest rate set forth in the Note.

Interest shall be calculated daily on the outstanding principal balance of the Loan. All interest payments shall be calculated as of the first day of each month and are due on the first day of the following month and each month thereafter until and including the Rollover Date. On the Rollover Date, interest shall also be due and payable for the principal balance of the Loan that was outstanding from the first day of the calendar month that precedes the Rollover Date through the 21st day of that month. If Lender establishes an interest reserve for the Construction Phase Interest, then the monthly interest payments shall be paid out of the interest reserve and added to the unpaid balance of the Note as of each payment due date. Additional interest will accrue on such amounts at the interest rate in effect from time to time under the terms of the Note.

During the Construction Phase, interest on the Note shall accrue and be calculated on a 365 day (366 day, in a leap year) annual basis that computes a daily amount of interest for a 365 or 366 day year, then multiplies such amount by the actual number of days in each interest calculation period. The sum total of all daily accruals in the billing period will be the amount billed as due for the billing period.

Beginning on the first day of the calendar month following the Rollover Date, monthly payments of principal and interest will be due and payable, which principal and interest payments shall be sufficient to amortize the unpaid principal balance of the Loan over the remaining Loan term. The new monthly principal and interest payment shall be based on the Maturity Date and other terms set forth in the Note. If the Note provides for an adjustable interest rate, the interest rate and the monthly principal and interest payment shall adjust in accordance with the terms of the Note. At any time on or after the Rollover Date, Borrower hereby authorizes Lender to endorse upon the Note a certification stating the Rollover Date, the amount of the first monthly principal and interest payment following the Rollover Date and the first due date of the new monthly principal and interest payment. Any subsequent Note Holder (as defined in the Note) shall be entitled to rely on such certification.

3.   **DEFAULT DURING THE CONSTRUCTION PHASE**

   (a)   In the event a payment or other default occurs under the Note, this Addendum or the Construction Loan Agreement prior to the Rollover Date then, in addition to any remedies set forth in those or other Loan documents, Lender may then or thereafter declare the entire unpaid balance of the Note, together with all accrued but unpaid interest thereon and all other amounts due under the Note, immediately due and payable in full.

   (b)   Notwithstanding any other provisions of the Note, or other instruments further evidencing and/or securing the Note, prior to the Rollover Date, Borrower and all sureties, guarantors and endorsers of the Note, severally (i) waive all notices, demands, presentments for payment, notices of non-payment, notices of intention to accelerate the maturity, notices of acceleration, notices of dishonor, protest and notice of protest, diligence in collecting or bringing suit as to the Note and as to each, every and all installments hereof and all obligations hereunder and against any party hereto and to the application of any payment on the Loan, or as an offset hereto, and (ii) agree to all extensions, renewals, partial payments, substitutions or evidence of indebtedness and the taking, release or substitution of all or any part of the herein described or referenced security or the release of any party liable hereon with or without notice before or after maturity.

   (c)   Failure to complete construction as described in the Construction Loan Agreement prior to the Scheduled Completion Date shall constitute an event of default hereunder, under the Security Instrument and under the Construction Loan Agreement. Provided, however, so long as there exists no other event of default under any such document (and no event which, following notice and/or the expiration of any applicable cure period, would constitute a default) and on a one time basis only, at Borrower's request, Lender in its sole discretion may, but shall not be required to, approve an extension of the Scheduled Completion Date of up to ninety (90) days to facilitate the completion of construction. If Borrower desires to request such an extension, Borrower shall deliver a written extension request to Lender no less than ten (10) days prior to the Scheduled Completion Date. Any such extension shall be subject to the following conditions: (i) Borrower must execute a Modification Agreement and such other documentation as Lender may require; (ii) Borrower must pay to Lender an extension fee equal to 1/4% of the face loan amount on the Note for each 30-day period, or portion thereof, for which the extension has been approved, as well as any other costs and expenses associated with the extension; (iii) Borrower must cause Contractor and/or other third parties to execute such additional documentation as Lender may require, and (iv) Borrower must obtain for the benefit of Lender, at Borrower's sole expense, such endorsements to Lender's Policy of Title Insurance as Lender may require.

Any Loan Proceeds not advanced under the Construction Loan Agreement upon completion of the construction of the Residence or Improvements and prior to the Rollover Date, at Borrower's election, may be credited to the stated principal amount of the Note on the Rollover Date or shall be used to construct additional improvements on the Property, provided that such additional improvements have been approved by Lender in writing. Any portion of a payment received in excess of interest due during the Construction Phase shall be applied to principal.

(d) Any default under the Construction Loan Agreement shall be a default hereunder.

(e) Upon the occurrence of any of the matters described in this Section 3, Borrower, at Lender's request, will promptly execute those documents which Lender deems necessary or appropriate to properly evidence any changes relating to any of the Loan documents and to pay any fees in connection therewith. Borrower's failure to promptly execute such document(s) reflecting any such changes shall constitute an event of default under the Note, the Security Instrument and the Construction Loan Agreement.

