THEODORE E. BACON (CA Bar No. 115395)
tbacon@AlvaradoSmith.com
DAVID J. MASUTANI (CA Bar No. 172305)
dmasutani@alvaradosmith.com
MICHAEL B. TANNATT (CA Bar No. 117133)
mtannatt@alvaradosmith.com
ALVARADOSMITH
A Professional Corporation
633 W. Fifth Street, Suite 1100
Los Angeles, CA 90071
Tel: (213) 229-2400
Fax: (213) 229-2499

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A., and CALIFORNIA
RECONVEYANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYOUSH JAVAHERI,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., CALIFORNIA RECONVEYANCE COMPANY and DOES 1-150, inclusive,<br><br>Defendants. | Case No.: **CV-10 8185 ODW (FFMx)**<br><br>The Hon. Otis D. Wright II.<br><br>DECLARATION OF ERIC WALLER IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>DATE:   July 30, 2012<br>TIME:   1:30 p.m.<br>CRTRM:  11<br><br>Action Filed:   October 29, 2010<br>Trial Date:     September 18, 2012 |

I, Eric Waller, declare as follows:

1. I am a HL Senior Research Specialist with JPMorgan Chase Bank, N. A. ("JPMorgan"). I am duly authorized to make this declaration on its behalf. As part of my duties at JPMorgan, I monitor and oversee loans and/or properties that are involved in litigation. As a result of this position, I have access to regularly kept business records of JPMorgan created at or near the time of events set forth in the documents and which consist of the documents relating to the loan ("Subject Loan") in connection with the property commonly known as 10809 Wellworth Avenue, Los Angeles, California 90024 ("Subject Property") ("Subject Property").

2. The documents I reviewed in connection with my role at JPMorgan are business records created by Washington Mutual Bank ("WaMu") and JPMorgan as a part of regular business practices, were all made in the ordinary course of business at or about the time of the events reflected therein occurred, and are kept in files and in computer systems at JPMorgan and formerly at WaMu. When JPMorgan purchased certain assets of WaMu from the Federal Deposit Insurance Corporation ("FDIC"), JPMorgan took possession of the WaMu documents. These records include the documents relating to the Subject Loan. Those documents contain entries made in the ordinary course of business at or about the time the events reflected therein occurred.

3. I submit this declaration in support of JPMorgan's and California Reconveyance Company's Motion for Summary Judgment, or, In the Alternative, Partial Summary Judgment. If called as a witness in this matter, I am competent to testify based upon my review of the records, and of my own personal knowledge, to the best of my recollection, as to the matters set forth in this declaration.

4. WaMu, formerly a federally-chartered savings and loan association, is now in receivership under the control of the FDIC. On September 25, 2008 the Office of Thrift Supervision closed WaMu and appointed the FDIC as receiver ("OTS Order"). September 25, 2008 is also the date when JPMorgan acquired certain of WaMu's assets by entering into a Purchase and Assumption Agreement ("P & A

Agreement") with the FDIC. The Subject Loan was among the assets which JPMorgan acquired through the P & A Agreement. Copies of the OTS Order and the P & A Agreement are attached hereto as Exhibits "1" & "2" respectively.

5.  Pursuant to the terms of the P & A Agreement, JPMorgan is currently handling the Subject Loan. JPMorgan also is the current holder of the beneficial interest in the Subject Loan. The Subject Loan has never been sold to a securitized trust.

6.  In November, 2007, plaintiff Daryoush Javaheri ("Plaintiff") executed a Residential Construction Loan Agreement (the "Agreement") for the loan in question, loan number 3010332439 ("Subject Loan"). A copy of the Agreement is attached hereto as Exhibit "3". In addition, in November, 2007, the Plaintiff signed a Fixed/Adjustable Rate Note, along with a Construction Loan Addendum to Note (hereinafter collectively referenced as the "Note") for the Subject Loan. A copy of the Note is attached hereto as Exhibit "4". The Subject Loan was in the principal amount of $2,660,000.00. Under the terms of the Agreement and the Note, WaMu agreed to advance the Subject Loan's proceeds for the purpose of financing the purchase of the Subject Property, the construction of the residence ("Residence") on the Subject Property and/or other improvements to be made on the Subject Property, and if applicable, the refinancing of any existing liens on the Subject Property. The Note constitutes Plaintiff's obligation to repay the Subject Loan.

7.  A thorough and diligent search for the original of the Note has been made. However, the hard copy collateral file pertaining to the Subject Loan containing the original of the Note cannot be located. A copy of the Affidavit of Lost Note is attached hereto as Exhibit "5". The Affidavit of Lost Note states that: "The loss of possession [of the original of the Note] is not the result of the original Note being canceled or transferred to another party." See Affidavit of Lost Note, Exhibit "5", ¶ 5.

8.  The Note was secured by a deed of trust ("DOT"), which encumbered

1 the Subject Property for the amount owing under the Subject Loan. A copy of the
2 recorded DOT is attached hereto as Exhibit "6".

