**O**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYOUSH JAVAHERI, | Case No. 2:10-cv-08185-ODW (FFMx) |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [58]** |
| v. | |
| JPMORGAN CHASE BANK, N.A. and DOES 1–150, inclusive, | |
| Defendants. | |

## I.    INTRODUCTION

Defendant JPMorgan Chase Bank, N.A. moves for partial summary judgment on Plaintiff Daryoush Javaheri's Second Amended Complaint ("SAC").  (ECF No. 58.)  The Court has carefully considered the arguments in support of and in opposition to the JPMorgan's Motion.  For the following reasons, JPMorgan's Motion is **GRANTED**.

## II.    FACTUAL BACKGROUND

On November 14, 2007, Javaheri obtained a $2,660,000.00 mortgage loan from Washington Mutual Bank, FA to finance his property located at 10809 Wellworth Avenue, Los Angeles, California 90024 (the "Wellworth Property").  (Eric Waller Decl. Ex. 4.)  In connection with the loan, Javaheri executed a promissory note (the "Note") and a Deed of Trust encumbering the property.  (Waller Decl. Exs. 4, 6.)  The

1   Deed of Trust identifies Washington Mutual as the lender and Chicago Title Company
2   as the Trustee.  (Waller Decl. Ex. 6.)

3        Javaheri asserts that in November 2007, Washington Mutual transferred the
4   Note to Washington Mutual Mortgage and Securities Corporation.  (SAC ¶ 14.)  There
5   is no evidence of this.  Javaheri also alleges that the Note evidencing his indebtedness
6   was then sold as an investment security to unknown private investors.  (SAC ¶¶ 14,
7   28.)  Javaheri identifies this security as Standard and Poor CUSIP number
8   31379XQC2, Pool Number 432551.  (Douglas Gillies Decl. Ex. 5.)  Javaheri took this
9   Pool Number from the Deed of Trust and entered it into a "Pool Talk" form on the
10  Fannie Mae website.  (Michael B. Tannatt Decl. Ex. 1, Interrogatory No. 5.)  But the
11  number on the Deed of Trust was handwritten and read "4325-5-14."  (Waller Decl.
12  Ex. 6.)  JPMorgan maintains that the number on the Deed of Trust corresponds to the
13  Assessor's Parcel Number.  (Mot. 11.)  The Assessor's Parcel Number is "4325-005-
14  014."  (Jessica Snedden Decl. Exs. 1, 4, 6.)

15       On September 25, 2008, the Office of Thrift Supervision closed Washington
16  Mutual and appointed the Federal Deposit Insurance Corporation as receiver.  (Waller
17  Decl. Ex. 1.)  JPMorgan acquired certain of Washington Mutual's assets by entering
18  into a Purchase and Assumption ("P&A") Agreement with the FDIC.  (Waller Decl.
19  Ex. 2.)  Paragraph 3.1 of the P&A Agreement states, "Notwithstanding Section 4.8,
20  the assuming Bank specifically purchases all mortgage servicing rights and
21  obligations of the Failed Bank."  (Waller Decl. Ex. 2.)

22       In March 2010, JPMorgan sent Javaheri a Notice of Collection Activity letter
23  stating that he was in default of his mortgage because he had not made any payments
24  since November 2009.  (SAC Ex. 5.)  Javaheri's attorney at the time responded to the
25  letter, requesting that all future communication related to the loan be conducted
26  through his office.  (SAC Ex. 6.)

27       On May 3, 2010, California Reconveyance Company ("CRC") was substituted
28  as the Trustee for the loan in place of Chicago Title Company.  (Snedden Decl. Ex. 1.)

Also on May 3, 2010, CRC recorded a Notice of Default and Election to Sell the Wellworth Property in the Los Angeles County Recorder's Office.  (Snedden Decl. Ex. 2.)

