**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYOUSH JAVAHERI,<br><br>                    Plaintiff,<br><br>          v.<br><br>JPMORGAN CHASE BANK, N.A.;<br>CALIFORNIA RECONVEYANCE<br>COMPANY and DOES 1–150, inclusive,<br><br>                    Defendants. | Case No. 2:10-cv-08185-ODW(FFMx)<br><br>**ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT [102]** |

## I.   INTRODUCTION

Defendants JPMorgan Chase Bank, N.A. and California Reconveyance Company move for summary judgment on Plaintiff Daryoush Javaheri's Complaint originally filed in *Javaheri v. JP Morgan Chase Bank N.A.* ("*Javaheri II*"), No. 11-cv-10072-ODW-FFM (C.D. Cal. filed December 5, 2011).  (*Javaheri II* has now been consolidated with *Javaheri v. JP Morgan Chase Bank N.A.* ("*Javaheri I*"), No. 10-cv-08185-ODW-FHM (C.D. Cal. filed Oct. 29, 2010).)  Having carefully considered the papers filed in support of and in opposition to Defendants' Motion, the Court deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  For the reasons discussed below, the Court **GRANTS** Defendants' motion in its entirety.

## II.   FACTUAL BACKGROUND[1]

On December 6, 2006, Plaintiff Daryoush Javaheri obtained a $975,000 mortgage loan from Washington Mutual Bank, FA ("WaMu") to finance the purchase of a condominium located at 10660 Wilshire Blvd., #1401, Los Angeles, California 90024 (the "Wilshire Property").  (JPMorgan's Statement of Undisputed Fact ("SUF") 1.)  In connection with the loan, Javaheri executed a promissory note (the "Note") secured by a Deed of Trust encumbering the property.  (*Id.*)  The Deed of Trust, recorded on December 13, 2006, identifies WaMu as the lender beneficiary and California Reconveyance Company ("CRC") as the trustee under the Deed of Trust.  (SUF 2.)

On January 1, 2007, WaMu sold the beneficial interest in Javaheri's loan to WaMu Asset Acceptance Corporation, which then transferred the loan to LaSalle Bank National Association, as trustee of the Washington Mutual Mortgage Pass-Through Certificates Series 2007-HY1 Trust (the "2007-HY1 Trust").  (SUF 6.)  Later in 2007, Bank of America took LaSalle's place as trustee of the 2007-HY1 Trust as the successor by merger to LaSalle.  As a result, Bank of America is the current trustee of the 2007-HY1 Trust and beneficial interest-holder in Javaheri's loan.

Shortly after the transfer of Javaheri's loan to the 2007-HY1 Trust, WaMu, WaMu Asset Acceptance, and LaSalle entered into a Pooling and Servicing Agreement whereby WaMu became the servicer of the pool of loans sold to 2007-HY1 Trust (including Javaheri's loan).  (SUF 10.)  As a result, WaMu was expressly given "full power and authority to do . . . all things in connection with such servicing and administration" of the trust.  (*Id.*)  WaMu's servicing and administration duties included collecting all loan payments, abiding by collection practices for comparable

---

[1] This Factual Background section is drawn almost entirely from Defendants' separate statement of undisputed facts and supporting evidence.  Because Javaheri's statement of genuine disputes failed to dispute any of Defendants' undisputed facts, the Court considers all of the facts contained within Defendants' separate statement "undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

loans, and foreclosing on loans in default.  (SUF 11.)  WaMu acted as servicer on Javaheri's loan from origination until WaMu's failure in 2008.  (SUF 12.)

On September 25, 2008, the Office of Thrift Supervision ("OTS") closed WaMu and appointed the Federal Deposit Insurance Commission ("FDIC") as receiver.  (SUF 13.)  In this role, the FDIC assumed all of WaMu's "rights, titles, powers, and privileges."  12 U.S.C. § 1821(d)(2)(A)(i).  Additionally, the FDIC as receiver held the power to transfer assets and liabilities of WaMu through purchase-and-assumption agreements.  12 U.S.C. § 1821(d)(2)(G)(i).