## 4. TRANSFER OF PROPERTY

Paragraph D of the Construction Term Rider to Security Instrument adds certain provisions to the Security Instrument relating to the sale or transfer of the Property during the Construction Phase, which read as follows:

"**D. SALE OR TRANSFER OF PROPERTY DURING CONSTRUCTION PHASE.**

Any provisions in the Note and Security Instrument which permit Borrower to sell or otherwise transfer the Property without paying the Loan off in full are inapplicable until construction of the Residence or Improvements has been completed, the final advance on the Loan has been made, and Borrower has commenced making principal and interest payments as provided above."

## 5. CONFLICTS

If any term or provision of this Addendum shall be in conflict with any term or provision of the Note, the term or provision of this Addendum shall control.

## 6. TERMS

Except as amended or supplemented hereby, the terms and provisions of the Note shall remain unchanged and in full force and effect.

## 7. TERMINATION

This Addendum shall become null and void after the Rollover Date; provided, however, that those obligations incurred by the Borrower(s) under this Addendum not then discharged shall survive and the Lender's right to enforce those obligations shall also survive. The termination of this Addendum shall have no effect on the validity of the Note, Security Instrument and other Loan documents, all of which shall remain in full force and effect.

By signing under seal below, Borrower accepts and agrees to the terms and covenants contained in this Construction Loan Addendum to Note.

_____     Date:_____
DARYOUSH JAVAHERI

_____     Date:_____

_____     Date:_____

_____     Date:_____

_____     Date:_____

_____     Date:_____

_____     Date:_____

_____     Date:_____

_____     Date:_____

# EXHIBIT 4

Recording Requested By:
**WASHINGTON MUTUAL BANK**

Return To:
**WASHINGTON MUTUAL BANK**
**2210 ENTERPRISE DRIVE**
**FLORENCE, SC 29501**
**DOC OPS M/S FSCE 440**

Prepared By:
**MARISA AUGELLO**

─────────────── [Space Above This Line For Recording Data] ───────────────

ZCA1
R41

# DEED OF TRUST

3010332439-104

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **NOVEMBER 14, 2007** , together with all Riders to this document.

(B) "Borrower" is **DARYOUSH JAVAHERI, AN UNMARRIED MAN**

Borrower's address is **10660 WILSHIRE BLD #1401, LOS ANGELES, CA 92024**
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is **WASHINGTON MUTUAL BANK, FA**

Lender is a **FEDERAL SAVINGS BANK**
organized and existing under the laws of **THE UNITED STATES OF AMERICA**

**CALIFORNIA** − Single Family − **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      **Form 3005 1/01**

Ⓥ**ⓂⓅ**®**−6(CA)** (0207)

Page 1 of 15            Initials:_____

VMP MORTGAGE FORMS − (800)521-7291



**Plaintiff's Exhibit "4"**

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV 89014

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is   CHICAGO TITLE COMPANY

(E) "Note" means the promissory note signed by Borrower and dated NOVEMBER 14, 2007
The Note states that Borrower owes Lender TWO MILLION SIX HUNDRED SIXTY THOUSAND AND 00/100                                                                          Dollars
(U.S. $   2,660,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than DECEMBER 01, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | CONSTRUCTION LOAN RIDER |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                           of LOS ANGELES                              :

        [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LOT 8 IN BLOCK 31 OF TRACT NO 7803 IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 88, PAGES 73 TO 75 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

Parcel ID Number:  4325005014                                    which currently has the address of
10809 WELLWORTH AVE                                                              [Street]
LOS ANGELES                              [City], California 90024   [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

Initials: _____

-6(CA) (0207)                              Page 3 of 15                              Form 3005 1/01

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

Initials: _____

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _____

VMP®-6(CA) (0207)                                   Page 5 of 15                                   Form 3005 1/01

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Initials: _____

-6(CA) (0207)  •  Page 6 of 15  Form 3005 1/01

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

Initials: _____

Form 3005 1/01

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

ZCA2

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

   **25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                                   -Borrower
                                          DARYOUSH JAVAHERI


_____          _____ (Seal)
                                                                   -Borrower


_____ (Seal)          _____ (Seal)
                -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                -Borrower                                -Borrower

State of California
County of  LOS ANGELES

} ss.

On _____   before me, _____

personally appeared

DARYOUSH  JAVAHERI

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ (Seal)

LGLD

3010332439-104

LEGAL DESCRIPTION

LOT 8 IN BLOCK 31 OF TRACT NO 7803 IN THE CITY OF LOS ANGELES, CO
UNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
BOOK 88, PAGES 73 TO 75 INCLUSIVE OF MAPS, IN THE OFFICE OF THE C
OUNTY RECORDER OF SAID COUNTY

# EXHIBIT 5

Chase Home Finance LLC
FLS-7730
PO BOX 44090
Jacksonville, FL 32231-4090

March 22, 2010

**CHASE ⬡**

#BWNCLNN#
#0930109332943996#

001955 /FT

DARYOUSH   JAVAHERI
10809   WELLWORTH AVE
LOS ANGELES  CA  90024-4915

Ilılıllııllııııllılılılılllıllıllılılllııllılılılıllılll

### <u>Your house is your home. We want to keep it that way.</u>

### <u>We need to talk -- call 1-800-848-9380 today.</u>

You are going through tough times - we can help. In fact, we believe **your home loan may be eligible for a loan modification program -** we may be able to change the term of your loan, the interest rate, and maybe even the principal due date, to reduce the monthly payment to an amount you can afford.