3     9. On October 16, 2009, a Notice of Completion of the residence and or
4 other improvements to be completed on the Subject Property ("Notice of
5 Completion") was recorded in the official records the Los Angeles Recorder's Office
6 as document number 20091574519. A copy of the Notice of Completion is attached
7 hereto as Exhibit "7".

8     10. The DOT identified WaMu as the Lender and Chicago Title Company as
9 the trustee. In May, 2010, California Reconveyance Company was substituted as the
10 Subject Loan's trustee.

11     11. Paragraph 2 of the DOT sets forth the procedure for applying payments
12 or proceeds received under the Subject Loan, and states that, "all payments accepted
13 and applied by Lender shall be applied in the following order of priority (a) interest
14 due under the Note, (b) principal due under the Note, (c) amounts due under Section
15 3."

16     12. Beginning in 2009, Plaintiff fell behind on his payments concerning the
17 Subject Loan.

18     13. The DOT contains a power of sale clause. Specifically, paragraph 22 of
19 the DOT states that: "Lender shall give notice to Borrower prior to acceleration
20 following Borrower's breach of any covenant or agreement…If the default is not
21 cured on or before the date specified in the notice, Lender at its option may require
22 immediate payment in full of all sums secured by this Security instrument without
23 further demand and may invoke the power of sale."

24     14. On May 3, 2010, a Notice of Default And Election To Sell ("NOD") was
25 recorded in the official records of the Los Angeles County Recorder's Office as
26 instrument number 20100596313. This NOD was subsequently rescinded, and a
27 Notice of Rescission was recorded on May 14, 2010 in the official records of the of
28 the Los Angeles County Recorder's Office as instrument number 201001661623. A

new NOD was recorded on May 14, 2010 in the official records of the Los Angeles County Recorder's Office as instrument number 201001661624.

15. As a standard practice in notating the activity occurring on the home loans that JPMorgan services, a Consolidated Notes Log ("Consolidated Notes Log") is kept. These entries are contemporaneously made when the activity occurred. I have reviewed the Consolidated Notes Log as to the Subject Loan for the dates of January 23, 2010 through the end of October, 2010, which is when Plaintiff filed the lawsuit herein. A copy of the Consolidated Notes Log is attached hereto as Exhibit "8". In addition I have reviewed the Loss Mitigation Process Notes ("Loss Mitigation Notes"), which, among other things, contains entries relating to loan modification activities once a loss mitigation file has been opened. The Loss Mitigation Notes are attached hereto as Exhibit "9". The Consolidated Notes Log and the Loss Mitigation Notes, which are in reverse chronological order, contain the following entries:

I. **Contacts With Plaintiff Prior To The Recording Of the NOD On May 24, 2010**

16. On February 2, 2010, someone called and stated that he was the borrower's attorney and that he would be sending in a loan modification package. Exhibit "8", Consolidated Notes Log, page 001054, entry for February 2, 2010.

17. On February 11, 2010, an agent for JPMorgan went to the address for the Subject Property and spoke with the Plaintiff's housekeeper. The house keeper accepted a letter in an envelope marked confidential and stated to the agent that the Plaintiff would get the letter as soon as possible. The housekeeper did not provide the agent with any employment or other contact information. Exhibit "8", Consolidated Notes Log, page 001052, entry for February 19, 2010.

18. On or about February 19, 2010, a loan servicer spoke with Plaintiff. The loan servicer advised the Plaintiff of the status of the Subject Loan and that it was in foreclosure and advised Plaintiff of the workout options that were available to him. The loan servicer asked regarding Plaintiff's current income. Plaintiff informed that he

1  was self-employed, that he did not have "definite number" as to what his income was
2  but that his business of importing general merchandise to China was down. The loan
3  servicer asked how much of a payment that he could afford. The Plaintiff said "about
4  8000 – 9000 payment." Plaintiff further informed that he had hired an attorney to
5  work on this case and Plaintiff advised that "he should have document in by the next 2
6  weeks." The loan servicer further advised the Plaintiff that he needed to send a
7  payment in right away due to the delinquency on the Subject loan and that by not
8  doing so, the Plaintiff was "running the risk of foreclosure review." Plaintiff advised
9  that he was "liquidating assets for more income and [that the] family is helping." The
10 loan servicer gave Plaintiff his contact information. Exhibit "8", Consolidated Notes
11 Log, page 001051, entries for February 19, 2010.

12    19.   In the entry for February 24, 2010, it was noted that the Plaintiff would
13 not be able to make payment and that the HUD notice went out on February 5, 2010
14 and expired on March 2, 2010. It was further noted that a complete loan modification
15 package was expected to be received in 2 weeks. Exhibit "8", Consolidated Notes
16 Log, page 001051, entry for February 24, 2010.

17    20.   The entry for March 16, 2010 reflects that no loan documents had been
18 received from Plaintiff. A request was sent to have the Subject Loan classified as
19 being breached and a request was to be made to have the loan placed in foreclosure.
20 Exhibit "8", Consolidated Notes Log, page 001051, entries for March 16, 2010.