On May 14, 2010, CRC recorded a Notice of Rescission and a second Notice of Default.  (Snedden Decl. Exs. 3, 4.)  CRC then mailed a second Notice of Default to Javaheri on or about May 24, 2010, and again on June 8, 2010.  (Snedden Decl. Ex. 5.)  On August 16, 2010, a Notice of Trustee's Sale was recorded and subsequently served on Javaheri, published in a local newspaper, and posted on the Wellworth Property.  (Snedded Decl. Exs. 6–9.)

As a result of these events, on October 29, 2010, Javaheri filed a Complaint in this Court against JPMorgan and CRC.  (ECF No. 1.)  Both Javaheri's original Complaint and his subsequent First Amended Complaint were dismissed for failure to state claims.  (ECF Nos. 20, 28.)  On April 12, 2011, Javaheri filed his SAC against JPMorgan.  (ECF No. 29.)  JPMorrgan filed a Motion to Dismiss (ECF No. 30), which the Court partially granted, leaving only claims for: (1) violation of California Civil Code section 2923.5; (2) wrongful foreclosure; (3) quasi-contract; (4) quiet title; and (5) declaratory and injunctive relief.  (ECF No. 36.)

On December 5, 2011, Javaheri filed a Complaint in another action that was nearly identical to the SAC in this case, except that it concerned Javaheri's condominium on Wilshire Boulevard instead of his house on Wellworth.  *Javaheri v. JPMorgan Chase Bank N.A.*, No. CV11-10072-ODW (FFMx) (C.D. Cal. Dec. 5, 2011).  Due to the cases' similarities, the Court consolidated the later-filed case regarding Plaintiff's condo (CV11-10072) with this earlier-filed case concerning the Wellworth Property (CV10-8185).  (ECF No. 50.)

On June 21, 2012, JPMorgan filed a Motion for partial Summary Judgment as to the remaining claims from Javaheri's SAC.  (ECF No. 58.)  JPMorgan's Motion pertains solely to the Wellworth Property originally associated with case number CV10-8185; it does not address Javaheri's condo.

### III.   LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  Where the moving party's version of events differs from the nonmoving party's version, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion."  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The moving party may satisfy that burden by demonstrating to the court that "there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Celotex*, 477 U.S. at 323–34; *Liberty Lobby*, 477 U.S. at 248.  Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (finding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor).

The evidence presented by the parties on summary judgment must be admissible.  *See* Fed. R. Civ. P. 56(e).  "[E]vidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  *Addisu v.*

*Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Likewise, conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson*, 477 U.S. at 253.

Finally, it is not the task of the district court "to scour the record in search of a genuine issue of triable fact.  [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

## IV.   DISCUSSION

### A.   Violation of Civil Code § 2923.5

Javaheri's claim for violation of California Civil Code section 2923.5 is preempted by the Home Owner's Loan Act ("HOLA"), 12 U.S.C. §§ 1461–1468c.  In California, section 2923.5 requires mortgagees, beneficiaries, or authorized agents to communicate with borrowers facing foreclosure.  Cal. Civ. Code § 2923.5(a)(1).  Section 2923.5 is a state law that attempts to regulate banks' lending and servicing activities, and is "exactly the sort of statute that is proscribed by the HOLA."  *McNeely v. Wells Fargo bank, N.A.*, No. SACV 11-01370 DOC (MLGx), 2011 WL 6330170, at *3 (C.D. Cal. Dec. 15, 2011).

HOLA is a comprehensive financial statute providing for the regulation of federal savings banks and associations by the Office of Thrift Supervision ("OTS").  *See* 12 U.S.C. § 1464; *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1031 (N.D. Cal. 2010).  "Through HOLA, Congress gave the OTS broad authority to

1   issue regulations governing federal savings associations." *Ngoc Nguyen*, 749 F. Supp.