On September 25, 2008, the FDIC negotiated the sale of certain assets held by WaMu to JPMorgan.  (SUF 15.)  That same day, the parties memorialized the arrangement in a Purchase and Assumption Agreement.  (*Id.*)  Among the assets JPMorgan acquired were WaMu's mortgage-servicing rights, which included the right to service Javaheri's loan.  (JP Morgan's UF 16.)

After WaMu failed, Javaheri understood that JPMorgan was his loan servicer, and he accordingly directed loan payments to JPMorgan for some time.  (SUF 18.)  Javaheri made payments through January 15, 2010, before defaulting on his loan in February 2010.  (SUF 19, 26.)  Javaheri contends he stopped making his mortgage payments because he was unsure who his lender was, though he made no effort to ascertain the identity of his lender before he stopped making his payments.  (SUF 20–21.)  In addition, Javaheri has testified that he is unsure he would have been able to make payments on his loan at the time of default because he had no income or assets to use to make his payments.  (SUF 27.)  Through at least October 3, 2012, Javaheri had no source of income.  (SUF 28.)

On May 20, 2010, JPMorgan assigned any beneficial interest in the Deed of Trust it may have acquired from the FDIC—*if any*—to Bank of America (as successor by merger to LaSalle Bank) as trustee of the 2007-HY1 Trust.  (SUF 29.)  At the time this Assignment of Deed of Trust was recorded, JPMorgan did not claim to hold the beneficial interest in Javaheri's Deed of Trust, as WaMu had transferred Javaheri's

loan to the 2007-HY1 Trust prior to September 25, 2008 (the date JPMorgan acquired certain of WaMu's assets from the FDIC as receiver). (SUF 30.) Nevertheless, JPMorgan executed the Assignment to clarify in the public records that it was not the then-current beneficiary under the Deed of Trust. (*Id.*)

Also on May 20, 2010, CRC (still the original trustee under the Deed of Trust) recorded a Notice of Default ("NOD"). (SUF 31.) The NOD indicated that, as of May 28, 2010, Javaheri's account was overdue in the amount of $22,851.64. (*Id.*) At the time the NOD was recorded, the 2007-HY1 Trust was the beneficiary under the Deed of Trust, and JPMorgan, as the Servicer under P&S Agreement, was fully authorized by the 2007-HY1 Trust to foreclose on Javaheri's defaulted loan. (SUF 32.)

On November 18, 2011, CRC recorded a Notice of Trustee's Sale ("NOTS") representing that as of November 18, 2011, the total unpaid balance and other charges on Javaheri's loan were estimated at $1,105,716.79. (*Id.*)

As of October 29, 2012, the Trustee's Sale of the Property has not occurred. (SUF 34.) JPMorgan currently remains the servicer of Javaheri's loan, and the 2007-HY1 Trust is the record Lender and beneficiary of the loan. (SUF 35–36.) JPMorgan is in possession of the original Note and Deed of Trust on behalf of the 2007-HY1 Trust. (SUF 37.)

## III.   PROCEDURAL BACKGROUND

On December 5, 2011, Plaintiff Daryoush Javaheri filed suit against Defendants for (1) wrongful foreclosure; (2) quasi contract; (3) quiet title; (4) declaratory and injunctive relief; and (5) no contract/fraud. *Javaheri II*, No. 11-cv-10072-ODW-FFM, ECF No. 1 (C.D. Cal. filed December 5, 2011). In response, Defendants moved to dismiss Javaheri's claims. *Javaheri II*, ECF No. 12. The Court dismissed Javaheri's claim for no contract/fraud with prejudice and denied the motion as it related to all remaining claims. *Javaheri II*, ECF No. 20.

/ / /

1    On May 16, 2012, the Court consolidated *Javaheri I* and *Javaheri II*.
2    *Javaheri II*, ECF No. 23.  Although the cases concern different properties (*Javaheri I*
3    pertained to Javaheri's Wellworth Ave home, while *Javaheri II* dealt with Javaheri's
4    Wilshire Boulevard condominium), the actions involved identical claims and parties.
5    *Id.*  As a result of the consolidation, *Javaheri I* became the lead case for all purposes.
6    *Id.* at 2.