> **Call us today at 1-800-848-9380 so we can help you turn things around. We'll discuss your current situation (outlined in the enclosed letter) and the options available to you. But we cannot stress enough that the longer you delay calling us, the fewer chances you may have to keep your home.**

It will only take a few minutes on the phone - one of our Loan Specialists will work with you to determine the option that best fits your needs. There are several options available - **call us now** and let us see which one will work best for you.

We are committed to working with you to find a way to help you keep your home, **but you must call us immediately at 1-800-848-9380 — the longer you delay, the fewer options you may have.**

Homeowner's Assistance Department
Chase Home Finance LLC
1-800-848-9380

P. S. The enclosed legal letter outlines in detail, your current situation and the **consequences that will occur unless we receive the required financial information from you and can approve you for a modification.** Once you call us with the information needed, then we can work together to determine the option that will work best for you. We cannot guarantee that you will be approved, but your only chance of saving your home is by contacting us immediately. Please don't delay - call us now at **1-800-848-9380.**

FL5-7730
PO BOX 44090
Jacksonville, FL 32231-4090

March 22, 2010                                        **CHASE** 

001955

DARYOUSH  JAVAHERI
10809  WELLWORTH AVE
LOS ANGELES  CA  90024-4915

## NOTICE OF COLLECTION ACTIVITY

RE: 3010332439
    10809  Wellworth Ave
    Los Angeles  CA 90024

Dear Borrower:

The records of Chase Home Finance LLC ("Chase") indicate that you have failed to make the required monthly payments under the terms of your Note ("Note") and related Mortgage or Deed of Trust, whichever is applicable ("Security Instrument") since 11/01/2009.  As of today's date the total amount due and owing ("Total Amount Due") is:

| | |
|---|---|
| Principal & Interest Payments: | $88277.90 |
| Escrow: | $0.00 |
| Late Charges: | $1971.42 |
| Outstanding Fees: | $10.85 |
| Corporate Advance: | $0.00 |
| Credits: | $0.00 |
| Total Amount Due: | $98494.93 |

You may cure this default within thirty (30) days from date of letter.  However, the amount that you owe may increase between the date of this letter and the date you reinstate the loan.  This is because of interest, late charges, advances and other amounts that may continue to accrue or will be incurred. You will also owe the amount of any monthly or other payments and late charges that may fall due after the date of this letter.  **Therefore, you may not rely on the amount shown above to be sufficient to cure your loan delinquency after today.**  It is necessary for you to contact Chase at the address or telephone number on this letter to verify the exact amount necessary to cure your delinquency and reinstate your loan no more than 24 hours before you make any payment.

Failure to cure the default within the 30-day period may result in Chase declaring the entire outstanding principal balance, accrued interest and any other fees and charges due under the terms of the Note and Security Instrument to be immediately due ("Acceleration").  If this amount is not immediately paid at such time, Chase may exercise any and all remedies available under the terms of the Note and Security Instrument and applicable law, including the commencement of foreclosure proceedings which may result in the sale of your property.

After acceleration, you will have the right to assert any grounds you may have to prove the non-existence of a default.  You may also reinstate your loan.  In addition, you will have the right in any related foreclosure proceedings to assert any defense to acceleration, the foreclosure action and, if applicable, the eventual sale of your property pursuant to a court order or trustee power of sale.

CO833

# EXHIBIT 6

*Law Offices of*

## *Banayan & Associates*

*9025 Wilshire Boulevard, Suite 301*
*Beverly Hills, California 90211*
*Telephone: (310) 385-8282*
*Facsimile: (310) 385-8226*

April 19, 2010

| | |
|---|---|
| Chase Home Finance<br>FL5-7730<br>PO BOX 44090<br>Jacksonville, FL 32231-4090 | VIA FACSIMILE<br>614-422-7575 and<br>VIA CERTIFIED MAIL |
| Chase Customer Service<br>OH4-7302<br>PO BOX 24696<br>Columbus, OH 43224-0696 | VIA FACSIMILE<br>614-422-2501 and<br>VIA CERTIFIED MAIL |
| Chase Loss Mitigation<br>PO BOX 469030<br>Glendale, Colorado 80246 | VIA FACSIMILE<br>866-282-5682 and<br>VIA CERTIFIED MAIL |

**RE: Property Address: 10809 Wellworth Ave, Los Angeles, Ca 90024**
**Chase/WAMU Loan number: 3010332439**
**Borrower: Daryoush Javaheri**

Dear CHASE:

This office has been retained to represent Daryoush Javaheri in reference to the above stated loan. All future communications with Mr. Javaheri in this regard should be conducted through this office. Attached please find a letter, signed by Daryoush Javaheri, authorizing this office to contact Chase regarding the above stated account.

We are in receipt of your letter dated March 22, 2010 in reference to "Notice of Collection Activity". Thank you.

Mr. Javaheir wishes to have this default cured and is asking your company for assistance in rectifying this account. Please provide my client with the alternatives available to him at this time regarding this loan. Daryoush Javaheri is making great stride in straightening his finances and is seeking your assistance in furthering this goal. The borrower's utmost intent is to save his home.