21    21.   On or about March 30, 2010, the Plaintiff called and the loan servicing
22 agent informed Plaintiff of the status of the Subject Loan and explored whether a
23 workout solution was feasible. (The acronym "ER Wrkout Sol" stands for "early
24 resolution workout solicitation".) However, the Plaintiff at that time was
25 uncooperative and unconcerned. The loan servicer noted that the Plaintiff "cannot
26 commit to pay", and Plaintiff was "gathering details on RFD & FNCLS to further
27 [review] the situation." The Plaintiff was not prepared "to answer the financial
28 questions." (The acronym "RFD" stands for "reason for default" and the acronym for

"FNCLS" stands for the borrower's current "financials".) Exhibit "8", Consolidated Notes Log, page 001048, entries for March 30, 2010.

22. On April 22, 2010, a loan servicer left a message on Plaintiff's cell phone to call. Exhibit "8", Consolidated Notes Log, page 001048, entries for April 22, 2010.

23. On or about April 29, 2010, a loan servicing agent contacted the Plaintiff, who hung up. Exhibit "8", Consolidated Notes Log, page 001047, entries for April 29, 2010.

24. On or about May 4, 2010, the loan servicing unit received an incomplete third party authorization from the Plaintiff and a letter was mailed to the borrower. Exhibit "8", Consolidated Notes Log, page 001047, entries for May 4, 2010

II. **Contacts With Plaintiff After The Recording Of the NOD On May 24, 2010**

25. On or about June 12, 2010, a loan servicing agent received a call from Plaintiff, who called to explore options to avoid foreclosure, and the agent advised Plaintiff to request a modification of the Subject Loan. Exhibit "8", Consolidated Notes Log, page 001047, entries for June 12, 2010.

26. On August 4, 2010, a representative of the loss mitigation unit spoke to the Plaintiff to inform him of the state of the Subject Loan's account. The Plaintiff informed that he was self-employed, and he advised that he had obtained an extension to file his 2009 tax return. The Loss Mitigation representative advised what documents were required to be submitted on behalf of a loan modification request, including the most recent complete business and personal bank statements, and a profit and loss statement for the current year. The representative attempted to obtain a time frame as to when the documents would be submitted. However, the Plaintiff could not give him a realistic time period as to when the documents would be submitted. Plaintiff informed that he would be the point of contact for the interior appraisal. Exhibit "9", Loss Mitigation Notes, page 001013, entries for August 4, 2010.

27. Between August 10, 2010 to September 22, 2010, documents were

1 collected in support of the loan modification review, and on September 22, 2010, the loan modification file was submitted to an underwriter for review. See Exhibit "9", Loss Mitigation Notes, pages 001011 - 001007, entries for August 10, 2010 to September 22, 2010.

28. The September 20, 2010 entry states that Plaintiff filed for bankruptcy. See Exhibit "9", Loss Mitigation Notes, pages 00108, entry for September 20, 2010.

29. On September 22, 2010, Plaintiff's file was reclassified as bankruptcy loss mitigation file. See Exhibit "9", Loss Mitigation Notes, pages 00107, entry for September 22, 2010.

30. Also on September 22, 2010, a telephone call was received from Plaintiff informing that information was requested in regard to a short sale of the Subject Property. See Exhibit "9", Loss Mitigation Notes, pages 00107, entry for September 22, 2010.

31. Later on September 22, 2010, the Plaintiff called and wanted to know what his options were. The representative informed Plaintiff that a short sale was an option if he had been denied a loan modification. Plaintiff informed that he would like to refinance and the representative transferred him to another representative's voice mail. See Exhibit "9", Loss Mitigation Notes, pages 00106, entry for September 22, 2010.

32. On September 23, 2010, the Plaintiff inquired what he needed to do for a short sale. Plaintiff again asked regarding his options. Plaintiff was informed that he would need to file a motion releasing the Subject Property from the bankruptcy estate if the Subject Property was to be eligible for a short sale. Plaintiff informed that he would speak with his lawyer. Plaintiff informed that he had received a letter informing him that he had been denied for a loan modification because of the high balance on the Subject Loan. The representative stated that he would send an e-mail to his superior so that the short sale department could contact Plaintiff regarding his request. See Exhibit "9", Loss Mitigation Notes, pages 00106, entry for September

23, 2010.

33. Any contacts made by JPMorgan directly to Plaintiff concerning a workout of the Subject Loan ceased when the action herein was filed on October 29, 2010.

34. At present, the Subject Loan is still due for the November 1, 2009 payment as well all subsequent payments thereafter.

35. To date, Plaintiff has not tendered or offered to tender the entire amount of indebtedness owing under the DOT.

36. To date, no trustee's sale has occurred in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 31 day of May, 2012 at Chatsworth, California.

_____
Eric Waller, Declarant

DECLARATION OF ERIC WALLER IN SUPPORT MOTION FOR SUMMARY JUDGMENT

3196439.1 -- AL109.W1642