2   2d at 1031 (citing 12 U.S.C. § 1464; *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001,

3   1005 (9th Cir. 2008)).  In exercising its authority, the OTS "occupies the entire field

4   of lending regulation for federal savings associations." 12 C.F.R. § 560.2.  Indeed, the

5   Ninth Circuit has noted that HOLA is "so pervasive as to leave no room for state

6   regulatory control."  *Silvas*, 514 F.3d at 1004–05 (quoting *Conference of Fed. Sav. &*

7   *Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257 (9th Cir. 1979), *aff'd*, 445 U.S. 921).

8         Here, the loan originator, Washington Mutual Bank, FA, was a federally

9   chartered savings bank at the time the loan originated.  (Waller Decl. Ex 1.); *see*

10  *Rodriguez v. JPMorgan Chase & Co.*, 809 F. Supp. 2d 1291, 1295 (S.D. Cal. 2011).

11  Although JPMorgan is not a federal savings bank and is not regulated by the OTS, the

12  same HOLA preemption analysis still applies because the loan originated with

13  Washington Mutual.  *Rodriguez*, 809 F. Supp. 2d at 1295; *see Deleon v. Wells Fargo*

14  *Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010).

15        While the California Court of Appeals, in *Mabry v. Superior Court*, 185 Cal.

16  App. 4th 208, 213–19 (2010), has construed section 2923.5 to be outside the scope of

17  preemption, the weight of federal authority supports a finding that HOLA preempts

18  section 2923.5.  *See, e.g.*, *Tanguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064,

19  1073–74 (C.D. Cal. 2010); *Giannini v. Am. Home Mortg. Servicing, Inc.*, No. C11-

20  04489 TEH, 2012 WL 298254, at \*6–8 (N.D. Cal. Feb 1, 2012).  "Because the issue is

21  not one of interpreting state law but rather of federal preemption, 'the [Court] is not

22  bound by the decision in *Mabry*.'"  *McNeely*, 2011 WL 6330170, at \*3 (quoting

23  *Tanguinod*, 755 F. Supp. 2d at 1074).

24        The Court agrees with the majority of courts in the Ninth Circuit and finds that

25  HOLA preempts section 2923.5.  The Court therefore **GRANTS** JPMorgan's Motion

26  for Summary Judgment on Javaheri's claim for violation of California Civil Code

27  section 2923.5 as it relates to the Wellworth Property.

28  / / /

**B.     Wrongful Foreclosure**

Javaheri's claim for wrongful foreclosure relies on three contentions: (1) that JPMorgan is not owner, holder, or beneficiary of the Note; (2) that JPMorgan does not have the authority to foreclose; and (3) that the signatures of Deborah Brignac were robo-signed.  The Court addresses each of these arguments in turn.

*1.     Ownership of the Note*

Javaheri alleges that JPMorgan did not own his Note and therefore did not have the right to foreclose.  (SAC ¶ 30.)  The Second Amended Complaint states that Washington Mutual transferred the Note to Washington Mutual Mortgage Securities Corporation in November 2007, and the Note was then sold to an investment trust. (SAC ¶ 14.)

To support this contention, Javaheri purports to provide evidence of the sale. The number "4325-5-14" is handwritten in the margin of the Deed of Trust.[1]  (Waller Decl. Ex. 6.)  In April 2011, Counsel for Javaheri entered the number "432551" as a Pool Number in a form titled "Pool Talk" that was publicly available on Fannie Mae's website.[2]  (Gillies Decl. Ex. 5.)  But the number that Counsel entered differs in both form and substance from the number written on the deed of trust: it includes neither the dashes nor the last digit.  The only information available on the "Pool Talk" form is that the pool number "432551" corresponds to the CUSIP number "31379XQC2" and that as of 2011, the status of this security was "Preliminary."  (Gillies Decl. Ex. 5.)  Aside from this, Javaheri provides no information on who the private investors are, when the Note was sold, how much it was sold for, or any other evidence that would connect the Note to this loan pool.