7    On October 29, 2012, Defendants filed this Motion for Summary Judgment
8    pertaining solely to the Wilshire Property.  *Javaheri I*, ECF No. 102.  Defendants seek
9    summary judgment on each of Javaheri's claims, arguing that (1) Javaheri cannot
10   bring a wrongful-foreclosure action to determine whether the foreclosing party has the
11   authority to foreclose, and in any event the foreclosure proceedings complied with
12   California Civil Code section 2924–2924(k); (2) Javaheri's quasi-contract claim fails
13   because JPMorgan is the proper party to initiate foreclosure; (3) Javaheri cannot quiet
14   title because he has not tendered the amount owed, JPMorgan makes no adverse claim
15   to title, and Javaheri's obligation to repay was not terminated when WaMu sold the
16   loan; and (4) declaratory and injunctive relief are improper.[2]

17   ### IV.   LEGAL STANDARD

18   Summary judgment should be granted if there are no genuine issues of material
19   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.
20   P. 56(c).  The moving party bears the initial burden of establishing the absence of a
21   genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
22   Once the moving party has met its burden, the nonmoving party must go beyond the
23   pleadings and identify specific facts through admissible evidence that show a genuine
24   issue for trial.  *Id.*; Fed. R. Civ. P. 56(c).  Conclusory or speculative testimony in
25   affidavits and moving papers is insufficient to raise genuine issues of fact and defeat

26
27   [2] Defendants also contend the no contract (fraud) claim fails because JPMorgan cannot be held liable
     for alleged acts of WaMu.  But because the Court dismissed Javaheri's fifth claim for no contract
28   with prejudice at the pleading stage (*Javaheri II*, ECF No. 20), the Court does not consider this
     argument.

summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative.  *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## V.   DISCUSSION

As a threshold matter, the Court addresses admissibility of the declaration of William Paatalo Javaheri submitted in support of his Opposition.  The Court then proceeds to consider the merits of Defendants' Motion with respect to each of Javaheri's claims for (1) wrongful foreclosure; (2) quasi contract; (3) quiet title; and (4) declaratory and injunctive relief.

### A.   Paatalo Declaration

As the sole evidence in support of his Opposition, Javaheri submitted the declaration of purported expert William Paatalo.  *Javaheri I*, ECF No. 107.  Defendants insist that the declaration be stricken because Javaheri failed to disclose Paatalo in his expert disclosures according to the procedures set forth in Federal Rules of Civil Procedure 26(a)(2)(A) and 26(a)(2)(D).  The Court agrees.

Under the Federal Rules of Civil Procedure, each party is required to disclose the "identity of any [expert] witness it may use at trial."  Fed. R. Civ. P. 26(a)(2)(A).  A party's expert disclosures must be made "at least 90 days before the date set for trial or for the case to be ready for trial."  Fed. R. Civ. P. 26(a)(2)(D).

/ / /

Javaheri's expert disclosures, served on June 19, 2012, did not disclose any expert witnesses.  (Masutani Decl. Ex. A.)  Because trial is set for January 15, 2013, Javaheri's expert witness disclosures were due on October 17, 2012.  Javaheri first served Paatalo's declaration on Defendants on November 5, 2012, over two weeks late.  Further, there is no stipulation or Court order in this matter affecting the disclosure cutoff date.  The Court therefore strikes the Paatalo Declaration because Javaheri failed to disclose his purported expert in a timely manner.

## B.   Wrongful Foreclosure

Javaheri argues that JPMorgan does not have standing to enforce his Note because JPMorgan is not the owner, holder, or beneficiary of the Note.  (Compl. ¶ 20.)  And even if JPMorgan could prove it is a servicer of Javaheri's loan, foreclosure without authorization from the lender is improper.  (*Id.*)  Defendants respond that California's non-judicial-foreclosure scheme does not allow for a judicial action to determine whether the foreclosing party is authorized to do so. (Mot. 8.)  Defendants' rely largely on a recent and frequently cited California Court of Appeal case, *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149 (2011), to support their position.