*RE:*     Property Address: 10809 Wellworth Ave, Los Angeles, Ca 90024
          Chase/WAMU Loan number: 3010332439
          Borrower: Daryoush Javaheri
April 19, 2010
Page 2 of 2

       Your cooperation is greatly appreciated and we are looking forward to your positive
response on this matter.

       Sincerely,

       Faribe B. Banayan, Esq.

# EXHIBIT 7



**CHASE FULFILLMENT CENTER**
PO Box 469030
Glendale, CO 80246-9030

September 01, 2010

DARYOU JAVAHER
10809 WELLWORTH
LOS ANGELE, CALIFORNIA 90024

**Request Disqualification**
Account: 3010332439 (the "Loan")
Property Address:   10809 WELLWORTH
                   LOS ANGELE, CALIFORNIA 90024

Dear Mortgagor(s):

Chase Home Finance LLC ("Chase") has received your request for a loan modification on the above-referenced account. Unfortunately, because your initial request was less than seven (7) business days from the date of the scheduled foreclosure sale on your home, you are no longer eligible under Making Home Affordable ("MHA") Program guidelines.

We regret we are not able to assist you. If the foreclosure sale has not already occurred, and you wish to reinstate your loan in full, contact us at the number below.

Sincerely,
Homeowner's Assistance Department
Chase Home Finance LLC
(888) 708-7105
(800) 582-0542  TDD / Text Telephone
(866) 221-1019 Fax

**An important reminder for all our customers: As stated in the "Questions and Answers for Borrowers about the Homeowner Affordability and Stability Plan" distributed by the Obama Administration, "Borrowers should beware of any organization that attempts to charge a fee for housing counseling or modification of a delinquent loan, especially if they require a fee in advance." Loan modification scams should be reported to PreventLoanScams.org or by calling (888) 995-HOPE. Chase offers loan modification assistance free of charge (i.e., no modification fee required). Please call us immediately at (888) 708-7105 to discuss your options. The longer you delay, the fewer options you may have.**

**Chase Home Finance LLC is attempting to collect a debt, and any information obtained will be used for that purpose.**

OP599
O_L



Loan Number   3010332439

**CHASE FULFILLMENT CENTER**
PO Box 469030
Glendale, CO 80246-9030

**CHASE**

September 07, 2010

DARYOU JAVAHER
10809 WELLWORTH
LOS ANGELE, CALIFORNIA 90024

**Request Disqualification**
Account: 3010332439 (the "Loan")
Property Address:   10809 WELLWORTH
                    LOS ANGELE, CALIFORNIA 90024

Dear Mortgagor(s):

Chase Home Finance LLC ("Chase") has received your request for a loan modification on the above-referenced account. Unfortunately, because your initial request was less than seven (7) business days from the date of the scheduled foreclosure sale on your home, you are no longer eligible under Making Home Affordable ("MHA") Program guidelines.

We regret we are not able to assist you. If the foreclosure sale has not already occurred, and you wish to reinstate your loan in full, contact us at the number below.

Sincerely,
Homeowner's Assistance Department
Chase Home Finance LLC
(888) 708-7105
(800) 582-0542  TDD / Text Telephone
(866) 221-1019 Fax

**An important reminder for all our customers: As stated in the "Questions and Answers for Borrowers about the Homeowner Affordability and Stability Plan" distributed by the Obama Administration, "Borrowers should beware of any organization that attempts to charge a fee for housing counseling or modification of a delinquent loan, especially if they require a fee in advance." Loan modification scams should be reported to PreventLoanScams.org or by calling (888) 995-HOPE. Chase offers loan modification assistance free of charge (i.e., no modification fee required). Please call us immediately at (888) 708-7105 to discuss your options. The longer you delay, the fewer options you may have.**

**Chase Home Finance LLC is attempting to collect a debt, and any information obtained will be used for that purpose.**

OP599
O_L



3 + 45 + 3 0 1 0 3 3 2 4 3 9 + 1 + 6 2

EXHIBIT 8



05/03/2010

*20100596312*

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311

---

Space above this line for recorder's use only

Trustee Sale No. 443100CA    Loan No. 3010332439    Title Order No. 446643

## SUBSTITUTION OF TRUSTEE

WHEREAS, DARYOUSH JAVAHERI, AN UNMARRIED MAN, was the original Trustor, CHICAGO TITLE COMPANY, was the original Trustee, and WASHINGTON MUTUAL BANK, FA, was the original Beneficiary under that certain Deed of Trust dated 11-14-2007, Recorded 11-30-2007, Book , Page , Instrument 20072634177 of official records in the office of the Recorder of LOS ANGELES County, California, and

APN: 4325-005-014 Situs: 10809 WELLWORTH AVE, , LOS ANGELES, CA 90024
WHEREAS, JPMorgan Chase Bank, National Association, the undersigned, is the present Beneficiary under said Deed of Trust, and, WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and stead of said original Trustee thereunder.