---

[1] The number as written on the Deed of Trust is "4325-5-14."  But, in his response to Interrogatory No. 5, Javaheri claims that the number was written as "432551."  (Tannatt Decl. Ex. 1.)  In the Opposition to the JPMorgan's Motion, Counsel for Javaheri states that the number is "4325514." (Opp'n 3.)

[2] Javaheri is inconsistent in enumerating the number that he entered into the "Pool Talk" form.  As stated in the Opposition and as appearing in Exhibit 5, the number entered is "432551."  (Opp'n 3; Gillies Decl. Ex. 5.)  But, Gillies' Declaration states that he entered the number "4325514" in the "Pool Talk" form.  (Gillies Decl. at 3.)

JPMorgan's explanation for the number "4325-5-14" handwritten in the margin of the Deed of Trust is that it refers to the Assessor's Parcel Number for the Wellworth Property.  (Mot. 11.)  The Assessor's Parcel Number for the Wellworth Property is "4325-005-014".  (Snedden Decl. Exs. 1, 4, 6.)  The parcel number and the handwritten number on the Deed of Trust are the same, and in the same format, except that the handwritten number omits the zeros contained in the Assessor's Parcel Number.

Ordinarily, summary judgment cannot lie when there is a "genuine" issue of material fact.  *Anderson*, 477 U.S. at 248.  But if the evidence is merely colorable or not sufficiently probative, then the Court may grant summary judgment.  *Id.* at 249–50.  Only if genuine factual issues may reasonably be resolved in favor of either party should the case proceed to trial.  *Id.* at 250.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587 (internal quotation marks omitted).

Here, no reasonable jury could conclude that Javaheri's Note had been sold as part of a securitized trust.  The pool number was only a partial entry of what was written in the margin of the Deed of Trust, and the only possible connection to some heretofore unnamed private investors is that the number entered into "Pool Talk" corresponds with a CUSIP number that had a *Preliminary* status in 2011—several months after the lawsuit was originated and at least two-and-a-half years since the Note was allegedly sold as a securitized trust.  While the number written on the Deed of Trust bears a striking resemblance to a number associated with a securitized trust, Plaintiff simply fails to produce sufficient evidence to establish that this is anything more than a rare coincidence.  The Court therefore finds that Javaheri has failed to establish that JPMorgan does not own his Note and Deed of Trust.

/ / /

/ / /

2.    *Authority to foreclose*

Javaheri also argues that JPMorgan cannot produce the original Note and that there has been no recording of the beneficial interest in the Note to Chase.

The SAC states, "Neither WaMu, Chicago Title, CRC, nor Chase has recorded a transfer of the beneficial interest in the Note to Chase."  (SAC ¶ 29.)  Javaheri is correct in this assertion, and JPMorgan offer no evidence to counter it.  But this argument bears no weight on JPMorgan's authority to foreclose.  California courts have routinely held that a transfer of assignment of a debt does not need to be recorded.  *See*, *e.g.*, *Herrera v. Fed. Nat'l Mortg. Assn.*, 205 Cal. App. 4th 1495, 1506 (2012); *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 271–72 (2011).

Javaheri also argues that JPMorgan cannot produce the original Note.  (SAC ¶ 31.)  This is also true.  (Waller Decl. Ex. 5.)  Nevertheless, numerous courts have concluded that production or possession of the original promissory note is not necessary for non-judicial foreclosure under California law.  *See*, *e.g.*, *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1068 (E.D. Cal. 2010); *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1035 (N.D. Cal. 2010).  The Court agrees.

Therefore, although JPMorgan cannot produce the original Note and has not recorded its interest in the Note, these actions are not required for non-judicial foreclosure in California and thus are inapposite to Javaheri's claim for wrongful foreclosure.