In *Gomes*, a borrower claimed not to know the identity of the Note's beneficial owner and challenged the foreclosing entity's authorization to initiate foreclosure.  *Id.* at 1152.  The California Court of Appeal explained that the non-judicial foreclosure scheme created by California Civil Code sections 2924–2924(k) "provide[s] a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.  *Id.* at 1154 (quoting *Moeller v. Lien*, 25 Cal. App. 4th 822, 830 (1994)).  Because the framework is comprehensive, "courts have refused to read any additional requirements into the non-judicial foreclosure statute."  *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1098 (E.D. Cal. 2010).  And though the framework is exhaustive, "nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process

1    is indeed authorized."  *Gomes*, 192 Cal. App. 4th at 1155.  The Court of Appeal
2    therefore noted that recognizing the right to bring suit to determine whether one is
3    able to proceed with foreclosure "would fundamentally undermine the non-judicial
4    nature of the process" and allow for lawsuits to be filed solely to delay valid
5    foreclosures.  *Id.* at 1155.  The upshot of *Gomes*, then, is that California's non-
6    judicial-foreclosure scheme does not allow a court action to challenge the
7    authorization of a foreclosing entity in a non-judicial foreclosure.

8         Here, like the borrower in *Gomes*, Javaheri challenges the foreclosing party's
9    authority to foreclose on the Wilshire Property on grounds that he does not know the
10   identity of the beneficial interest holder and avers that the foreclosure is improper
11   without authorization from the original lender, WaMu.  (Compl. ¶ 20.)  But *Gomes*
12   held that California law does not permit a borrower to challenge the authorization of a
13   nominee to foreclose under these circumstances.  *See Gomes*, 192 Cal. App. 4th at
14   1154–57.  Because the California non-judicial-foreclosure scheme does not allow for a
15   judicial action to determine if the party initiating foreclosure is authorized, Javaheri's
16   claim for wrongful foreclosure is precluded by law.

17        Javaheri contends that by relying on *Gomes*, Defendants are "arguing that
18   anyone can take property by initiating foreclosure in California."  (Opp'n 9.)  But
19   *Gomes* does not allow *any* party to initiate foreclosure; *Gomes*'s facts and reasoning
20   were limited to "the right to bring a lawsuit to determine *a nominee's authorization to*
21   *proceed with foreclosure on behalf of the noteholder*."  192 Cal. App. 4th at 1155
22   (emphasis added).  As servicer of the loan, JPMorgan can certainly be considered a
23   nominee or authorized agent and has the authority to foreclose.

24        Notwithstanding *Gomes*, which precludes Javaheri's challenge, JPMorgan still
25   has the authority to foreclose on the Property.  California Civil Code section
26   2924(a)(1) states that a "trustee, mortgagee, or beneficiary, *or any of their authorized*
27   *agents*" may initiate a non-judicial foreclosure.  Therefore, if JPMorgan is an
28

authorized agent of the trustee, mortgagee, or beneficiary, then it can foreclose on the Property.

Tracing Javaheri's loan from its origination to its present form reveals that JPMorgan is authorized to foreclose—and indeed, nowhere in Javaheri's Opposition does he challenge JPMorgan's agency authority to foreclose on behalf of Bank of America as Trustee of the 2007-HY1 Trust. WaMu issued Javaheri's loan and held all beneficial interest in the Property. WaMu then transferred all beneficial interest in the loan to the 2007-HY1 Trust but retained all the servicing and administration duties concerning Javaheri's loan. (SUF 8, 10.) On September 25, 2008, JPMorgan acquired all of WaMu's servicing rights from the FDIC, thereby becoming the servicer of Javaheri's loan. (SUF 15–16.) Consequently, as servicer, JPMorgan is authorized to act on behalf of the beneficiary, the 2007-HY1 Trust, and foreclose on the Property.