Now, THEREFORE, the undersigned Beneficiary hereby substitutes CALIFORNIA RECONVEYANCE COMPANY, 9200 Oakdale Avenue CA2-4379, Chatsworth, CA 91311, as Trustee of Said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

DATE: April 30, 2010
JPMorgan Chase Bank, National Association successor in interest to Washington Mutual Bank, FA

Deborah Brignac, Vice President

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On April 30, 2010 before me, LOREN LOPEZ, "Notary Public" personally appeared DEBORAH BRIGNAC, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LOREN LOPEZ
Commission # 1812959
Notary Public - California
Los Angeles County
My Comm. Expires Sep 12, 2012

Plaintiff's Exhibit "8"



▲ **This page is part of your document - DO NOT DISCARD** ▲



## 20100596312



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/03/10 AT 08:00AM**

| | |
|---|---:|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |

▲ ▲



**L E A D S H E E T**



201005030260001

00002304575



002663009

**SEQ:**
**02**

**DAR - Title Company (Hard Copy)**



▲ **THIS FORM IS NOT TO BE DUPLICATED** ▲

E466077                                                                 T79

# EXHIBIT 9

2

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)

05/14/2010

*20100661624*

---

Space above this line for recorder's use only

Trustee Sale No. 443100CA START OVER  Loan No. 3010332439  Title Order No. 446643

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION**, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

**This amount is $141,558.18 as of May 13, 2010 and will increase until your account becomes current.**

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

20F

Plaintiff's Exhibit "9"

Trustee Sale No. 443100CA START OVER Loan No. 3010332439 Title Order No. 446643

3

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY , JACKSONVILLE, FL 32256, 800-848-9380.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.** NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 11-14-2007, executed by DARYOUSH JAVAHERI, AN UNMARRIED MAN, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, as Beneficiary Recorded 11-30-2007, Book , Page , Instrument 20072634177 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. APN: 4325-005-014 Situs: 10809  WELLWORTH AVE, , LOS ANGELES, CA 90024 Including the note(s) for the sum of $2,660,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 11/01/2009 INSTALLMENT OF PRINCIPAL AND INTEREST AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF PRINCIPAL AND INTEREST; PLUS ANY ADDITIONAL ACCRUED AND UNPAID AMOUNTS INCLUDING, BUT NOT LIMITED TO, LATE CHARGES, ADVANCES, IMPOUNDS, TAXES, HAZARD INSURANCE, ADMINISTRATIVE FEES, INSUFFICIENT AND PARTIAL RETURN CHECK FEES, STATEMENT FEES, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

SEE ATTACHED DECLARATION

DATE: May 13, 2010

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

SILVIA FREEBERG,
Assistant Secretary

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

| | |
|---|---|
| **Borrowers:** | **DARYOUSH JAVAHERI** |
| **Property address:** | **10809 WELLWORTH AVE** |
| | **LOS ANGELES CA 90024** |
| **Loan Number:** | **3010332439** |

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.5(b))*

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☐ The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☒ The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

    ☐ The real property is not an owner-occupied single family residence.

    ☐ The loan was not originated between January 1, 2003 and December 31, 2007.

    ☐ The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

    ☐ The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

    ☐ The borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

I certify under penalty of perjury under the laws of the State of California that the above is true and correct.

JP Morgan Chase Bank, National Association

Date: 04/29/2010

By _____

City/State: Jacksonville, FL      Renee Daniels



**This page is part of your document - DO NOT DISCARD**



## 20100661624



**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**05/14/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201005140120005

00002366337

002682870

**SEQ:
20**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**



E44K773          t79

# EXHIBIT 10

Recording Requested By
ServiceLink

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902

08/16/2010

*20101136133*

**Trustee Sale No.**  **443100CA**
Loan No.          3010332439
Title Order No.   446643

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11-14-2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 09-07-2010 at 10:30 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 11-30-2007, Book , Page , Instrument 20072634177,      of official records in the Office of the Recorder of LOS ANGELES County, California, executed by: DARYOUSH JAVAHERI,  AN UNMARRIED MAN, as Trustor, WASHINGTON MUTUAL BANK,  FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.  Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Place of Sale: AT THE WEST SIDE OF THE LOS ANGELES COUNTY COURTHOUSE,  DIRECTLY FACING NORWALK BOULEVARD, 12720 NORWALK BLVD. , NORWALK, CA

Legal Description: LOT 8 IN BLOCK 31 OF TRACT NO 7803 IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES,  STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 88, PAGES 73 TO 75 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

Amount of unpaid balance and other charges: $2,857,661.28 (estimated)

Street address and other common designation of the real property:    10809  WELLWORTH AVE
LOS ANGELES, CA 90024
APN Number:   4325-005-014
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

18

Plaintiff's Exhibit "10"

DATE: 08-16-2010                    SEE ATTACHED EXHIBIT                    3

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT
COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

4

Exhibit

## DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2923.54

Pursuant to California Civil Code Section 2923.54, the undersigned loan servicer declares as follows:

1.  It has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.54 that is current and valid on the date the notice of sale is filed; and

2.  The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or Section 2923.55.

JPMorgan Chase Bank,
National Association

Name:  Ann Thorn
Title:   First Vice President



**This page is part of your document - DO NOT DISCARD**



## 20101136133



**Pages: 0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/16/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**

201008160190008

00002812292

002833229

**SEQ:**
**18**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

t79

# EXHIBIT 11

Recording Requested By
Service1 ink

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

**2009-0060924**

| Recorded | REC FEE | 15.00 |
| Official Records | | |
| County of | | |
| Santa Barbara | | |
| Joseph E. Holland | | |