3.    *Robo-signing*

Javaheri contends finally that the Substitution of Trustee is invalid because it was robo-signed.  (SAC ¶ 39.)  According to Javaheri, surrogate signers allegedly signed several documents on behalf of and in the name of Deborah Brignac, without reading or understanding the documents' contents.  (Gillies Decl. Ex. 4.)  Indeed, for the purposes of this Motion, the Court finds that the signature of Deborah Brignac on

1    the Substitution of Trustee was signed by a different person than that purporting to be

2    Deborah Brignac on the Notice of Trustee's Sale.  (Gillies Decl. Ex. 6.)

3         While the allegation of robo-signing may be true, the Court ultimately

4    concludes that Javaheri lacks standing to seek relief under such an allegation.  District

5    Courts in numerous states agree.  *See*, *e.g.*, *Repokis v. Deutsche Bank Nat'l Trust Co.*,

6    No. 11-15145, 2012 WL 2373350, at *2 (E.D. Mich. June 25, 2012); *In re Mortgage*

7    *Electronic Registration Systems (MERS) Litigation*, No. CV 10-1547-PHX-JAT, 2012

8    WL 932625, at *3 (D. Ariz. Mar. 20, 2012) *see also See Bleavins v. Demarest*, 196

9    Cal. App. 4th 1533, 1542 (2011) ("Someone who is not a party to a contract has no

10   standing to challenge the performance of the contract . . . ." (internal quotation marks

11   and alterations omitted)).

12        Only someone who suffered a concrete and particularized injury that is fairly

13   traceable to the substitution can bring an action to declare the assignment of CRC as

14   void.  *In re Mortgage Electronic Registration Systems (MERS) Litigation*, 2012 WL

15   932625, at *3.  The Substitution of Trustee in this case replaces Chicago Title

16   Company with CRC as trustee of the Deed of Trust.  (Snedden Decl. Ex. 1.)  Javaheri

17   was not party to this assignment, and did not suffer any injury as a result of the

18   assignment.  Instead, the only injury Javaheri alleges is the pending foreclosure on his

19   home, which is the result of his default on his mortgage.  The foreclosure would occur

20   regardless of what entity was named as trustee, and so Javaheri suffered no injury as a

21   result of this substitution.  *See Bridge v. Aames Capital Corp.*, No. 1:09 CV 2947,

22   2010 WL 3834059, at *4 (N.D. Ohio Sept. 29, 2010) ("Plaintiff is still in default on

23   [his] mortgage and subject to foreclosure.  As a consequence, Plaintiff has not

24   suffered any injury as a result of the assignment.")

25        In sum, Javaheri fails to establish that JPMorgan is not the owner, holder, or

26   beneficiary of the Note or that it lacked the authority to foreclose, and he lacks

27   standing to assert his robo-signing contentions.  The Court therefore **GRANTS**

28

1   JPMorgan's Motion on Javaheri's wrongful foreclosure claim as it pertains to the

2   Wellworth Property.

3   **C.      Quasi-Contract**

4          Javaheri's claim for quasi-contract alleges that JPMorgan was unjustly enriched

5   when Javaheri paid it monthly mortgage payments because JPMorgan was not the

6   owner, lender, or beneficiary of the note.  (SAC ¶ 42.)

7          In its previous Order, the Court denied JPMorgan's Motion to Dismiss the

8   quasi-contract claim on the basis that "if indeed JPMorgan did not own the Note yet

9   received payments therefrom, those payments may have been received unjustly."

10  (Order 8.)  The Court premised its decision on Javaheri's well-pleaded allegations that

11  JPMorgan was not the rightful owner of the Note, and so was unjustly enriched by

12  collecting mortgage payments from Javaheri.  (SAC ¶ 42.)

13         These allegations were sufficient to withstand a Rule 12(b)(6) motion to

14  dismiss, but to withstand summary judgment, Javaheri must provide admissible

15  evidence demonstrating that the Note is owned by another entity.  Javaheri has not

16  done this, and so, as the Court has already concluded, Javaheri fails to establish that

17  JPMorgan is not the rightful owner of the Note.

18         Javaheri does not argue that the Note and the Deed of Trust are not valid

19  documents as to the Subject Loan and Wellworth Property; he argues only that

20  JPMorgan is not the valid owner.  (SAC ¶ 42.)  These documents are thus controlling

21  in establishing the respective rights and obligations between Javaheri and JPMorgan.