Finally, Javaheri makes the curious argument that "[t]he Beneficiary cannot initiate foreclosure against Plaintiff unless there is a default" and proceeds to imply that he was not in default because the "balance of [his] loan has decreased $150,610 in the eight months[] since the Complaint was filed, and the principal balance has dropped from $975,000 to $955,106." (Opp'n 6.) The Court need not give this argument serious consideration, as the only "evidence" Javaheri submits in support of this argument is attached to the stricken Paatalo declaration. (Pl.'s Statement of Genuine Issues 1.) This inadmissible evidence is insufficient to satisfy Javaheri's burden to bring forth a genuine issue of material fact through admissible evidence. *See Celotex*, 477 U.S. at 323–24; Fed. R. Civ. P. 56(c).

But the argument fails on the merits, as well. The May 20, 2010 NOD noted that Javaheri was in default in the amount of $22,851.64, which amount would increase until his account became current. It also informed Javaheri that he could bring his account into good standing by paying all of his past-due payments plus permitted costs and expenses within 5 days prior to the sale of his property. A year

1    and a half later, the November 18, 2011 NOTS indicated that Javaheri was still in
2    default, with an estimated unpaid balance plus other charges of $1,105,716.79.
3    Javaheri filed suit a month later on December 5, 2011.

4         Javaheri now contends that a genuine issue exists regarding his default because
5    he has brought the balance on his loan down to $955,106 as of November 1, 2012.  He
6    doesn't argue, however, that his payments over the last eight months are sufficient to
7    cure his default, nor that merely curing his default would have been sufficient to avoid
8    foreclosure after the NOTS had been filed and recorded.  Indeed, Javaheri's $22,851
9    arrears could have blossomed into significantly more in the two-and-a-half years since
10   the NOD was filed—possibly in excess of the payments Javaheri has made over the
11   last eight months.  Thus, even if the Court could consider Javaheri's evidence on this
12   point, the argument is, at best, merely colorable and therefore insufficient to create a
13   genuine issue of material fact.

14        Because California law does not allow for a judicial action to determine if the
15   foreclosing entity is authorized to do so, and because JPMorgan was and is authorized
16   to foreclose on the Property, the Court **GRANTS** Defendants' motion with respect to
17   the wrongful-foreclosure claim.

18   **C.    Quasi Contract**

19        Javaheri contends that JPMorgan has been unjustly enriched in an amount of
20   $45,000 by improperly collecting and retaining loan payments from Javaheri.  The
21   Complaint also requests restitution and damages in excess of $100,000 for
22   depreciation in the value of the Property caused by the wrongful-foreclosure
23   proceeding. (Compl. ¶¶ 32–33.)  Astonishingly, the basis for this request is Javaheri's
24   argument that when WaMu sold the Note to private investors, his obligation to repay
25   the loan was terminated.  (Compl. ¶ 32.)

26        Defendants argue that as servicer of the loan, JPMorgan "is authorized to
27   collect [Javaheri's] loan payments" because the loan is in default.  (Mot. 14.)
28   / / /

Defendants also argue that Javaheri has "no reason" to contend any payments made to JPMorgan were not credited to the loan.  (*Id.*)

Under California law, a claim of quasi-contract alleging unjust enrichment cannot lie "when an enforceable, binding agreement exists defining the rights of the parties."  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  Here, the Note and Deed of Trust are express contracts covering the same subject matter as Javaheri's quasi-contract claim.  Therefore, the Court must look to the physical, written contracts (the Note and the Deed of Trust) to determine whether Javaheri's claim fails as a matter of law.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012); *Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.*, 44 Cal. App. 4th 194, 203 (1996).

The Note expressly requires the borrower to make payments on the loan until "all of the principal and interest and any other charges" owed are paid.  (JP Morgan's Request for Judicial Notice Ex. 1, at 1.)  Although Javaheri contends that the Lender received payment in full upon securitization of his Note, courts have consistently disagreed, holding that "the sale or pooling of investment interests in an underlying note [cannot] relieve borrowers of their mortgage obligations."  *Upperman v. Deutsche Bank Nat'l Trust Co.*, No. 01:10-cv-149, 2010 WL 1610414, at *2 (E.D. Va. Apr. 16, 2010); *see also Matracia v. JP Morgan Chase Bank, NA*, No. CIV. 2:11-190 WBS JFM, 2011 WL 3319721, at *3 (E.D. Cal. Aug. 1, 2011) (dismissing the notion that securitization of a loan extinguishes a borrowers obligation to repay).  Further, the Note does not contain any language supporting the idea that if the loan is securitized, Javaheri is no longer required to pay the remaining balance.  For the reasons discussed above, the Court **GRANTS** Defendants' motion insofar as it relates to quasi contract.