08:01AM 06-Oct-2009 | ML
| Page 1 of 3

| **Trustee Sale No.** | **436337CA** |
| Loan No. | 3012210310 |
| Title Order No. | 602133070 |

*3*

Space above this line for recorder's use only

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12/01/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 10/22/2009 at 01:00 PM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 12/12/2006, Book , Page , Instrument 2006-0096374,         of official records in the Office of the Recorder of SANTA BARBARA County, California, executed by: JOSE CARRISALES, JR. AND, ANNA M. CARRISALES, HUSBAND AND WIFE, AS JOINT TENANTS, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.  Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Place of Sale: AT THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 1100 ANACAPA STREET , SANTA BARBARA, CA

Legal Description:  LOT 34 OF THE SYCAMORE TRACT, IN THE CITY OF SANTA BARBARA, COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED DECEMBER 30, 1922 IN MAP BOOK 15 AT PAGE 12, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Amount of unpaid balance and other charges: $630,799.30 (estimated)

Street address and other common designation of the real property:     1025 E YANONALI STREET
SANTA BARBARA, CA 93103
APN Number:   017-053-12-00

Plaintiff's Exhibit "11"

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone;  by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 10-02-2009                                        **SEE ATTACHED EXHIBIT**

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Exhibit

## DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2923.54

Pursuant to California Civil Code Section 2923.54, the undersigned loan servicer declares as follows:

1.  It has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.54 that is current and valid on the date the notice of sale is filed; and

2.  The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or Section 2923.55.

JPMorgan Chase Bank,
National Association

Name:  Ann Thorn
Title:   First Vice President

This is a true certified copy of the original document on file or of record in my office. It bears the seal and signature, imprinted in purple ink of the County Clerk, Recorder and Assessor.

*Joseph E. Holland*

COUNTY CLERK, RECORDER AND ASSESSOR, SANTA BARBARA CALIFORNIA

DATE: __NOV 2 3 2010_____ BY DEPUTY_____

EXHIBIT 12

Recording Requested By
**ServiceLink**

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

**2009-0061474**

```
          Recorded     | REC FEE    15.00
    Official Records    |
       County of        |
     Santa Barbara      |
    Joseph E. Holland   |
                        |
                        | EC
08:01AM 08-Oct-2009     | Page 1 of 3
```

| | |
|---|---|
| **Trustee Sale No.** | **436372CA** |
| Loan No. | 3013130780 |
| Title Order No. | 602132986 |

*3*

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 01/10/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 10/21/2009 at 01:00 PM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 01/18/2007, Book , Page , Instrument 2007-0003859, of official records in the Office of the Recorder of SANTA BARBARA County, California, executed by: DONNA L KEELER, AN UNMARRIED WOMAN, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Place of Sale: AT THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 1100 ANACAPA STREET , SANTA BARBARA, CA

Legal Description: PARCEL ONE:

PARCEL "A" OF PARCEL MAP NO. 11,872 ON FILE IN BOOK 12, PAGE 92 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SANTA BARBARA COUNTY, CALIFORNIA.

EXCEPTING THEREFROM 1/3 OF ALL OIL, GAS OR OTHER HYDROCARBON SUBSTANCES IN, ON OR UNDER THE ABOVE DESCRIBED PARCEL OF LAND FOR A PERIOD OF 20 YEARS FROM JANUARY 21, 1952, AS RESERVED IN DEED FROM HARRISON TOWNSEND III, A SINGLE MAN AND BETTY PARK TOWNSEND, A SINGLE WOMAN, DATED JANUARY 21, 1952 AND RECORDED FEBRUARY 5, 1952 AS INSTRUMENT NO. 1785 IN BOOK 1047, PAGE 455 OF OFFICIAL RECORDS.

PARCEL TWO:

AN EASEMENT 15 FEET IN WIDTH FOR WATER LINE PURPOSES AS CREATED BY DEED RECORDED OCTOBER 16, 1972 AS INSTRUMENT NO. 40844 IN BOOK 2426, PAGE 351 OF OFFICIAL RECORDS, IN, ON, OVER, ALONG AND UPON THE WESTERLY 15 FEET OF THE SOUTHERLY 63.37 FEET OF PARCEL "D" AS SAID PARCEL IS SHOWN ON PARCEL MAP NO. 11,620, FILED IN BOOK 10, PAGE 36 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Plaintiff's Exhibit "12"

EXCEPTING THEREFROM ANY PORTION THEREOF LYING WITHIN A PUBIC STREET.