22         Under California law, a claim for quasi-contract alleging unjust enrichment

23  cannot lie "when an enforceable, binding agreement exists defining the rights of the

24  parties."  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir.

25  1996).  Here, the Note and the Deed of Trust are express contracts covering the same

26  subject material as Javaheri's quasi-contract claim.  The Court must therefore look to

27  the physical, written contracts (the Note and the Deed of Trust) to determine whether

28  Javaheri's claim fails as a matter of law.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal.

1   App. 4th 1342, 1388 (2012); *Lance Camper Mfg. Corp. v. Republic Indem. Co. of*
2   *Am.*, 44 Cal. App. 4th 194, 203 (1996).

3          The Note instructs the Borrower to make monthly payments to the Note Holder.
4   (Waller Decl. Ex. 4.)  The Note Holder is either the original lender, Washington
5   Mutual, or "anyone who takes the Note by transfer and who is entitled to receive
6   payments under this Note."  (Waller Decl. Ex. 4.)  The Note was properly transferred
7   from Washington Mutual to the FDIC as receiver of the bank, and from the FDIC to
8   JPMorgan through the P&A Agreement.  So, JPMorgan is now the Note Holder.
9   Thus, the Note is a valid contract between Javaheri and JPMorgan, and any attempt to
10  plead a quasi-contract claim in substitution of the Note and Deed of Trust must
11  necessarily fail.

12         Finally, even if the Court could find that there was no enforceable contract
13  governing the parties' rights and obligations in this case, there is still no evidence that
14  JPMorgan has unjustly benefitted from Javaheri's mortgage payments at Javaheri's
15  expense.  Unjust enrichment requires the receipt of a benefit and the unjust retention
16  of that benefit at the expense of another.  *Tilley v. Ampro Mortg.*, No. S–11–1134
17  KJM CKD, 2011 WL 5921415, at *9 (E.D. Cal. Nov. 28, 2011) (quoting *Peterson v.*
18  *Cellco Partnership*, 164 Cal.App.4th 1583, 1593 (2008)); *Cross v. Wells Fargo Bank,*
19  *N.A.*, No. CV11-00447 AHM (Opx), 2011 WL 6136734, at *3 (C.D. Cal. Dec. 9,
20  2011) (same).  Conspicuously absent from both Javeheri's Complaint and the
21  evidentiary record in this case is any contention or any evidence that JPMorgan—to
22  the extent that it does not own Javaheri's Note and is not entitled to keep Javaheri's
23  mortgage payments—has failed to credit Javaheri's account or forward Javaheri's
24  payments to the appropriate entity.  Nor does any other creditor appear to claim an
25  interest in any of the payments Javaheri made prior to default.  Javaheri therefore has
26  not established the very essence of a quasi-contract claim.

27         The Court therefore **GRANTS** JPMorgan's Motion for Summary Judgment on
28  Javaheri's quasi-contract claim as it relates to the Wellworth property.

1    **D.    Quiet Title**

2         Javaheri's claim for quiet title is based on allegations (1) that JPMorgan does

3    not own and cannot produce the original promissory note and (2) that all necessary

4    sums have been paid.