**D.    Quiet Title**

Javaheri also asserts a quiet-title claim "against the claims of Defendants and all persons claiming any legal or equitable right" in the Property.  (Compl. ¶ 35.) Defendants counter by arguing that Javaheri cannot quiet title without alleging the

1    ability to tender the full amount owed on his loan, and notwithstanding the tender rule,
2    JPMorgan makes no adverse claim to title.  (Mot. 15.)

3         Quiet-title claims establish title against adverse claims to real property or an
4    interest therein.  Cal. Civ. Proc. Code § 760.020.  A quiet-title action requires: (1) a
5    description of the property in question; (2) the basis for plaintiff's title; (3) the adverse
6    claims to plaintiff's title; (4) the date as of which determination is sought; and
7    (5) request to determine title of plaintiff against adverse claims.  Cal. Civ. Proc. Code
8    § 761.020.  In California, a plaintiff cannot quiet title "against the mortgagee without
9    paying the debt secured."  *Shimponses v. Stickney*, 219 Cal. 637, 649 (1934); *see also*
10   *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974) (same); *Kelley v. Mortg. Elec.*
11   *Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009) (quiet-title claim
12   dismissed when plaintiffs failed to allege tender).

13        Here, Javaheri's quiet-title claim fails because he does not allege the ability to
14   tender the full amount due on the loan and JPMorgan does not make an adverse claim
15   to title.  Without alleging or providing tender, Javaheri is not entitled to quiet title
16   because he fails to establish a basis for his own title in the Property.  *See* Cal. Civ.
17   Proc. Code § 761.020.  And while Javaheri contends that tender is not required prior
18   to a trustee's sale citing a number of unreported cases from courts outside this district,
19   each case Javaheri cites for this point discusses the tender rule in the context of
20   wrongful foreclosure—not quiet title.  (*See* Opp'n 11–12.)  The Court finds that
21   because Javaheri fails to establish a basis for his own title, he cannot bring an action to
22   quiet title in his favor.

23        In addition, Javaheri fails to establish that JPMorgan makes an adverse claim to
24   title.  To the contrary, JPMorgan explicitly states it "is not making an adverse claim to
25   title."  (Mot. 16.)  JPMorgan acknowledges that as loan servicer, it is not the
26   beneficiary under the Deed of Trust.  (*Id.*)  In fact, any beneficial interest JPMorgan
27   may have held in the Deed of Trust was transferred to Bank of America, N.A.
28   / / /

(SUF 30.)  The Court therefore finds JPMorgan makes no adverse claim to title in the Property, and thus Javaheri cannot maintain a quiet title action.

For the reasons discussed above, the Court **GRANTS** Defendants' motion with respect to this claim.

**E.   Declaratory and Injunctive Relief**

Lastly, Javaheri requests declaratory and injunctive relief to establish that: (1) JPMorgan is not the lender, holder, or beneficiary of the note; and (2) Defendants do not have standing to foreclose on the Wilshire Property.  (Compl. ¶¶ 41(a), (b).)

Declaratory and injunctive relief do not lie where all other claims have been dismissed.  *Lane*, 713 F. Supp. 2d at 1104.  Javaheri is therefore not entitled to declaratory or injunctive relief without a viable underlying claim.  *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 888 (N.D. Cal. 2011).  Because the Court grants summary judgment in favor of the Defendants on all of Javaheri's claims, no underlying claims exist on which to receive such relief.  Thus, the Court **GRANTS** Defendants' motion with respect to Javaheri's claim for declaratory and injunctive relief.

## VI.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Summary Judgment on all claims.  Javaheri's pending request for leave to add Paatalo as an expert trial witness (ECF No. 124) is therefore **DENIED AS MOOT**.  A judgment will issue.


**IT IS SO ORDERED.**

December 11, 2012


_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**