PARCEL THREE:

AN EASEMENT FOR ROAD AND PUBLIC UTILITY PURPOSES AS CREATED BY DEED RECORDED OCTOBER 16, 1972 AS INSTRUMENT NO. 40844 IN BOOK 2426, PAGE 351 OF OFFICIAL RECORDS, OVER, ALONG AND UPON THE WESTERLY 15 FEET OF THE SOUTHERLY 63.37 FEET OF PARCEL "D" AS SHOWN ON PARCEL MAP NO. 11, 620, FILED IN BOOK 10, PAGE 86 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL FOUR:

AN EASEMENT FOR INGRESS, EGRESS AND PUBLIC UTILITIES PURPOSES AS CREATED BY DOCUMENT RECORDED JUNE 7, 2002, AS INSTRUMENT NO. 2002-0055523 OF OFFICIAL RECORDS, OVER, UNDER AND UPON THAT PORTION OF PARCEL B OF PARCEL MAP NO. 11,476 RECORDED IN PARCEL MAP BOOK 9, PAGE 55, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF PARCEL A OF PARCEL MAP NO. 11,872 RECORDED IN PARCEL MAP BOOK 12, PAGE 92 IN SAID COUNTY RECORDER'S OFFICE;

THENCE (1), SOUTH 230 21' 00" WEST, ALONG THE WESTERLY LINE OF SAID PARCEL A, 25.00 FEET;

THENCE (2), LEAVING SAID WESTERLY LINE, NORTH 270 03' 28" WEST, 36.56 FEET TO A POINT ON THE SOUTHEASTERLY LINE OF BALLARD CANYON ROAD AS SHOWN ON SAID PARCEL MAP NO. 11, 476;

THENCE (3), NORTH 620 07' 00" EAST ALONG SAID SOUTHEASTERLY LINE, 30.00 FEET;

THENCE (4), LEAVING SAID SOUTHEASTERLY LINE, SOUTH 00° 03' 34" EAST, 23.64 FEET TO THE POINT OF BEGINNING.

Amount of unpaid balance and other charges: $1,197,818.81 (estimated)

Street address and other common designation of the real property:   2964  BALLARD CANYON ROAD
LOS OLIVOS, CA 93441
APN Number:   135-350-10-00

        The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone;  by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 10-01-2009                              **SEE ATTACHED EXHIBIT**

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110812
CHATSWORTH, CA 91311

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT
COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Exhibit


## DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2923.54

Pursuant to California Civil Code Section 2923.54, the undersigned loan servicer declares as follows:

1.  It has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.54 that is current and valid on the date the notice of sale is filed; and

2.  The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or Section 2923.55.


JPMorgan Chase Bank,
National Association

Name:  Ann Thorn
Title:    First Vice President

This is a true certified copy of the original document on file or of record in my office. It bears the seal and signature, imprinted in purple ink of the County Clerk, Recorder and Assessor.

*Joseph E. Holland*

COUNTY CLERK, RECORDER AND ASSESSOR, SANTA BARBARA CALIFORNIA
DATE: NOV 2 3 2010                    BY DEPUTY:

# EXHIBIT 13

Recording Requested By
**ServiceLink**

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902

**2009-0061473**

| | Recorded | REC FEE | 15.00 |
| | Official Records | | |
| | County of | | |
| | Santa Barbara | | |
| | Joseph E. Holland | | |

08:01AM 08-Oct-2009  | EC
| Page 1 of 3

| **Trustee Sale No.** | 436140CA |
| Loan No. | 0705394807 |
| Title Order No. | 602132472 |

3

---

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/02/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 10/22/2009 at 01:00 PM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 11/29/2005, Book , Page , Instrument 2005-0113507,  of official records in the Office of the Recorder of SANTA BARBARA County, California, executed by:  ISMAEL VIEYRA AND ESPERANZA VIEYRA, HUSBAND AND WIFE AS JOINT TENANTS, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.  Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Place of Sale: AT THE NORTH DOOR OF THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 1100 ANACAPA ST. , SANTA BARBARA, CA

Legal Description:  LOT 9 OF VILLA DE LA SARA TRACT 5700, IN THE CITY OF SANTA MARIA, COUNTY OF SANTA BARBARA,STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 181, PAGES 69 THROUGH 73 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. EXCEPTING THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS, BY WHATSOEVER NAME KNOWN, THAT MAY BE WITHIN OR UNDER SAID LAND, TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR, AND REMOVING THE SAME FROM SAID LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM SAID LAND, OTHER THAN THOSE HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS, AND SHAFTS DIRECTIONALLY DRILL AND MINE FROM SAID LAND, OTHER THAN THOSE HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS, AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF SAID LAND HEREINABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR BEYOND EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES, WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, EXPLORE AND OPERATE THROUGHOUT THE SURFACE OF THE UPPER 500 FEET OF THE SUBSURFACE OF SAID LAND AS RESERVED IN THE DEED RECORDED OCTOBER 31, 1977 AS INSTRUMENT NO. 77-54407 OF OFFICIAL RECORDS.

Amount of unpaid balance and other charges: $326,227.93 (estimated)

Plaintiff's Exhibit "13"

Street address and other common designation of the real property:   814  BLANCHE COURT
SANTA MARIA, CA 93458
APN Number:   123-290-09-00

        The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".


In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone;  by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.


DATE: 10-01-2009                                    **SEE ATTACHED EXHIBIT**

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

*Deborah Brignac* JS
DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Exhibit

## DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2923.54

Pursuant to California Civil Code Section 2923.54, the undersigned loan servicer declares as follows:

1. It has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.54 that is current and valid on the date the notice of sale is filed; and

2. The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or Section 2923.55.

JPMorgan Chase Bank,
National Association

Name:  Ann Thorn
Title:    First Vice President

This is a true certified copy of the
original document on file or of record in
my office. It bears the seal and
signature, imprinted in purple ink of the
County Clerk, Recorder and Assessor.