5         California courts have held that a party seeking to quiet title to a property on

6    which he owes a debt must first offer payment in full on that debt.  *Rosenfeld v.*

7    *JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010); *Miller v.*

8    *Provost*, 26 Cal. App. 4th 1703, 1707 (1994).  In his SAC, Javaheri alleges, "[T]he

9    obligations owed to WaMu under the DOT were fulfilled and the loan was fully paid

10   when WaMu received funds in excess of the balance on the Note as proceeds of sale

11   through securitization(s) of the loan and insurance proceeds from Credit Default

12   Swaps."  (SAC ¶ 63.)  In other words, Javaheri suggests that he need not pay off his

13   debt simply because Washington Mutual transferred the Note to a third party.  Even

14   assuming that Washington Mutual did sell the Note to a securitized trust, which

15   Javaheri has failed to establish, public policy demands that Javaheri pay off his debt.

16   It would be patently unfair to allow Javaheri to own his home free and clear without

17   fully paying the money he owes on the home.  Moreover, district courts have

18   consistently held that "the sale or pooling of investment interests in an underlying note

19   [cannot] relieve borrowers of their mortgage obligations."  *Upperman v. Deutsche*

20   *Bank Nat'l Trust Co.*, No. 01:10-cv-149, 2010 WL 1610414, at *2 (E.D. Va. Apr. 16,

21   2010); *see Matracia v. JP Morgan Chase Bank, NA*, No. CIV. 2:11-190 WBS JFM,

22   2011 WL 3319721, at *3 (E.D. Cal. Aug. 1, 2011).

23        JPMorgan has satisfied its burden by providing evidence that Javaheri has not

24   tendered the full amount due under the loan.  (Tannatt Decl. Ex. 4, at 22.)  Javaheri

25   does not refute this.  (*See* Plaintiff's Statement of Genuine Issues in Opposition to

26   Motion for Summary Judgment.)  Javaheri's SAC does allege that his obligation to

27   pay Washington Mutual was fulfilled when Washington Mutual received proceeds

28   from the sale of the Deed of Trust to private investors in a securitized trust.  (SAC

1    ¶¶ 43, 63.)  But while this was enough to survive a Rule 12(b)(6) motion to dismiss, it

2    is not enough to survive summary judgment.  Javaheri provides no evidence that there

3    were any proceeds from the sale of the Deed of Trust to private investors.  Therefore,

4    even if this sale did occur, there is still no evidence of tender.  And because Javaheri

5    provides no evidence that *he* tendered the full amount owed under the Deed of Trust,

6    there can be no claim to quiet title.  Accordingly, JPMorgan's Motion is **GRANTED**

7    with respect to Javaheri's claim for quiet title as it relates to the Wellworth Property.

8    **E.    Declaratory and Injunctive Relief**

9           Claims for declaratory and injunctive relief are ultimately prayers for relief, not

10   causes of action.  *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1104

11   (E.D. Cal. 2010).  Javaheri is not entitled to such relief absent a viable underlying

12   claim.  *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 888 (N.D. Cal.

13   2011).

14          The Court stated in its June 2, 2011 Order, "Plaintiff has properly pleaded his

15   underlying claims and Defendant may therefore be found liable at a later stage of the

16   litigation."  (Order 9.)  Javaheri's allegations were enough to withstand dismissal

17   under 12(b)(6), but for summary judgment, Javaheri cannot rest upon mere allegations

18   or denials in his pleadings; rather, he must assert evidentiary materials showing that

19   there is a genuine issue for trial.  *Anderson*, 477 U.S. at 256.  Because there is no

20   evidence to support Javaheri's underlying claims, injunctive relief is improper.

21          To state a claim for declaratory relief, there must be an actual controversy.  *Am.*

22   *States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).  The Court has dismissed

23   Javaheri's claims, so there is no longer a controversy regarding the Wellworth

24   Property.  Therefore, the Court has no jurisdiction to award declaratory relief on the

25   Wellworth Property.

26          Accordingly, the Court **GRANTS** JPMorgan's Motion for Summary Judgment

27   on Javaheri's claim for declaratory and injunctive relief as it relates to the Wellworth

28   Property.

## V.    CONCLUSION

The Court **GRANTS** Defendant's Motion for Partial Summary Judgment in its Entirety.  The parties shall proceed in this litigation solely on Plaintiff's Wilshire Boulevard condo, which is the only property remaining subject to this action.

**IT IS SO ORDERED.**

August 13, 2012

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**