COUNTY CLERK, RECORDER AND ASSESSOR, SANTA BARBARA CALIFORNIA
DATE: NOV 2 3 2010          BY DEPUTY

# EXHIBIT 14

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311



09/30/2010

*20101395020*

_____
Space above this line for recorder's use only

Trustee Sale No. 443450CA    Loan No. 0018017806    Title Order No. 462881

# SUBSTITUTION OF TRUSTEE
### (SEE ATTACHED DECLARATION)

WHEREAS, MARTHA L. OSPINA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, was the original Trustor, CHICAGO TITLE COMPANY, was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS), SOLELY AS NOMINEE FOR LENDER, LENDING 1ST MORTGAGE, LLC, IT'S SUCCESSORS AND ASSIGNS, was the original Beneficiary under that certain Deed of Trust dated 12-01-2006, Recorded 12-06-2006, Book , Page , Instrument 06 2703734 of official records in the office of the Recorder of LOS ANGELES County, California, and

APN: 2841-056-001 Situs: 17497 WEST HONEY MAPLE STREET, , FAIR OAKS RANCH AREA, CA 91387
WHEREAS, Wells Fargo Bank, National Association as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc., Bear Stearns Mortgage Funding Trust 2007-AR2 Mortgage Pass-Through Certificates, Series 2007-AR2, the undersigned, is the present Beneficiary under said Deed of Trust, and,
WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and stead of said original Trustee thereunder.

Now, THEREFORE, the undersigned Beneficiary hereby substitutes CALIFORNIA RECONVEYANCE COMPANY, 9200 Oakdale Avenue CA2-4379, Chatsworth, CA 91311, as Trustee of Said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

DATE: September 29, 2010
Wells Fargo Bank, National Association as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc., Bear Stearns Mortgage Funding Trust 2007-AR2 Mortgage Pass-Through Certificates, Series 2007-AR2 by EMC Mortgage Corporation as attorney in fact

_____
Deborah Brignac, Vice President

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On September 29, 2010 before me, CINDY WATERHOUSE, "Notary Public" personally appeared Deborah Brignac, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> CINDY WATERHOUSE
> Commission # 1851583
> Notary Public - California
> Los Angeles County
> My Comm. Expires May 30, 2013

Plaintiff's Exhibit "14"

3

**CALIFORNIA RECONVEYANCE COMPANY**
9200 Oakdale Avenue CA2-4379
Chatsworth, CA 91311
800 892-6902

# DECLARATION

Trustee Sale Number: 443450CA
Trustor from Deed of Trust: MARTHA L. OSPINA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

I, MARGARET FLYNN, declare that I am an officer, agent, or employee of CALIFORNIA RECONVEYANCE COMPANY whose business address is:
        9200 Oakdale Avenue CA2-4379
        Chatsworth, CA 91311

I am over the age of eighteen years. I caused an agent, on behalf of California Reconveyance Company, to deliver by Certified mail, enclosed in a sealed envelope with postage fully prepaid, deposited in the United States Post Office at Temecula, California, a copy of the attached Substitution of Trustee to the trustee of record under the Deed of Trust described in said Substitution.

A copy of the attached Substitution has been mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  09-29-2010
CALIFORNIA RECONVEYANCE COMPANY

MARGARET FLYNN
(Declarant)

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On September 29, 2010 before me, CINDY WATERHOUSE, "Notary Public" personally appeared MARGARET FLYNN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

CINDY WATERHOUSE
Commission # 1851583
Notary Public - California
Los Angeles County
My Comm. Expires May 30, 2013



**This page is part of your document - DO NOT DISCARD**

# 20101395020



Pages: 0003

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**09/30/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**

201009300260006

00003050392

002914916

**SEQ:**
**09**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

T79

1   DOUGLAS GILLIES, ESQ.  (53602)
2   douglasgillies@gmail.com
3   3756 Torino Drive
    Santa Barbara, CA 93105
4   (805) 682-7033
5   Attorney for Plaintiff
    DARYOUSH JAVAHERI
6

7                   UNITED STATES DISTRICT COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9

10  DARYOUSH JAVAHERI,              ) Case No. CV10 8185 ODW (FFMx)
                                    )
11                  Plaintiff,      )
                                    )
12          v.                      ) **PROOF OF SERVICE**
                                    )
13  JP MORGAN CHASE BANK N.A.,      )
14  CALIFORNIA RECONVEYANCE         )
    CO., and DOES 1-150, inclusive, )
15                  Defendants.     )
                                    )
16                                  )
                                    )
17  _____

18      I declare that I am over the age of 18 years, employed in the County of Santa Barbara, State of
19  California, and not a party to the above-entitled action.
        On April 11, 2011, I served a true copy of the SECOND AMENDED COMPLAINT by
20  depositing it in the US Mail, postage prepaid, addressed as follows:
21      THEODORE E. BACON
        SCOTT J. STILMAN
22      FRANCES Q. JETT
        ALVARADOSMITH
23      633 W. 5th Street, Suite 1100
24      Los Angeles, California 90071

25      I hereby certify that I am a member of the Bar of the United States District Court, Central
26  District of California, and that the foregoing is true and correct. Executed on: April 11, 2011 in Santa
    Barbara, CA.
27
28                                        Douglas Gillies, attorney

                                  Proof of Service

                                       - 1 -